UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------X
                                    :
UNITED STATES OF AMERICA,           :   16-CR-436 (KMW)
                                    :
                                    :   June 28, 2016
                 v.                 :
                                    :   500 Pearl Street
STEVEN BROWN,                       :   New York, New York
                                    :
                 Defendant.         :
------------------------------------X
```

TRANSCRIPT OF CRIMINAL CAUSE FOR PRESENTMENT/ARRAIGNMENT
BEFORE THE HONORABLE JAMES L. COTT
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:           UNITED STATES ATTORNEY
                              BY: PATRICK EGAN, ESQ.
                              ASSISTANT U.S. ATTORNEY


For the Defendant:            WALTER MACK, ESQ.
                              Doar Rieck Kaley & Mack
                              217 Broadway, Suite 707
                              New York, New York 10007


Court Transcriber:            SHARI RIEMER, CET-805
                              TypeWrite Word Processing Service
                              211 N. Milton Road
                              Saratoga Springs, New York 12866

Proceedings recorded by electronic sound recording,
transcript produced by transcription service

2

1          THE CLERK: <u>United States of America v. Steven Brown</u>.

2          Will the parties please state your name for the

3    record?

4          MR. EGAN: Patrick Egan for the Government.   Good

5    evening, Your Honor.

6          THE COURT: Good evening, Mr. Egan.

7          MR. MACK:  Walter Mack for Steven Brown.

8          THE COURT: Good evening, Mr. Mack.  And good

9    evening, Mr. Brown.  Everyone may be seated.

10          Are we here for presentment and arraignment in this

11   case?

12          MR. EGAN: That's correct, Your Honor.

13          THE COURT: Who's the district judge in this case?

14          MR. EGAN: Judge Wood.

15          THE COURT: Judge Wood.  Okay.

16          When was Mr. Brown arrested?

17          MR. EGAN: He surrendered at 26 Federal Plaza today

18   at 1:57 p.m.

19          THE COURT: Mr. Brown, let me begin by informing you

20   of certain rights that you have.  First of all, you have the

21   right to remain silent.  Anything that you say can be used

22   against you.  If you've made any statements to the authorities

23   in the past you still have the right to remain silent going

24   forward.

25          You also have the right to be represented by an

3

1   attorney at all proceedings and if you cannot afford an

2   attorney you have the right to request that the court appoint

3   an attorney for you.  I understand Mr. Mack, however, is

4   retained counsel.  Is that correct?

5           THE DEFENDANT: That is correct, Your Honor.

6           THE COURT: Very well.  I have a copy of the

7   indictment in this case.

8                   [Pause in proceedings.]

9           THE COURT: It charges the defendant in Count 1 with

10  a conspiracy to commit wire fraud.  I'm just looking, Mr.

11  Egan.  Are there other counts?  Yes.  There's a wire fraud

12  count, Count 2, and a conspiracy to commit money laundering in

13  Count 3.  I knew I had seen that earlier.  A three count

14  indictment ultimately.

15          Mr. Mack, have you seen the indictment and had an

16  opportunity to review it with Mr. Brown?

17          MR. MACK: I have, Your Honor.

18          THE COURT: Do you waive its public reading?

19          MR. MACK: I certainly do.

20          THE COURT: Does your client wish to enter a plea at

21  this time?

22          MR. MACK: He wishes to enter a plea of not guilty.

23          THE COURT: All right.  A not guilty plea will be

24  entered at this time.

25          What is the Government's position with respect to

4

1  bail in this case?

2           MR. EGAN: Your Honor, I think we have an agreement

3  mostly except with respect to one condition as I understand

4  it.

5           THE COURT: Okay.

6           MR. EGAN: The Government is proposing a package

7  mostly consistent with that proposed by Pretrial.  The

8  Government would recommend that he be released on a $200,000

9  personal recognizance bond co-signed by two financially

10  responsible parties.  Pretrial supervision as directed.  That

11  he maintain the residence at 2002 Fourth Street in Santa

12  Monica, that he surrender all travel documents with no new

13  applications.

14           After discussions with defense counsel the

15  Government has agreed not to require that the bond be secured.

16           The part where we have a disagreement is that the

17  Government is seeking a condition that travel be restricted to

18  the Southern and Eastern Districts of New York and the Central

19  District of California.  It's my understanding that defense

20  counsel would like to be heard as to that condition.  I think

21  with respect to the other conditions we're in agreement.

