GBMTWILC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x
3  UNITED STATES OF AMERICA,
4              v.                          16 CR 436 (KMW)
5  JAMES DAVID WILLIAMS, STEVEN
   BROWN and GERALD SEPPALA,
6
                Defendants.
7
   ------------------------------x
8
                                           New York, N.Y.
9                                          November 22, 2016
                                           10:00 a.m.
10
11 Before:
12                    HON. KIMBA M. WOOD,
13                                         District Judge
14
                           APPEARANCES
15
   PREET BHARARA
16      United States Attorney for the
        Southern District of New York
17 PATRICK EGAN
        Assistant United States Attorney
18
   ANTHONY CECUTTI
19      Attorney for Defendant Williams
20 DOAR, RIECK, KALEY & MACK
        Attorneys for Defendant Brown
21 WALTER MACK, JR.
   MICHAEL MINNEFOR
22
   FEDERAL DEFENDERS OF NEW YORK
23      Attorneys for Defendant Seppala
   VINCENT SOUTHERLAND
24
25

1               (In open court, case called, defendants not present)
2               MR. EGAN:  Patrick Egan for the government.  Good
3    morning, your Honor.
4               THE COURT:  Good morning.
5               MR. CECUTTI:  Good morning, your Honor, Anthony
6    Cecutti for James David Williams.  Your Honor may recall that
7    all defendants were excused by your Honor at the last
8    conference.
9               THE COURT:  Yes, thank you, and they waived their
10   presence here.
11              MR. CECUTTI:  Yes, your Honor.
12              MR. MACK:  Walter Mack for Defendant Steven J. Brown.
13   Good morning, your Honor.
14              THE COURT:  Good morning.
15              MR. SOUTHERLAND:  Good morning, your Honor, Federal
16   Defenders by Vincent Southerland on behalf of Mr. Seppala.
17              THE COURT:  Good morning.
18              MR. MACK:  If I may introduce someone who is trying to
19   bring me into the modern age, Michael Minnefor, who will be
20   working with me on this matter henceforth.
21              THE COURT:  Very good.
22              MR. MINNEFOR:  Good morning, your Honor.
23              THE COURT:  Let's see, Mr. Egan, can you bring me up
24   to date?
25              MR. EGAN:  Absolutely, your Honor.  The government

1    filed two letters with the Court sort of detailing the
2    discovery where we were.
3              THE COURT:  I have those in mind.
4              MR. EGAN:  So just briefly, we have turned over to
5    each defendant what amounted to about 80 gigabytes of data on
6    hard drives they provided.  Two defendants had material
7    electronic evidence seized from them.  They provided hard
8    drives.  Those have been sent to FBI.  Those, as I indicated,
9    turned out to be quite voluminous; two terabytes in the case of
10   one defendant and about 500 gigabytes in the case of another
11   defendant.
12             There is additional individual discovery which I
13   anticipate turning over today, and the only other
14   outstanding -- well, there are two.  The only other outstanding
15   items are, one, there were email pen registers up on these
16   accounts, which is metadata that went back and forth to each of
17   these accounts.
18             That material had to be gathered at I guess Quantico
19   where they pull it all together.  I got that shortly after I
20   gave them their thumb drives, so I'm assembling that
21   information.  We have it now, and we just have to get it
22   uploaded.
23             And the final piece was actual physical documents that
24   were seized at some of the residences.  Counsel for
25   Mr. Williams and Mr. Seppala have now signed stipulations

Case 1:16-cr-00436-KMW    Document 49    Filed 12/19/16    Page 4 of 12     4
GBMTWILC

1     saying they won't object on the basis of chain of custody if
2     the FBI now sends that out for copying, and then I think
3     discovery will be complete.
4              I have got stipulations from one of those defendants.
5     I understand the other is going to give them today.  So I think
6     everything is in place to have everything turned over.
7              THE COURT:  All right.  What is the reasonable time
8     for the next conference when I would like to know whether
9     anyone wishes to file a motion.
10             MR. CECUTTI:  Your Honor, perhaps I can answer that
11    question.
12             As your Honor just heard, and was aware by way of the
13    letter from the government, we just received the discovery.
14    And I understand that the government had some technical
15    challenges in order to produce that discovery, however, we're
16    just receiving it now.
17             And the government just represented that there's going
18    to be additional discovery that is to come.  I am in the two
19    terabytes camp, so I maybe I'm the lucky winner perhaps, but
20    there's a lot of discovery here, that's undisputed, and I do
21    think that a lengthier conference date is necessary.
22             In addition, I have a two-month trial starting before
23    Judge Caproni on January 18.  Again, no fault to Mr. Egan, but
24    had we received the discovery a month, two months, three months
25    ago, this wouldn't become an issue for me specifically, but it