22           THE COURT: All right.  Mr. Mack.

23           MR. MACK: Your Honor, I do want to be heard on that.

24  First of all, Mr. Brown's livelihood is entirely based upon

25  his frequent travel to Europe.

5

1      THE COURT: To Europe?

2      MR. MACK: To Europe and he has recently [inaudible]

3  investigation -- excuse me, as the Pretrial Services officer

4  says that he's been in Germany.  He's in the film business.

5  He makes films.  He has appointments or at least weddings

6  for -- that he is traveling to attend, at least expected to in

7  July and September.

8      THE COURT: How often is this foreign travel

9  anticipated, on a monthly basis, bimonthly basis, four times a

10 year basis?

11     THE DEFENDANT: [Inaudible]

12     THE COURT: Just talk to Mr. Mack.  He'll tell me.

13             [Pause in proceedings.]

14     MR. MACK: So it's about once a month.  He knows well

15 in advance.

16     THE COURT: Why wouldn't the right thing to be a

17 condition in which his travel is restricted as discussed.

18 However, when foreign travel is necessitated given that he's

19 going to know in advance then he can seek permission of the

20 Pretrial Services officer who's supervising him?

21     MR. MACK: I have no objection to that, Your Honor.

22     THE COURT: Do you have an objection to that, Mr.

23 Egan?

24     MR. EGAN: No.  He can -- I don't anticipate that we

25 will consent to that but it's certainly fine if he wants to --

6

1   if we --

2          THE COURT: Then that -- I mean tell me what -- Mr.

3   Mack, why don't you sit down for a minute.

4          Tell me, Mr. Egan, what your concern is.  I mean if

5   the Pretrial Services officer is otherwise supervising Mr.

6   Brown and he's otherwise in compliance with all of the

7   conditions that have been set, what is the Government's

8   concern about this travel?

9          MR. EGAN: The concern about the travel is obviously

10  any -- if he is abroad and decides to remain abroad that

11  obviously it significantly complicates our ability to seek his

12  return or get his return.  It just makes that avenue of non

13  appearance that much more available.  I'm not saying that we

14  won't.

15         All I'm saying is that if he over the course of time

16  on Pretrial builds up a sufficient degree or track record

17  there that Pretrial is saying to us we really think he can be

18  trusted I'm not saying the Government would never or under no

19  circumstances.  I just don't want to represent as part of our

20  conditions that we are consenting to future travel.  We think

21  that travel to Europe is actually a fairly extraordinary

22  condition to seek, that given with what technology is

23  certainly business can be conducted by phone.  It can even be

24  conducted by Skype if face to face is necessary.

25         There's no question that him being under indictment

7

1    for fraud, a fraud that is significantly tied to his business

2    as the indictment makes clear, that -- that his business

3    practices are -- could well be curtailed.  I think in light of

4    the fact that the Government is consenting to release that

5    we're not requiring that it be secured it is not an onerous

6    condition to say that to the extent he wants to continue with

7    his business he can -- he's going to have to make

8    accommodations.

9          If there were a particularly significant trip, if he

10   had built up a track record with Pretrial, if our

11   investigation as it continues doesn't turn up anything that

12   leads us to further concern perhaps we would consent.  I just

13   don't want to represent that the --

14         THE COURT: Well, I guess what I'm struggling with a

15   little bit, Counsel, is why does this issue need to be

16   definitively adjudicated tonight?

17         MR. EGAN: I one hundred percent agree with the Court

18   that if they want to make an application to Judge Wood and say

19   we would like to be heard on an exception, one time to allow

20   him to travel to this I think that's absolutely fine.  I just

21   want -- I don't --

22         THE COURT: You don't want a blanket approval of it.

23         MR. EGAN: I want it to be clear that the Government

24   in agreeing to the condition that they are allowed to ask for

25   that that the Government is not agreeing that it will consent

8

1   to that.

2         THE COURT: But you're also -- are you saying that

3   you know you won't consent or are you saying you just standing

4   here tonight don't know what position you're going to take

5   because you need to let your investigation continue to unfold

6   and see what kind of a track record Mr. Brown has, et cetera,

7   et cetera?