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1   is an issue where I have to devote probably the entire month of
2   December preparing for this two-month long trial.  I would love
3   to be able to say to your Honor at the time of the next
4   conference:  Judge, here are the motions we're going file, I'm
5   up to speed, but I think don't think I could say that.
6          So I ask that the Court adjourn for another conference
7   in about four months time, which would bring us to --
8          THE COURT:  Feel free to confer with one another and
9   with the government on timing.
10         (Pause)
11         MR. CECUTTI:  Your Honor, we're proposing a mid-April
12  date for another conference.
13         THE COURT:  April is a month when I'll be on trial
14  every day, and on Part I the week of April 10.  So we would
15  need to meet at 5 o'clock.
16         MR. CECUTTI:  That's fine, your Honor.
17         THE COURT:  What day would you like?  I am free at
18  5 o'clock every day.
19         MR. CECUTTI:  Your Honor, is the Part I week better
20  for you.
21         THE COURT:  No, that's the worst week.  I'll be on
22  trial and the emergency judge.
23         MR. CECUTTI:  How about April 17 at 5:00 p.m.
24         THE COURT:  That's fine.
25         Now my unavailability cannot be any part of the

GBMTWILC

1    reasoning for an exclusion of time, so if you want to meet
2    sooner, I can meet with you the 11th.  If you don't want to
3    meet the 11th, then I need to hear that you need that extra
4    time until the 17th.  Do you follow me?
5             MR. SOUTHERLAND:  Yes.
6             MR. CECUTTI:  Your Honor, April 11 is fine.
7             THE COURT:  Okay, good.  Then let's say April 11 at
8    5:00 p.m. will be our next conference.
9             Is there any objection to an exclusion of time?
10            MR. CECUTTI:  No, your Honor.
11            THE COURT:  In light of the fact -- Mr. Mack?
12            MR. MACK:  No, I did want to have some comment about
13   the discovery and the very little time, but there's no
14   objection to the exclusion.
15            THE COURT:  I usually give my Speedy Trial Act ruling
16   right away so I don't forget to do it.
17            MR. MACK:  Fine.
18            THE COURT:  In light of the fact that defense counsel
19   need until April 11, 2017 to prepare for trial, I find that an
20   exclusion of time from today through April 11 is in the
21   interest of justice, and those interests outweigh the interests
22   of the defendants and the public in a speedy trial.  I thus
23   exclude that time.
24            Please go ahead, Mr. Mack.
25            MR. MACK:  Your Honor, I just wanted to say -- no

1    criticism of the government is intended here, but we did
2    receive this -- I actually picked it up on a Saturday morning I
3    think week or so ago, maybe ten days ago, and Michael and I
4    have been laboring hard to decipher it.  And the government, to
5    their credit, has offered some expertise, but we are still
6    having difficulty in access.
7            So I just make a point, even with more to come, we
8    still haven't been able to master the material given us to
9    date.  When I say "master," I mean master its availability so
10   we can read it, of course.
11           THE COURT:  I hear you.  I don't know whether
12   Mr. Minnefor would be the one to answer this question or
13   Mr. Egan, but what makes it so difficult to access?
14           MR. MACK:  I know Mr. Minnefor can answer that
15   question because he has been working on it diligently for ten
16   days.
17           THE COURT:  Mr. Minnefor.
18           MR. MINNEFOR:  A good portion of the files, I believe
19   it's called a PST file, it had to be viewed through Outlook.
20   It's not a simple of matter of just opening it up on the hard
21   drive, clicking on it and you can see an email, we had to
22   figure out how to import it into our Outlook program, which
23   allowed us to view a substantial portion of them.
24           What I am told now by some of my team, the staff that
25   is working on this, is some other emails -- there's a program

1    that we need to install on the computers to view another big
2    chunk of emails.  The government produced that program which
3    allows to you upload the software, and it also comes with
4    instructions.  We followed all the instructions and it's not
5    uploading onto our computer.  So we're still having some
6    technical difficulties in that regard.
7              THE COURT:  Mr. Egan.
8              MR. EGAN:  Your Honor, they are produced in two --
9    some are on PST files, some were in a different formal.  We
10   produced them with this program Thunderbird, because it was my
11   understanding that that didn't involve a conversion and it
12   would allow us to get it out sooner, which obviously, since we
13   were running behind, was important.
14             Mr. Mack contacted me and let me know that there were
15   problems.  The same day I gave him the number of someone in our
16   office to facilitate that.  He remains available to help him.
17   If any other defense counsel are having problems, please let me
18   know and I will put them in touch with the same person to walk
19   them through whatever problems they're having.
20             THE COURT:  Have you taken advantage of that?
21             MR. MINNEFOR:  The person he's referring to -- his
22   first his name is Michael, his last name escapes me -- assisted
23   us with that first portion about importing those PST files into
24   our Outlook program.  I have a call and email in to him to
25   assist us with the Thunderbird program.  Hopefully he will get

1      back to us soon and we can move on to the next step.