8         MR. EGAN: What I am saying is if the application

9   were presented based on what I know now we would object.  That

10  said, if as I said there's a track record built up -- I'm not

11  saying under no circumstances would we ever consent.  It

12  depends on the circumstances or the --

13        THE COURT: I hear you.  Mr. Mack, when is Mr.

14  Brown's next anticipated travel out of the country?

15        MR. MACK: I would like to be heard on this, Your

16  Honor.  I am a semi expert on making requests for

17  extraordinary travel and --

18        THE COURT: You're a semi expert on it?

19        MR. MACK: A semi expert on --

20        THE COURT: Tell me what that means.  Mack on travel

21  abroad?

22        MR. MACK: Enough times that when I hear what the

23  Government just said that it's not an easy process and

24  frequently it could take a week or more to perhaps resolve it

25  and even then even when there are cases -- there was an

9

1  Assistant here five seconds ago who permits the Pretrial

2  Services officer simply to approve it and it's very fast.  If

3  I have to go to Judge Wood each time it's going to be an

4  onerous process and I'm subject to the Government's view.

5        This essentially is -- and I realize he just plead

6  not guilty.  It's a business dispute.  We know that he - the

7  defendant has no criminal record.  He's employed.  He has

8  family.  He has roots.  And he just -- he is very active in

9  the film business.  He just wrote me that he is doing a film

10 show currently in Las Vegas.  In other words, Nevada would be

11 a district that he would like to --

12       THE COURT: Well, I thought we were just talking

13 about the Southern and Eastern Districts and the Central

14 District of California.  So now you're expanding them to the

15 District of Nevada?

16       MR. MACK: Nevada and Louisiana and Illinois.  His

17 brother lives in Illinois.  His business -- he travels in and

18 out of the country on a frequent basis and Europe he makes

19 films in Europe.

20       THE COURT: Well, so what is your proposal as far as

21 where your client should be able to travel leaving Europe

22 aside?

23       MR. MACK: That he be permitted to travel Southern

24 and Eastern Districts of New York, Central District of

25 California, District of Louisiana. I think it's a district.

1  I'm not sure.  I'd have to take a look whether it's --

2          THE COURT: I think it's not just a district

3  actually.  There are multiple districts in Louisiana.

4          MR. MACK: And I think Nevada is a single district

5  but I'm not sure.  I haven't --

6          THE COURT: Nevada I believe is a single district.

7  Louisiana I believe is not a single district if memory serves.

8          MR. MACK: So I can do that with Google in a short

9  few moments.  But the European -- I think his next trip to

10  Europe is a wedding on July 15.

11          THE COURT: It's a wedding that he is attending or a

12  wedding that he is filming?

13          THE DEFENDANT:  May I answer it?

14          MR. MACK: Absolutely.

15          THE COURT: Sure.

16          THE DEFENDANT: Thank you, sir.  It's a wedding that

17  I'm simply attending and then I have a christening at a church

18  in September.

19          THE COURT: Well, let's take it one at a time.

20          THE DEFENDANT: Yes, sir.

21          THE COURT: The wedding in July is located where?

22          THE DEFENDANT: It's in France.  So I would be in

23  France around July 15th.

24          THE COURT: How many days is the trip planned to be,

25  like a week?

1           THE DEFENDANT: Less than a week.  Six days.

2           MR. MACK: His wife is a French citizen as well as

3    being [inaudible].

4           THE COURT: Okay.

5           THE DEFENDANT: Born in Europe.

6           THE COURT: So that's the July trip.  And then what

7    else did you say, a christening in September?

8           THE DEFENDANT: Yes.

9           THE COURT: Where is that trip?

10          THE DEFENDANT: It's a christening for my wife's

11   goddaughter in France also at a Catholic church.

12          THE COURT: That's in September.  This has nothing to

13   do with work then, Mr. Mack.

14          MR. MACK: No, it doesn't, Your Honor.  I am -- there

15   is also as he said a work trip approximately once a month.  He

16   cannot do it by telephone.  It would have been on the ground

17   making films, overseeing them that they are consistent with

18   the producer's and director's obligations.  Am I correct in

19   stating it that way?

20          THE COURT: Hold on a minute.  So his film work

21   requires him to be abroad; is that what you're saying?