2                THE COURT: Thank you for that explanation.

3                Mr. Mack.

4                MR. MACK: One other factor, it's also clear from the

5      limited review that has been done in the time period for what I

6      can access that there is a continuing investigation underway,

7      because some of the emails and things, at least of my client,

8      are dated as recently as October of this year. So clearly that

9      may raise issues. I certainly can't speak to that, but it is

10     clear that the investigation is continuing.

11               I'm not sure how they obtained those emails, but it's

12     clear that work is being done probably by the grand jury, but

13     I'm not really sure, maybe by order or what have you. But it

14     is a factor of consequence to us that our email -- our clients

15     are communicating, Lord knows -- I mean I know my client is a

16     voluble emailer, and his emails are showing up on his personal

17     accounts now as part of the government's discovery.

18               So I would like to know when that will end, and we may

19     have a motion as to that eventually, but it is an ongoing fact

20     that I'm sure concerns all defense counsel.

21               THE COURT: I'll be ready to rule when you make your

22     motion.

23               Is there anything else?

24               MR. EGAN: Not from the government.

25               MR. SOUTHERLAND: No, your Honor.

GBMTWILC

1          MR. CECUTTI:  One minor issue, your Honor, if
2    Mr. Williams -- and I will speak for the other lawyers as
3    well -- if their clients could be excused at the next
4    conference, that would be appreciated.
5          THE COURT:  That's fine with me.  We may set a trial
6    date then.
7          MR. CECUTTI:  That's fine.
8          THE COURT:  Have we already set a trial date?
9          MR. CECUTTI:  No.
10         THE COURT:  Yes.
11         MR. CECUTTI:  Thank you.
12         THE COURT:  Do you wish to be heard?
13         MR. SOUTHERLAND:  No, I think Mr. Cecutti covered it
14   for me.
15         THE COURT:  Good.  I have been approving international
16   travel for Mr. Mack's client, Steven Brown.  The government has
17   objected.  I have not asked in detail what their objection is,
18   but I think given all these delays I will probably continue to
19   get the requests, and I would like to give Mr. Egan a chance to
20   explain the objection.
21         MR. EGAN:  The objection -- I have explained it to
22   Mr. Mack and we explained it in mag court, international travel
23   with someone who has a spouse who is a foreign citizen has
24   continued to raise concerns.  I have made clear to Mr. Mack --
25   and the reason we have not been separately writing, we had that

1    initial concern when there was the travel about the reason for
2    it, Mr. Mack has started supplementing the request with more
3    detail.
4              The government concedes, as he put in his letter, that
5    his compliance has been good and he has returned from each of
6    these trips.  The response to Mr. Mack has been that it only
7    takes one of these trips for him not to return from, and so the
8    government simply noted its objection.  But that's what it is,
9    that it is simply this is a defendant who has -- or at least
10   appears to the government to have some means, he has a wife who
11   is a foreign citizen and going to the countries where she is a
12   citizen on occasion, that's the basis of the government's
13   objection.
14             THE COURT:  She's a French citizen?
15             MR. EGAN:  That was my understanding at the initial
16   appearance.
17             MR. MACK:  I think she's a joint citizen, actually.
18   Her mom is French.  And I can't think of anything worse for my
19   client to do than fail to to meet all the conditions that
20   Mr. Carter is setting for him.  In fact, Mr. Carter has
21   complained to me -- he's the pretrial services in California --
22   that my client is too detailed in his itineraries and where he
23   is going to be and how he could be reached.  So I can't think
24   of anything worse that Mr. Brown can do than to fail to meet
25   the conditions set by Officer carter.

GBMTWILC

1     THE COURT:  Well, if probation is satisfied with the
2 information he gives, I will probably continue to approve the
3 trips, but if, Mr. Egan, you have any additional concerns as
4 time goes on, I will hear you.
5     MR. EGAN:  I will absolutely let the Court know.
6     THE COURT:  If there's nothing else, I will see you in
7 April.
8     MR. EGAN:  Thank you, your Honor.
9     MR. SOUTHERLAND:  Thank you, your Honor.
10                              o0o
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25