22          MR. MACK: Yes, I am.

23          THE DEFENDANT: May I respond, sir?

24          THE COURT: Yes.

25          THE DEFENDANT: I'm making a movie, two movies in

12

1  America right now.  Okay.  I prefer America.  It's easy.  I

2  however do make movies in Europe because of the currency and

3  you get subsidies in Europe.  So I do make movies in

4  [inaudible] part of the European Union and I hope to continue

5  making movies there.  It's an essential part of my film

6  business.

7         In addition, most of the movie sales that go on in

8  my livelihood happen in France, [inaudible] France and they

9  also happen at the Berlin Film Festival.  So all the sales

10  that [inaudible] movies happen there and I can give dates and

11  all in advance.

12         THE COURT: Well, I think, Counsel, the way I want to

13  resolve this today obviously this is a very undeveloped record

14  on the subject before the Court.  I'm not prepared to opine

15  definitively on it especially in an indicted case before a

16  district judge who will have multiple proceedings in this case

17  going forward including I assume some initial scheduled

18  conference sometime in the near future.  Has she scheduled a

19  conference yet?

20         MR. EGAN: It's July 21st at one p.m.

21         MR. MACK: Your Honor --

22         THE COURT: So that really only requires that this

23  issue of whether he can attend the July 15th wedding be

24  addressed in advance of the conference you have with Judge

25  Wood, and I would suggest that as to all these other issues

1   you raise them with her in the first instance to see how she

2   would like you to handle them going forward.

3          My proposal would be that they be addressed in a

4   piecemeal fashion rather than there being some blanket rule

5   here because if there's a blanket rule I think the Government

6   is more likely to interpose objections.  I think if, Mr. Mack,

7   you can identify seriatim what the particular needs of your

8   client are and he develops a satisfactory track record as far

9   as the Government's concern then it won't be as burdensome as

10  perhaps would be the first time or two you make the

11  application.

12         Why don't we just today deal with -- so I can try

13  and head off at the path the July 15th wedding.  Is the

14  Government going to be opposed to that?  Is there some

15  condition that would be acceptable to you in terms of

16  reporting to Pretrial at the time of departure and at the time

17  of arrival and at the time of leaving and we require all of

18  that to take place or something along those lines?

19         MR. EGAN: The Government would oppose that in

20  particularly in light of --

21         THE COURT: Especially because Mr. Brown I gather is

22  married to someone who has dual citizenship including France

23  so that there are family members related to his spouse who are

24  there?

25         MR. EGAN: Yes.  I mean the fact that his spouse is a

14

1   French citizen makes in the Government's view travel to France

2   more troublesome.

3            THE COURT:  Why do you anticipate that there is some

4   flight issue here?  If you were so concerned about it then I

5   don't understand why you're agreeing to the rest of this

6   package.

7            MR. MACK:  And also is there going to be -- as I

8   understood it, unless I missed it, there are going to be two

9   co-signers or people who will be here who on a $200,000

10  personal recognizance bond their lives will be done and over.

11  This is not an individual who would basically going to depart,

12  jump bail, expose himself to much more culpable behavior and

13  leave two people in the states who are going to be here --

14           THE COURT:  I mean the hour is late, gentlemen, but

15  if we're really going to do this then, Mr. Egan, you need to

16  make a proffer to me rather than just expressing generic

17  concern.  All you've done so far is expressed generic concern

18  to me.  So do you want to make a proffer to me why you think I

19  as a magistrate judge in an indicted case at a quarter of

20  seven in courtroom 5A should make some definitive ruling on

21  this subject, go right ahead.  I just don't know why you think

22  that's appropriate in these circumstances.  What do I know

23  other than what you've told me here and of course the

24  multitude of time I've been given to review a 40 page

25  indictment given as you well know that I've been sitting on

1  the bench here for the last four hours un -- without a break.

2  So I mean tell me what you want me to do here.  How do you

3  want me to proceed?

4      MR. EGAN: I've expressed the Government's objection

5  I think.  There is strong evidence against this defendant that

6  he has committed fraud.  A grand jury has returned an

7  indictment.  The fraud is a multi million dollar fraud.  It is

8  a fraud that involves moving money as the indictment makes

9  clear around to different accounts.  We've identified some of

10  that money though it would be --

11      THE COURT: Why aren't you seeking detention then?  I

12  mean that's an argument for detention.

13      MR. EGAN: Because I think there are ways to mitigate

14  that.  There are ways to mitigate that risk and as the statute

15  as Your Honor pointed out the last one, the statute requires

16  that if there are conditions that can mitigate those dangers

17  then we are required to find them.  We have tried to do that.

18  We found $200,000 bond co-signed by two parties.  I simply do

19  not think that it is -- and another way to mitigate that risk

20  is to not allow him to travel to a country where his wife is a

21  dual citizen there and -- from which extradition is not easy

22  particularly if his wife is a citizen there.  So it is about

23  risk mitigation.  Do we think -- if we thought it was an

24  absolute certainly that he would flee of course we would seek

25  detention.

1        We don't think that there is a non zero risk of

2   flight here.  He has access to capital.  He has access to

3   family members.  He has family members abroad.  So we are

4   simply trying to find a package that both allows him to be

5   released as the statute requires us to do but to mitigate the

6   risk that he will flee.  And I don't --

7        THE COURT: Do you know statistically how many people

8   percentage-wise flee each year in this jurisdiction, Mr. Egan?

9        MR. EGAN: I understand it is a very low percentage.

10        THE COURT: Do you know how low?

11        MR. EGAN: Extremely low, Your Honor.

12        THE COURT: It's under two percent.  I understand

13   it's 1.4 percent as of 2015.

14        MR. EGAN: And that may be because nobody flees.  It

15   may be because the Court is very good at fashioning bail

16   packages that prevents them from doing that but either way the

17   fact of the matter is is that this is -- the reason we're not

18   seeking detention is because we are trying to do what the

19   statute requires which --

20        THE COURT: So let's play this out.  Let's say we

21   hadn't raised this tonight, okay, let's say on January -- on

22   July 8th Mr. Mack wrote a letter to Judge Wood saying my

23   client wants to go to a wedding in France with his wife who

24   has dual citizenship and he would I assume articulate the fact

25   that all these conditions were in place, et cetera, et cetera.

1  You would then write a letter to Judge Wood opposing that

2  application and you would say in that letter what exactly?

3           MR. EGAN: What I just said to the Court.

4           THE COURT: That he's charged with a multi million

5  dollar fraud so he doesn't get to fly to Europe whenever he

6  wants to.

7           MR. EGAN: And that he has access to means.  He's got

8  family members abroad, that he has a support system abroad if

9  he decided to stay abroad and that he may well have -- and he

10 is obviously making a good living doing this and then there is

11 the potential, a potential that becomes --

12          THE COURT: Although to be clear the July travel is

13 not work related.

14          MR. EGAN: Correct.

15          THE COURT: Does that matter?

16          MR. EGAN: No.

17          THE COURT: It doesn't matter from your perspective.

18          MR. EGAN: No.  I don't know that the purpose of the

19 travel would matter.  It is simply that it is travel abroad.

20          THE COURT: Well, I mean he's charged with a fraud in

21 the industry he works in.  So if he is involved in fraudulent

22 activity as you -- if you've alleged that then it seems to me

23 you might have a different view about that conduct perpetrated

24 wherever it may be perpetrated, not just attending some social

25 event.  That might be something different.

18

1          MR. EGAN: But not necessarily as it goes to his risk

2 of flight.

3          MR. MACK: Your Honor, rather than keep the Court

4 here even later, I'm --

5          THE COURT: You can keep me here as late as you want.

6 Believe me when I'm done here of course I have multiple

7 applications from other Assistants who are waiting for me to

8 review those and then of course I do have a civil docket of

9 150 cases.  So I'm going to be here for several hours after we

10 adjourn.  So --

11          MR. MACK: I'm sorry, Your Honor.  I mean I'm -- I

12 will go to Judge Wood if that's what's necessary.

13          THE COURT: I'm not trying to shirk.  I'm trying to

14 figure out what the right result is here today.  I don't want

15 to --

16          MR. MACK: I think the right result is he's going to

17 have to [inaudible] on a bond of $200,000 PRB and this is a

18 gentleman who has never committed a crime, never arrested

19 before, has legitimate reasons to go, has frequently returned

20 from Europe and has been [inaudible].

21          THE COURT: Well, he's returned from Europe before

22 he's been under an indictment.  So the circumstances are a

23 little different now.

24          MR. MACK: He knew he was under investigation, Your

25 Honor.  I would say that.  And he surrendered today.  I can go

19

1   through the full list of all employment, family ties, life of

2   residence, all of the factors that are as I say are in his

3   favor.

4            THE COURT: So what precisely is your application?

5            MR. MACK: My application is that the bail conditions

6   through July -- July be -- permit him to be able to go to

7   France on July 15th in addition to the one [inaudible] that he

8   be permitted to go and come back.  He'll report every single

9   aspect necessary to Pretrial Services without any question.

10           That's my application to deal with that one today

11  because of the shortness of time and the fact that I have two

12  hearings coming up where I'll be heavily engaged but whatever

13  it is.  I'm fighting for his right to do so.  I think he's an

14  outstanding individual without risk and he'll take whatever

15  precautions Pretrial wants of him to provide some type of --

16  whatever security they want.  Where he will be, travel plans,

17  notice, all of that, and there will be two co-signatures here

18  that he will have a personal relationship with and he's not

19  going to leave exposed to $200,000 in money being taken from

20  them by the Government.

21           THE COURT: Before we decide this France trip let's

22  just be precise about the travel restrictions within the

23  United States because I'm not sure there's agreement about

24  that either.

25           I had understood originally that it was the Southern

1   and Eastern Districts of New York and the Central District of

2   California.  That's what Mr. Egan said.  Then you raised the

3   District of Nevada and one of the districts in Louisiana.  Are

4   there -- before we deal with that, are there other -- what

5   about the Northern District of Illinois?

6            MR. MACK: [Inaudible] where his brother and his --

7            THE COURT: That's -- I thin I saw that's Deerfield;

8   right?

9            MR. MACK: Yes.

10            THE COURT: I believe is the Northern District of

11   Illinois.  So where else?  Is that it as far as the United

12   States is concerned?

13            THE DEFENDANT: Yes, sir.

14            THE COURT: So you're seeking, Mr. Mack, with respect

15   to travel in the United States that it be restricted to the

16   Southern and Eastern Districts of New York, the Central

17   District of California, the Northern District of Illinois, the

18   District of Nevada and a district in Louisiana and points in

19   between for purposes of --

20            MR. MACK: Flight and travel.

21            THE COURT:  -- flight and the like.  Leaving Europe

22   aside, do you oppose that, Mr. Egan?

23            MR. EGAN: We stand by our proposed package that it

24   should be the Southern and Eastern and that it should be dealt

25   with in the same way that the Court was suggesting that we

1  deal with the international travel.  If there's business

2  travel that requires him to be in Louisiana he should make

3  that application to the Court.

4         THE COURT: Well, just be precise here, the defendant

5  is going to be residing in the Central District of California.

6  Is that correct?  He's not residing in the Northern District

7  of Illinois.

8         MR. MACK: That is correct.

9         THE COURT: All right.  It seems to me in these

10  circumstances without in any way trying to shirk my

11  responsibility it seems to me the clearest condition in this

12  regard is to restrict his travel to the Southern and Eastern

13  Districts of New York and the Central District of California

14  without prejudice to his making an application to travel not

15  just to the District of Nevada, Louisiana and Illinois but

16  anywhere else he may want to travel also but that he will need

17  to make applications for that travel because he is going to be

18  under Pretrial supervision and the Pretrial Services officer

19  in the first instance would be in a position to determine if

20  that travel is approved and if so under what conditions so

21  that there would be reporting and the like so that there is no

22  concern about that.

23         So it seems to me that's how we should handle that.

24  I'm frankly as I said 20 minutes ago inclined to resolve all

25  of the Europe travel that way as well so that it is dealt with

1 in an individual one at a time kind of basis.

2        MR. MACK: So I start with the Pretrial Services

3 office and go from there in any instance other than the three

4 districts.

5        THE COURT: I think that is the best way to leave

6 that issue and that that should also include any Europe

7 travel.  I think everything should be handled that way.  And

8 then it will play out as either Judge Wood, the Pretrial

9 Services Office or Judge Wood may refer this sort of

10 application to magistrate's court in which case I or one of my

11 colleagues sitting here will have to deal with it although

12 frankly if I had an application like this and I got the

13 letters that both of you have described I would think I would

14 have to have a hearing of some kind.  I don't think I could

15 just decide it on the papers as I do 99 out of a 100 times in

16 that kind of an application because it sounds like it might be

17 hotly contested.

18        So do you want to be heard?

19        FEMALE VOICE:  Yes, just for clarification.  As far

20 as the travel restriction outside of what we've mentioned, is

21 that at the discretion of Pretrial including travel to Europe

22 or is that to be submitted through application to the Court?

23        THE COURT: I think it should be -- I guess my --

24 you're making a distinction between Pretrial Services having

25 discretion to approve it as opposed to the Court having --

1          FEMALE VOICE: Correct.

2          THE COURT:  -- the authority to approve it?

3          FEMALE VOICE: Correct.

4          THE COURT: So, Mr. Egan, you want the Court to

5    approve it I assume.

6          MR. EGAN: That's correct, Your Honor.

7          THE COURT: And you would prefer Pretrial to approve

8    it.

9          MR. MACK: The shortest and easiest way, Your Honor,

10   of course.  We're going to start tomorrow because he is

11   planning to be --

12         THE COURT: Well, if it were me and I'm sure Judge

13   Wood would want the input of Pretrial irrespective of whether

14   the Court is ultimately approving it or not.

15         Let's do this. My problem is, gentlemen, I know very

16   little about this case.  So it's very hard for me to make an

17   informed judgment here.  With that said, I am limiting travel

18   to the Southern and Eastern Districts of New York and the

19   Central District of California and points in between for

20   purposes of travel.

21         Any application that Mr. Brown is going to make to

22   travel elsewhere in the United States or outside the United

23   States should be made to the Court in the first instance and

24   if Judge Wood wants to modify that so that at a certain point

25   either the first time or the fifth time that that

1   discretionary decision can reside with Pretrial then she can

2   make that judgment at that time because she'll ultimately be

3   in a better position than I am tonight to make that decision.

4   So it will not be in the discretion of Pretrial.  It will be

5   up to the Court.

6           MR. MACK: And I --

7           THE COURT: And with respect to the travel July 15th

8   in France, I think you should write a letter to Judge Wood

9   tomorrow.

10          MR. MACK: I will do that.

11          THE COURT: And take that up with her in the first

12  instance and then she'll handle it however she thinks is

13  appropriate.

14          MR. MACK: I wasn't -- as I say, I wasn't -- I don't

15  know that much about the case as well.  That's why I'm wearing

16  a pink shirt and I was not expecting to be before Your Honor

17  today.  So I --

18          THE COURT: Pink shirts are acceptable in my court,

19  Mr. Mack.

20          MR. MACK: Thank you, Your Honor.

21          THE COURT: All right.  So I think that's how we'll

22  leave that issue.

23          What else do we need to do tonight, Mr. Egan?

24          MR. EGAN: Your Honor, the Government would just ask

25  to exclude time between now and July 21st so that the

25

1  Government can begin the assembling and production of

2  discovery and have any initial discussions.

3        THE COURT: Are you going to produce any discovery

4  between now and July 21st or are you just going to assemble?

5        MR. EGAN: Well, it's about --

6        THE COURT: Because if you're just going to assemble

7  I'm not going to exclude because I don't see in the Speedy

8  Trial Act the word assemble.

9        MR. EGAN: We can produce initial -- it depends

10  whether they want it all at once.  There are about a quarter

11  million pages worth of --

12        THE COURT: How about rolling production?

13        MR. EGAN: Correct, Your Honor.

14        THE COURT: No.  Well, I'm saying I'm willing to

15  exclude if the Government is actually going to produce, not

16  that you're going to direct some paralegal to start getting

17  piles of documents that you're going to give Mr. Mack in

18  October.

19        MR. EGAN: We will have an actual production prior to

20  that date, Your Honor.

21        THE COURT: All right.  With that representation from

22  an officer of the Court I will exclude time between now and

23  the 21st.

24        MR. EGAN: Thank you, Your Honor.  Nothing further

25  from the Government.

26

1      THE COURT: Anything else, Mr. Mack?

2      MR. MACK: No, sir.

3      THE COURT: Have a good evening.

4      MR. EGAN:  Two weeks from today.

5      THE COURT:  I'm sorry, I should have gotten to you

6  on that before we adjourned.

7      MR. MACK: Thank you, Your Honor.

8      THE COURT: Thank you, Mr. Mack.

9                    * * * * *

27

1      I certify that the foregoing is a court transcript from

2 an electronic sound recording of the proceedings in the above-

3 entitled matter.

4

5  _____

6                    Shari Riemer, CET-805

7 Dated:  July 6, 2016

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25