UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -- -x
                                                    :
UNITED STATES OF AMERICA                            :
                                                    :
    - v. -                                          :
                                                    :          S6 16 Cr. 436 (KMW)
STEVEN BROWN,                                       :
                                                    :
                         Defendant.                 :
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - --x


**GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTIONS TO COMPEL AND FOR REVIEW OF GRAND JURY MINUTES**


                                   Geoffrey S. Berman
                                   United States Attorney
                                   Southern District of New York
                                   One St. Andrew's Plaza
                                   New York, New York 10007


Katherine Reilly
Noah Solowiejczyk
Assistant United States Attorneys
- Of Counsel -

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

RELEVANT BACKGROUND ............................................................................................... 2

ARGUMENT ........................................................................................................................ 3

I.    THE MOTION TO COMPEL SHOULD BE DENIED. ...................................................... 3

    A.    Applicable Law ............................................................................................... 4

    B.    Discussion ........................................................................................................ 7

        1.    The Purportedly "Joint" or "Parallel" Investigations with Individual
            Witnesses ................................................................................................ 7
        2.    The Proposed Motions to Suppress or to Exclude .................................. 14
        3.    Allegations Regarding Investigations in Other Jurisdictions................... 18
        4.    The Alleged Misconduct by Victims of the Charged Schemes ............... 19

II.   THE MOTION FOR THE REVIEW OF GRAND JURY MINUTES SHOULD BE
    DENIED.......................................................................................................................... 22

    A.    Applicable Law ............................................................................................. 22

    B.    Discussion ...................................................................................................... 24

        1.    The Presentation to the Grand Jury......................................................... 24
        2.    The Presentation of Hearsay Evidence ................................................... 28

CONCLUSION.................................................................................................................... 30

## TABLE OF AUTHORITIES

### Cases

*Clifton v. Cox*, 549 F.2d 722 (9th Cir. 1977) ............................................................... 22

*Dennis v. United States*, 384 U.S. 855 (1966) ............................................................ 24

*Douglas Oil v. Petrol Stops Northwest,* 441 U.S. 211 (1979) .................................... 23

*Ferreira v. United States*, 350 F. Supp. 2d 550 (S.D.N.Y. 2004)................................. 5

*In re Neagle*, 135 U.S. 1, 75 (1890).............................................................................. 22

*Kyles v. Whitley*, 514 U.S. 419 (1995)........................................................................... 4

*Tremblay v. United States*, Nos. 08 Civ. 7030 (JFK), 05 Cr. 0783 (JFK), 2009 U.S. Dist. LEXIS 39416 (S.D.N.Y. Apr. 21, 2009)..................................................... 26, 28

*United States v. Avellino*, 136 F.3d 249 (2d Cir. 1998) ................................................ 4

*United States v. Bonventre*, No. 10 Cr. 228 (LTS), 2014 U.S. Dist. LEXIS 101304 (S.D.N.Y. July 24, 2014) ............................................................................................. 5

*United States v. Bonventre*, 646 F. App'x 73 (2d Cir. 2016)........................................ 5

*United States v. Bravo-Fernandez*, 239 F. Supp. 3d 411 (D.P.R. 2017) .................... 27

*United States v. Broward*, 594 F.2d 345 (2d Cir. 1979) ............................................. 23

*United States v. Burke*, 700 F.2d 70 (2d Cir. 1983).................................................... 23

*United States v. Carter*, No. 04 Cr. 594 (NRB), 2005 U.S. Dist. LEXIS 1127 (S.D.N.Y. Jan. 25, 2005) .................................................................................... 26, 29

*United States v. Connolly*, No. 16 Cr. 370 (CM), 2017 U.S. Dist. LEXIS 36759 (S.D.N.Y. Mar. 2, 2017) ..................................................................................... passim

*United States v. Corbin*, 620 F. Supp. 2d 400 (E.D.N.Y. 2009)................................. 28

*United States v. Crespo*, No. 16 Cr. 536 (PKC), 2017 U.S. Dist. LEXIS 24065 (S.D.N.Y. Feb. 21, 2017) ............................................................................................ 22

*United States v. Delacruz*, No. 14 Cr. 815 (KBF), 2015 U.S. Dist. LEXIS 61967 (S.D.N.Y. May 12, 2015) ............................................................................................ 19

*United States v. DiFelice*, 837 F. Supp. 81 (S.D.N.Y. 1993) ..................................... 21

*United States v. Dyman*, 739 F.2d 762 (2d Cir. 1984)................................................ 29

*United States v. Finnerty*, 411 F. Supp. 2d 428 (S.D.N.Y. 2006)................. 5, 6, 12, 13

*United States v. Gibson*, 175 F. Supp. 2d 532 (S.D.N.Y. 2001).................................. 23

*United States v. Goff*, No. 15 Cr. 616 (KBF), 2016 U.S. Dist. LEXIS 77091 (S.D.N.Y. June 13, 2016) ................................................................................ 24, 27, 28

*United States v. Guerrerio*, 670 F. Supp. 1215 (S.D.N.Y. 1987) .................................. 6

*United States v. Gupta,* 848 F. Supp. 2d 491 (S.D.N.Y. 2012) .............................. 6, 13

*United States v. Heine and Yates*, 314 F.R.D. 498 (D. Or. 2016)................................................ 13

*United States v. Howard*, 216 F.3d 1074, 2000 U.S. App. LEXIS 13984................................... 26

*United States v. Hunt,* No. 05 Cr. 395 (DAB), 2006 U.S. Dist. LEXIS 64887 (S.D.N.Y. Sept. 6, 2006) ...................................................................................................................................... 23

*United States v. Johnson*, 484 F.2d 165 (9th Cir. 1973)............................................................ 21

*United States v. King*, No. 10 Cr. 122 (JGK), 2011 U.S. Dist. LEXIS 45467 (S.D.N.Y. Apr. 27, 2011) ............................................................................................................................... 23, 24

*United States v. Leonard*, No. 02 Cr. 881 (LDW), 2008 U.S. Dist. LEXIS 36110 (E.D.N.Y. May 1, 2008) .................................................................................................................................. 16

*United States v. Lester*, No. 95 Cr. 216 (AGS), 1995 U.S. Dist. LEXIS 16570 (S.D.N.Y. Nov. 8, 1995) ...................................................................................................................................... 29

*United States v. Leung*, 40 F.3d 577 (2d Cir. 1994) ............................................................ 23, 24

*United States v. Locascio*, 6 F.3d 924 (2d Cir. 1993)................................................................. 4

*United States v. Mahaffy*, 446 F. Supp. 2d 115 (E.D.N.Y. 2006)................................... 15, 17, 18

*United States* v. *Martoma*, 990 F. Supp. 2d 458 (S.D.N.Y. 2014) ........................................ 6, 13

*United States v. Mechanik*, 475 U.S. 66 (1986)........................................................................ 23

*United States v. Mejia*, No. 11 Cr. 1032 (PAW), 2013 U.S. Dist. LEXIS 91254 (S.D.N.Y. June 26, 2013) ............................................................................................................................... 26

*United States v. Meregildo*, 920 F. Supp. 2d 434 (S.D.N.Y. 2013)) ...................................... 6, 12

*United States v. Morrison*, 153 F.3d 34 (2d Cir. 1998) .............................................................. 21

*United States v. Nunan*, 236 F.2d 576 (2d Cir. 1956).................................................................. 23

*United States v. Olin Corp.*, 465 F. Supp. 1120 (W.D.N.Y. 1979)) ............................................ 27

*United States v. Paredes-Cordova*, No. 03 Cr. 987 (DAB), 2009 U.S. Dist. LEXIS 52415 (S.D.N.Y. June 8, 2009).............................................................................................................. 22

*United States v. Pforzheimer*, 826 F.2d 200 (2d Cir. 1987)....................................................... 21

*United States v. Quinn*, 445 F.2d 940 (2d Cir. 1971) .................................................................. 4

*United States v. R. Enterprises, Inc.*, 498 U.S. 292 (1991) ........................................................ 23

*United States v. Regan*, 103 F.3d 1072 (2d Cir. 1997))......................................................... 26, 28

*United States v. Regan*, 706 F. Supp. 1102 (S.D.N.Y. 1989) ..................................................... 21

*United States v. Rigas*, 583 F.3d 108 (2d Cir. 2009) ................................................................. 5

*United States v. Ruggiero*, 934 F.2d 440 (2d Cir. 1991) ............................................................ 29

*United States v. Scrushy*, 366 F. Supp. 2d 1134 (N.D. Al. 2005).......................................... 15, 16

ii

*United States v. Shyne*, No. 05 Cr. 1067 (KMK), 2007 U.S. Dist. LEXIS 26994 (S.D.N.Y. Apr. 5, 2007) ................................................................................................................. 29

*United States v. Silver*, 103 F. Supp. 3d 370 (S.D.N.Y. 2015) ............................................... 27, 28

*United States v. Smith*, 985 F. Supp. 2d 506 (S.D.N.Y. 2013) ..................................................... 27

*United States v. Stein*, No. 05 Cr. 888 (LAK), 2008 U.S. Dist. LEXIS 74030 (S.D.N.Y. Sept. 10, 2008 ................................................................................................................................... 16

*United States v. Stringer*, 408 F. Supp. 2d 1083 (D. Or. 2006) ................................................... 15

*United States v. Stringer*, 521 F. 3d 1189 (9th Cir. 2008) .......................................................... 15

*United States v. Teyibo*, 877 F.Supp. 846 (S.D.N.Y. 1995) ........................................................ 15

*United States v. Torres*, 901 F.2d 205 (2d Cir. 1990) ................................................................ 24,

*United States v. Torres*, No. 93 Cr. 673 (KMW), 1994 U.S. Dist. LEXIS 1554 (S.D.N.Y. Feb. 16, 1994) ................................................................................................................................... 29

*United States v. Twersky*, No. 92 Cr. 1082 (SWK), 1994 U.S. Dist. LEXIS 8744 (S.D.N.Y. June 29, 1994) ............................................................................................................................ 27

*United States v. Upton,* 856 F. Supp. 727 (E.D.N.Y. 1994) ......................................................... 6

*United States v. Vendetti*, No. 10 Cr. 360 (RJA), 2013 U.S. Dist. LEXIS 147821 (W.D.N.Y. Jan. 22, 2013) ........................................................................................................... 26, 27, 28

*United States v. Watson*, 404 F.3d 163 (2d Cir. 2005 ................................................................ 15

*United States v. Williams*, 504 U.S. 36 (1992) ......................................................................... 26

**<u>Rules</u>**

Fed. R. Crim. P. 16 ...................................................................................................................... 5

**<u>Other Authorities</u>**

Memorandum of Assistant Attorney General Theodore B. Olson, "Applicability of the California Penal Code to Investigations Conducted by the Federal Bureau of Investigation" (Nov. 5, 1981), available at https://www.justice.gov/file/22791/download (last visited Jan. 19, 2018) .............. 22

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to the defendant's motions to (1) compel disclosure of all law enforcement contacts with victims and their representatives and (2) inspect the grand jury minutes or, in the alternative, for *in camera* review of the grand jury minutes.

The defendant's motion to compel relies on speculation and an incomplete and, at times, inaccurate recitation of the facts to suggest that the Government engaged in a "joint investigation" with victims of the crimes charged in this case and that certain of those victims engaged in alleged misconduct.  The defendant seeks relief—the production, among other things, of all contacts between law enforcement and the victims in this case—that is extraordinary and would permit him to engage in a fishing expedition, in circumvention of the rules governing the proper disclosure of *Giglio* and Jencks Act materials.  The Government did not jointly investigate with any victims; it engaged in the proper investigation of allegations of criminal conduct, including by questioning and seeking documents from victims, as it would in any fraud investigation.  Furthermore, that these defrauded victims were engaged in civil litigation with the defendant and others is not surprising or unusual, nor does it render the Government's contact with these victims a "joint investigation" warranting the extraordinary relief the defendant seeks.  Nor is there any evidence whatsoever that the Government participated in or condoned any form of misconduct.  Moreover, the Government is in full compliance with its Rule 16 obligations and is fully aware of and will comply with its obligations under *Brady*, *Giglio*, and the Jencks Act.

The defendant's motion to inspect the grand jury minutes is equally without merit.  In light of the importance of secrecy to the function of the grand jury and the presumption of

regularity afforded to grand jury proceedings, review of grand jury minutes is rarely granted and only in specific circumstances not alleged here.  The defendant seeks this rarely granted relief based on speculation about what might have been presented to the grand jury, predicated upon a single press release, which, contrary to the defendant's claims, is not inaccurate.  In a further attempt to obtain this information, the defendant disregards well-settled law about the propriety of the use of hearsay testimony in the grand jury and the Government's obligations with regard to the presentation of material that is exculpatory or could be used to support a defense.

For these reasons and those set forth below, the defendant's motions should be denied in their entirety.

## RELEVANT BACKGROUND

On June 22, 2016, the defendant, Steven Brown, was charged in an indictment (the "First Indictment") with three counts: (1) conspiring to commit wire fraud, between in or about 2012 and in or about June 2016; (2) the commission of wire fraud, between in or about 2012 and in or about June 2016; and (3) conspiring to commit money laundering, between in or about 2012 and in or about December 2014.  The First Indictment also charged James David Williams and Gerald Seppala.[1]  The charges contained in the First Indictment stemmed from the defendant's participation in a scheme to solicit investments in feature-length films and documentaries, including by promising guaranteed returns and claiming certain funds had already been invested in the films, and then to use the invested funds to pay personal expenses, among other things. *See* (First Indictment ¶¶ 1-3).

---

[1]     As this Court is aware, both Williams and Seppala have since pleaded guilty to charges contained in superseding indictments.

The defendants charged in the First Indictment were arrested on June 28, 2016. Following their arrests, the U.S. Attorney's Office issued a press release announcing the charges filed in the case (the "Press Release"). A copy of the Press Release is attached to this memorandum as Exhibit 1. The Press Release outlined the allegations contained in the Indictment and included comments from then-U.S. Attorney Preet Bharara and then-Assistant Director-in-Charge of the New York Office of the Federal Bureau of Investigation (the "FBI"). *See* (Ex. 1 at 1-3). The Press Release also noted that "the entirety of the text of the Indictment and the description of the Indictment set forth herein constitute only allegations, and every fact described should be treated as an allegation." (Ex. 1 at 3).

On December 7, 2017, the defendant was charged in a superseding indictment (the "Superseding Indictment") with five counts: (1) conspiring to commit wire fraud, between in or about 2009 and in or about 2016; (2) the commission of wire fraud, between in or about 2009 and in or about 2016; (3) conspiring to commit wire fraud, between in or about 2016 and in or about 2017; (4) conspiring to commit wire fraud, between in or about 2011 and in or about 2014; and (5) conspiring to commit money laundering, between in or about 2012 and in or about December 2014. The Superseding Indictment identified nine individual victims, including Victim-2, who is alleged to have been defrauded of approximately $11 million in connection with the scheme charged in Counts One and Two of the Superseding Indictment.

## ARGUMENT

## I.   THE MOTION TO COMPEL SHOULD BE DENIED.

The defendant seeks to have this Court compel disclosure of documents in the files of a private attorney for an individual victim in this case and of all contacts between law enforcement and any victims. The Government did not engage in a "joint investigation" with any of these

3

witnesses, nor did the Government have any role in any of the alleged "misconduct" claimed by the defendant.  The allegations presented by the defendant as to such engagement and participation are speculative at best and cannot be the basis to permit the defendant to search through a broad and indiscriminate pool of materials to which he is not entitled based on the facts in this case, nor the case law in this Circuit.  The motion to compel should be denied.

### A.    Applicable Law

 "An individual prosecutor is presumed . . . to have knowledge of all information gathered in connection with his office's investigation of the case and indeed 'has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including the police.'" *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) (quoting *Kyles v. Whitley*, 514 U.S. 419, 437 (1995)). "Nonetheless, knowledge on the part of persons employed by a different office of the government does not in all instances warrant the imputation of knowledge to the prosecutor, for the imposition of an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office would inappropriately require us to adopt 'a monolithic view of government' that would 'condemn the prosecution of criminal cases to a state of paralysis.'" *Id*. at 255 (internal citations omitted); *see also United States* v. *Locascio*, 6 F.3d 924, 949 (2d Cir. 1993) (rejecting imputation of knowledge of FBI reports by agents who were not involved in the investigation or trial); *United States v. Quinn*, 445 F.2d 940, 944 (2d Cir. 1971) (rejecting imputation of knowledge of a Florida prosecutor to an AUSA in New York). Thus, where information was independently obtained through sources outside of the prosecution team, *Brady* and *Giglio* are "not a discovery doctrine that c[an] be used to compel the Government to gather information for the defense." *United States v. Bonventre*, No. 10 Cr.

228 (LTS), 2014 U.S. Dist. LEXIS 101304, at *79 (S.D.N.Y. July 24, 2014), *aff'd in part*, *United States v. Bonventre*, 646 F. App'x 73 (2d Cir. 2016).

Similarly, with regard to the production of discovery under Fed. R. Crim. P. 16, the government must permit the defendant to inspect and to copy or photograph certain items if those items are "within the government's possession, custody, or control" and "(i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant."  Fed. R. Crim P. 16(a)(1)(E).

Courts in this Circuit have repeatedly held that the prosecutor's duty under both *Brady* and Rule 16 extends to reviewing the materials in the possession, custody or control of another agency only where the Government conducts a "joint investigation" with another government agency.  *See United States v. Connolly*, No. 16 Cr. 370 (CM), 2017 U.S. Dist. LEXIS 36759, at *11-14 (S.D.N.Y. Mar. 2, 2017); *see also United States* v. *Rigas*, 583 F.3d 108 (2d Cir. 2009) (affirming district court opinion holding that there was "no joint investigation with the SEC" and therefore the Government did not need to produce documents in the custody of the SEC); *United States v. Finnerty*, 411 F. Supp. 2d 428, 433 (S.D.N.Y. 2006) (holding that the Government and the New York Stock Exchange, even if it were a state actor, did not conduct a joint investigation related to the policies of the Exchange); *Ferreira v. United States*, 350 F. Supp. 2d 550, 556-57 (S.D.N.Y. 2004) (holding that cooperation between the Government and NYPD was "not sufficient to make the Government and the state prosecutor members of the same 'prosecutorial team'"); *United States v. Upton,* 856 F. Supp. 727, 749-50 (E.D.N.Y. 1994) (holding that the USAO and FAA did not conduct a "joint investigation" even though the FAA provided two

inspectors to assist the criminal investigation); *United States v. Guerrerio*, 670 F. Supp. 1215, 1219 (S.D.N.Y. 1987) (denying Rule 16 discovery request for grand jury minutes at the Bronx District Attorney's Office where there was no joint investigation with the USAO and USAO had no control over the material).

"'The mere fact that the Government may have requested and received documents from [another agency] in the course of its investigation does not convert [an] investigation into a joint one.'" *Connolly*, 2017 U.S. Dist. LEXIS 36759, at *13 (quoting *Finnerty*, 411 F. Supp. 2d at 433). In assessing whether an investigation was "joint" such that certain individuals may be deemed part of the "prosecution team," courts have considered, for example, "'whether the individual actively investigates the case, acts under the direction of the prosecutor, or aids the prosecution in crafting trial strategy." *Connolly*, 2017 U.S. Dist. LEXIS 36759, at *14 (quoting *United States v. Meregildo*, 920 F. Supp. 2d 434, 440-41 (S.D.N.Y. 2013)); *see also United States* v. *Martoma*, 990 F. Supp. 2d 458, 461-62 (S.D.N.Y. 2014) (finding a joint investigation where the SEC and the Government repeatedly conferred throughout the Government's investigation, jointly conducted 20 interviews of 12 witnesses, and coordinated efforts in conducting depositions); *United States v. Gupta,* 848 F. Supp. 2d 491, 493-94 (S.D.N.Y. 2012) (finding "joint fact-gathering" based on the fact that the Government and the SEC had jointly interviewed 44 witnesses, with attorneys for both the Government and the SEC asking questions in those interviews, and an SEC attorney preparing memoranda of the interviews that summarized the relevant information in consultation with the Government).

B.     **Discussion**

1.     ***The Purportedly "Joint" or "Parallel" Investigations with Individual Witnesses***

The defendant argues that the Government conducted a joint investigation with Victim-2 and his counsel and should be ordered to search the files of the law firm retained by Victim-2 in connection with its *Brady* and other discovery obligations.  (Def. MC Br. at 8).[2]  This argument is unsupported by the factual record and inconsistent with precedent in this Circuit.

In investigating any criminal case, and, in particular, a fraud case such as this one, the Government must collect documents and interview victim-witnesses, some of whom, inevitably, will have attorneys, and may pursue civil remedies.  Indeed, it is often the case that victims who have been the subjects of criminal conduct are best positioned to report that conduct to law enforcement, resulting in the opening of an investigation.  Contact between the Government and those victim-witnesses and their attorneys, in an effort by the Government to gather facts and materials relevant to a criminal investigation is a necessary part of the criminal process and a far cry from the kinds of joint investigations involving joint interviews and other investigative steps in which the Government has been directed to review documents in the possession of other agencies.

In this case, Victim-2 filed a civil lawsuit against the defendant and others in the Central District of California more than two years before the charges in the instant case were filed.  *See Bill A. Busbice, Jr., et al. v. Williams, et al.*, No. 14 Civ. 4077 (PA), Complaint (C.D. Cal. May

---

[2]      Two motions filed by the defendant are addressed in the instant memorandum.  The defendant's motion to compel is referred to hereinafter as "Def. MC Br."  The defendant's motion to review grand jury minutes is referred to hereinafter as "Def. GJ Br."

28, 2014) (Dkt. No. 1).  In seeking the extraordinary relief of an order compelling the

Government to search the files of an attorney representing a private individual, the defendant

relies primarily on defense counsel's characterization of statements made during the depositions

of Victim-2 and an attorney for Victim-2 ("Attorney-A") taken in the course of that civil

litigation, while failing to attach the relevant portions of those deposition transcripts to his

motion.[3]  (Def. MC Br. at 2-3) (citing Mack Aff. ¶¶ 4-5).  Review of the deposition transcripts of

Attorney-A and Victim-2 (the relevant portions of which the Government has annexed to this

memorandum of law as Exhibits 2 and 3, respectively), however, demonstrates that both Victim-

2 and Attorney-A testified to facts that suggest that their communications with law enforcement

were limited to providing information and documents in response to Government inquiries,

which is wholly consistent with the Government conducting its own, independent criminal

investigation.

Attorney-A testified as follows:

- At some point prior to Attorney-A's deposition, he reported to the FBI that his client "had been victimized in a significant financial fraud and asked them if they would be willing to look into the matter."  (Ex. 2 at 163-64).  When asked about the response of the FBI to this report, Attorney-A explained "[t]hey don't say that much, but they asked me to described what happened and then they asked me for some documentation."  (*Id.* at 164).

- Attorney-A further reported that he had also communicated with the U.S. Attorney's Office and while he understood there to be an open investigation, he did not know who was under investigation, noting that "[t]hey don't get into details."  (*Id.* at 166-67).

---

[3]       The individual identified as Attorney-A in this brief is referred to as "Victim-2's attorney" in certain places in the Superseding Indictment, *see* (Superseding Indictment ¶ 23), as he represented Victim-2 in the course of certain negotiations with the defendant and others that are part of the charged scheme.  The Government has adopted this identifier in an effort to avoid confusion with other attorneys referred to in the Superseding Indictment.

- Attorney-A repeatedly testified, in response to numerous questions from counsel for the defendants in the civil action, that while he had been contacted "from time to time" by law enforcement, he had been told "almost nothing" and did not know what the scope of the ongoing investigation was, nor who were among its subjects.  (*Id.* at 166-69).  Instead, the law enforcement agents to whom he spoke "asked questions about what transpired and what documents exist and how much money [Victim-2] lost and what were the circumstances," and Attorney-A provided documents to law enforcement "upon their request."  (*Id.* at 169).

The contacts with the Government described by Attorney-A in his deposition are, thus, are a far cry from a joint investigation being conducted by Attorney-A's law firm and the Government.

Victim-2's deposition testimony was consistent with that of Attorney-A.  Victim-2 testified, in relevant part, as follows:

- Victim-2 directed his attorney to contact the FBI.  (Ex. 3 at 88-90).

- Victim-2 spoke to the FBI about "the stealing of my money."  (*Id.* at 88).  Victim-2 first spoke to the FBI by telephone in March of 2014 and subsequently met with the FBI in person "several times."  (*Id.* at 90-91).

- When Victim-2 was asked if "the FBI ever told you – tell you not to talk about this matter with anyone," Victim-2 said, "[n]o."  (*Id.* at 91).

- Victim-2 was then asked "[d]id they ever tell you that you shouldn't—okay.  So they never told you not to talk about it, talking to them?"  (*Id.*).  Victim-2 responded, "[t]alking to David Williams and them, no."[4]  (*Id.*)

---

[4]     Defense counsel asserts that when asked whether he had been instructed by the FBI "not to talk about the criminal investigation at his deposition, Victim-2 refused to answer" and "said he would not answer any questions about his conversations with the FBI, implying that he had been asked not do so."  (Mack Aff. ¶ 5).  To the contrary, as set forth above, Victim-2 testified that the FBI had not instructed him not to talk about his contacts with them.  (Ex. 3 at 91).  As discussed in greater detail below, it was only later in the course of the deposition, after conferring with his attorney, that Victim-2 declined to answer further questions about his contacts with law enforcement, noting that he "would rather not answer," with his attorney stating that "[t]he witness is answering to the best of his ability and based on his conscience[.]" (Ex. 3 at 101-103).  Victim-2 at no point suggested he had been told not to answer questions at the deposition by the FBI.  *See* (*id.*).  Defense counsel's suggestion that Victim-2 refused to answer such questions at the direction of the FBI is, therefore, pure conjecture.

Again, the contacts described by Victim-2 are consistent with law enforcement agents independently investigating a case which involved criminal conduct of which Victim-2 was a central victim.

The defendant makes much of the fact that both Attorney-A and Victim-2 "refused to answer" questions about the substance of their communications with law enforcement agents. (Def. MC Br. at 2-3). To the contrary, Attorney-A discussed the substance of the report he had made to the FBI, indicated that he had been told "almost nothing" about the ongoing investigation, and explained that he had answered questions "about what transpired and what documents exist and how much money [Victim-2] lost and what were the circumstances." (Ex. 2 at 163, 169). While Attorney-A did indicate that he would not provide the name of the FBI agent or Assistant U.S. Attorney to whom he had spoken and declined to answer when asked if law enforcement had "been asking about Mr. Brown," he made clear that if the court presiding over the civil action directed him to answer, he would do so. *See* (Ex. 2 at 163, 167) (in which Attorney-A notes, "[i]f there is a ruling in this case pardoning me to disclose that information, I certainly will" and states "if that's something that I am compelled to respond to, I will").

Victim-2, after providing the testimony discussed above, consulted with his attorney (not Attorney-A) and, thereafter, declined to answer questions about his contacts with law enforcement. *See* (Ex. 3 at 101-103). Again, though, Victim-2 testified that he would do so if counsel for the defendants sought an order from the court. See (Ex. 3 at 103) (counsel for the defendants in the civil action stated, "if I have an issue, I'll talk to your attorney," adding, "[i]f we have to go to talk to the judge, we'll go talk to the judge . . . [a]nd if the judge then says something, then I guess we go with what the judge says," to which Victim-2 assented). A review

10

of the docket in the civil action suggests that the defendant's counsel did not seek a ruling from

the judge in the Central District of California as to these issues, nor did he seek additional

testimony from either Attorney-A or Victim-2.  Instead, on July 31, 2015, within weeks of the

depositions of both Attorney-A and Victim-2, the parties settled the case.  *See Busbice, Jr. v.*

*Williams,* No. 14 Civ. 4077 (PA), Notice of Settlement (C.D. Cal. July 31, 2015) (Dkt. No.

101).[5]

---

[5]      The defendant suggests that Victim-2 attempted to induce a settlement using the threat of
criminal prosecution, citing an e-mail sent more than 14 months before the parties notified the
court of a settlement, prior to the filing of the civil lawsuit, and a second-hand account of a
purported conversation between Victim-2 and the defendant.  (Mack Aff. ¶¶ 8-11).  The full e-
mail exchange is attached as Exhibit 4 to this memorandum; because this memorandum will be
filed on the public docket, the defendant's and Victim-2's e-mail addresses and other personal
information are redacted.  In Victim-2's first e-mail, he inquires of the defendant as to the status
of buyout paperwork he had been promised by an attorney associated with the defendant and
Williams.  Victim-2 further noted that he wanted "to put this behind me and you guys REALLY
need to also because of BIG BROTHER and what part of that that [sic] don't you understand…"
(Ex. 4 at 2).  Defense counsel also proffers allegations regarding a conversation between
Victim-2 and the defendant, despite the fact that defense counsel was presumably not personally
present for the exchange.  According to defense counsel's second-hand account—provided
without a sworn affidavit by an individual with firsthand knowledge, such as the defendant—
Victim-2 indicated to the defendant that he "had arranged" for the case to be presented to
prosecutors, lamented that certain authorities had declined to bring charges, and indicated that
the U.S. Attorney's Office for the Southern District of New York was "still considering the
matter."  (Mack Aff. ¶ 10).  Defense counsel also claims—again without reference to any sworn
affidavit from the defendant—that Victim-2 threatened to "ruin [the defendant's] life through
criminal prosecution" unless he received the return of his money.  (*Id.*)

        To the extent the defendant relies upon the e-mail exchange and this conversation to
suggest that the Government was engaged in a joint investigation with Victim-2, and to the
degree that a second-hand and self-serving account of this conversation can be credited, this
argument also falls short.  Nowhere in this e-mail exchange, nor in this purported conversation
between Victim-2 and the defendant, is there any support for the notion that Victim-2 and his
counsel were strategizing with the Government, nor engaging in any joint interviews of
witnesses or other joint investigative work.  Moreover, there is no support for the notion that
Victim-2 had any influence over or input into any prosecutorial decisions.  These exchanges
indicate that Victim-2 was aware that law enforcement was investigating the conduct at issue,
which is not surprising since he had directed his attorney to notify the FBI of the fraud

The contacts with law enforcement outlined in the depositions of Attorney-A and Victim-2 fall far short of the level of interaction necessary to find a "joint investigation." The witnesses testified that they had provided documents and information to law enforcement. *See* (Ex. 2 at 163-64, 169), (Ex. 3 at 88-91). This is, of course, to be expected, given that both Victim-2 and Attorney-A were witnesses to the conduct charged in this case and possessed documents that are at the core of the evidence. Moreover, the case law is clear that the mere provision of documents is insufficient to render two investigations "joint." [6] *Connolly*, 2017 U.S. Dist. LEXIS 36759, at *13, 20-21 (finding that the fact that more than one million documents produced by the government in discovery were first obtained by the CFTC "does not convert its fact-finding into joint fact-finding"); *Finnerty*, 411 F. Supp. 2d at 433 (finding the production of documents to the government insufficient to find a joint investigation). Attorney-A testified further that he knew very little about the scope, subjects, or status of the government's efforts. *See* (Ex. 2 at 166-69). It strains credulity to assert that Victim-2 and Attorney-A were members of a joint investigation with the Government when Attorney-A was not aware of these basic facts about the Government's investigation. By contrast, in the cases decided in this district

---

perpetrated upon him and had spoken to the FBI. *See* (Ex. 2 at 163-64), (Ex. 3 at 88-91). The mere fact Victim-2 reported the crime perpetrated upon him to federal authorities and provided information and documents in connection with said investigation does not render Victim-2 and Attorney-A members of a joint investigation with the Government. It means they are relevant fact witnesses, nothing more.

[6]     Similarly, neither the provision of information by a witness to the government, nor the witness's acting as a "cooperating witness," renders those witnesses part of the same prosecution or investigative team. *See Meregildo*, 920 F. Supp. 2d at 444 (noting that the Second Circuit has found that "in most cases, cooperating witnesses should not be considered part of the prosecution team," and denying a motion to compel the government to produce documents prepared by a cooperating witness because the witness "never participated in formulating trial strategy nor was he directed to investigate").

in which courts have found "joint investigations," the agencies at issue have engaged in multiple

joint interviews and have consulted as to impressions of those efforts and other investigative

strategies.[7]  *See Gupta,* 848 F. Supp. 2d at 493-94.[8]  There is no support for the allegation that

anything even approaching that level of coordination—or, frankly, any level of coordination—

took place here.  In the absence of any such coordination, the defendant's motion to compel

production of documents in the files of Victim-2's attorneys, or for an evidentiary hearing as to

these issues, must be denied.[9]  *See Connolly,* 2017 U.S. Dist. LEXIS 36759, at *22-23

---

[7]     The defendant relies upon *United States v. Heine and Yates,* 314 F.R.D. 498 (D. Or. 2016). (Def. MC Br. at 8).  In that case, the court granted a motion for discovery, including into communications between law enforcement and the attorney for a bank, in anticipation of the defendant's filing a motion to suppress certain statements made in a deposition conducted by that attorney.  *Id.* at 508, 511.  In so ruling, the court noted that the deposition took place after repeated contacts with the FBI and the bank's attorney and included questioning about several topics not discussed in the civil complaint but directly implicated by the criminal charges.  *Id.* at 510.  Here, by contrast, there is no suggestion that the civil case addressed any issues implicated only in the criminal case, nor that any specific information gathered in the course of discovery was collected to aid law enforcement.  Moreover, it is worth nothing that *Heine* was decided by a district court outside of the Second Circuit and has never been cited favorably in this Circuit, nor has it, indeed, ever been cited by any court in support of an order compelling the production of materials in the files of a private individual.

[8]     To the extent the defendant relies upon *Gupta* and *Martoma, see* (Def. MC Br. at 8), it is notable that those cases were decided in the context of a "joint investigation" between the government and a federal agency, the Securities and Exchange Commission.  *See Martoma*, 990 F. Supp. 2d at 459; *Gupta,* 848 F. Supp. 2d at 493.  Here, by contrast, the defendant suggests a "joint investigation" by the government and a private individual and his counsel in a civil action. The defendant does not cite to any case decided in this Circuit in which a court has found a "joint investigation" in such a context.  *See Connolly*, 2017 U.S. Dist. LEXIS 36759, at *23 (finding that treating foreign government agencies similarly to "the SEC or the NYPD" "makes no sense," and noting that *Gupta* and *Martoma* "speak only to Brady obligations extending to 'state and federal' agencies"); *Finnerty*, 411 F. Supp. 2d at 433 (noting that the proposition that the New York Stock Exchange was a "government agency" was "dubious at best" before denying the motion for the production of documents even assuming, arguendo, that it was a government agency).

[9]     The defendant also suggests that the Government engaged in some level of coordination with Victim-3 and with a movie director who "worked on projects" with Williams.  (Def. MC

("Defendants have failed to proffer sufficient facts to suggest that the Government's Brady obligations require it to rummage through the SEC's files.").

### 2.    *The Proposed Motions to Suppress or to Exclude*

The defendant also asks this Court to compel the Government to produce "[d]ocuments or information setting forth all contacts between law enforcement and the so-called victims and their counsel between January 1, 2009 and July 21, 2016," (Def. MC Br. at 12), arguing that this broad and indiscriminate request for materials will permit the defense to assess whether they might move to suppress or to exclude "evidence generated from the civil litigations or written or verbal communications by Mr. Brown prior to his indictment" based on what the defendant might learn about the degree of the Government's involvement with the victims who brought the civil litigation.  (Def. MC Br. at 9-10).

"It is well-established that as a general rule, '[t]he prosecution may use evidence acquired in a civil action in a subsequent criminal proceeding unless the defendant demonstrates that such use would violate his constitutional rights or depart from the proper administration of criminal

---

Br. at 3).  The defendant stops short of claiming that this coordination constituted a "joint investigation" between the Government and either Victim-3 or the movie director but seeks an evidentiary hearing as to the Government's "involvement in the civil proceedings, its coordination with witnesses, including Victim-2, Victim-2's counsel and Victim-3, and their involvement in gathering facts to assist in the criminal investigation."  (Def. MC Br. at 9).  Even defense counsel's description of the testimony of Victim-3 and the movie director in the course of civil proceedings and arbitration proceedings, respectively, suggest only that they testified that they spoke to the FBI and, in the case of Victim-3, provided documents to the FBI.  (Mack Aff. ¶¶ 6-7).  For the reasons discussed above, these contacts—the questioning of individual witnesses and collection of relevant documents directly from those witnesses, as opposed to from another investigative body—are wholly consistent with the Government carrying out its investigative function independently and properly.  They are insufficient basis upon which to compel production and should not be the grounds for holding an evidentiary hearing the defendant may use as a fishing expedition for information he might use to his advantage at trial.

14

justice.'"  *United States v. Mahaffy*, 446 F. Supp. 2d 115, 123 (E.D.N.Y. 2006) (quoting *United States v. Teyibo*, 877 F.Supp. 846, 855 (S.D.N.Y. 1995)).  "An evidentiary hearing [to allow inquiry into these issues] is only required 'if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact . . . are in question.'"  *Mahaffy*, 446 F. Supp. 2d at 127 (quoting *United States v. Watson*, 404 F.3d 163, 167 (2d Cir. 2005) (internal quotations omitted)).  Here, the defendant does not identify specific pieces of evidence from the civil litigation, nor statements made in the course of that litigation, he might seek to suppress.  He also does not claim to limit what he might seek to suppress to evidence or statements made in the course of civil litigation.  Instead, he asks the Court to compel the production of all communications between victims and law enforcement, or to hold an evidentiary hearing, without any "definite, specific, detailed, and nonconjuectural" allegations suggesting that there are, in fact, real contested issues of fact.

The defendant relies upon *United States v. Scrushy*, 366 F. Supp. 2d 1134 (N.D. Al. 2005).[10]  (Def. MC Br. at 10).  In *Scrushy*, the court excluded deposition testimony taken in the

---

[10]     While the defendant refers to *Scrushy* by name, the actual citation provided in the defendant's brief is a citation to *United States v. Stringer*, 408 F. Supp. 2d 1083 (D. Or. 2006). *See* (Def. MC Br. at 10) (citing "*United States v. Scrushy*, 408 F. Supp. 2d 1083 (D. Or. 2006)"). In *Stringer*, the district court granted a motion to dismiss the Indictment based on an "abuse of investigative process" by the U.S. Attorney's Office for the District of Oregon, which was found to have been actively involved in an investigation by the SEC and yet taken steps to "conceal the criminal investigation" from the parties involved in the SEC's investigation, even after it was determined that criminal charges were likely. 408 F. Supp. 2d at 1087-88. *Stringer* is, thus, wholly distinguishable from this case on its facts. There is no allegation here that anyone concealed the criminal investigation; indeed, as set forth above, Victim-2 and Attorney-A acknowledged reporting the conduct at issue in the civil litigations to law enforcement in their depositions in the civil litigation. Additionally, the level of interaction between the SEC and the prosecutor in *Stringer* is far from that that is claimed here. Moreover, and most importantly, the Ninth Circuit reversed the district court's decision in *Stringer*, finding "no deception or

course of a civil action brought by the SEC, based on the fact that the SEC's investigation and the criminal investigation were "inescapably intertwined." 366 F. Supp. 2d at 1140. In reaching this conclusion, the court focused on a number of factors not alleged in this case, including that the government caused a specific SEC employee to be present for the deposition, subsequently engaged with that SEC official substantially, explicitly directed areas of inquiry to pursue and to avoid in the deposition, and caused the location of the deposition to be moved, at least in part, to create venue for a potential perjury charge (which was eventually brought). *Id.* at 1136-41. The court also emphasized that the SEC employee was a member of the SEC's enforcement division and was, of course, employed by the same government as the prosecutors bringing the criminal case. *Id.* at 1138-39.

Courts in this circuit have distinguished *Scrushy*, even when assessing contacts between prosecutors and the SEC, a federal enforcement agency, let alone between prosecutors and private civil litigants. *See, e.g.*, *United States v. Stein*, No. 05 Cr. 888 (LAK), 2008 U.S. Dist. LEXIS 74030, at * 12 (S.D.N.Y. Sept. 10, 2008) (noting that in *Scrushy*, among other cases, the court emphasized that "there was no *bona fide* civil investigation" and that "the defendant was deceived by the government during the civil investigation"); *United States v. Leonard*, No. 02 Cr. 881 (LDW), 2008 U.S. Dist. LEXIS 36110, at *4 (E.D.N.Y. May 1, 2008); *Mahaffy*, 446 F. Supp. 2d 115, 123. In *Mahaffy*, for example, the court rejected a motion to suppress based on *Scrushy*, finding that the defendant had not proffered "facts to suggest that the USAO hid behind

affirmative misconduct on the part of the government in the course of the SEC and U.S. Attorney investigations that warranted dismissal of the indictment or suppression of any of the evidence in question. In addition, defendants' Fifth Amendment rights were not violated." *United States v. Stringer*, 521 F. 3d 1189, 1201 (9th Cir. 2008).

or manipulated the S.E.C. with the intention of misrepresenting its true intentions to the defendants."  446 F. Supp. 2d at 126.

Here, the defendant merely asserts without support that it is possible that the Government improperly coordinated with the victims with regard to their independent efforts to bring civil litigation; there are no "specific" or "nonconjectural" facts proffered in support of the notion that the Government engaged in any of the kinds of conduct described in *Scrushy* and distinguished in *Mahaffy*.  Indeed, it is clear that by the time of the depositions of Victim-2 and Attorney-A— just under one year before the criminal case was filed—the defendant was on notice that Victim-2 had reported what had happened to him to law enforcement and an investigation was underway.[11]  *See* (Ex. 2 at 163-64; Ex. 3 at 88-91).  The defendant has thus not made a sufficient showing that the extraordinary relief requested herein—the production of all communications between law enforcement and victims of the charged schemes—is appropriate, nor has he set forth an adequate basis for an evidentiary hearing as to these issues.  *See Mahaffy*, 446 F. Supp. 2d at 127 (rejecting an evidentiary hearing as to contacts between the SEC and the government where the defendant made only "conclusory assertions that the government misrepresented his status at the time of his [SEC] interview, misled him into making false statements, and that the S.E.C. operated a s a surrogate for the USAO").[12]

---

[11]     Indeed, if the defendant's interpretation of the May 24, 2014 e-mail exchange with Victim-2, discussed *supra* at footnote five, is credited, the defendant was aware that Victim-2 had made a report to law enforcement more than two years before criminal charges were filed.

[12]     The defendant makes much of the fact that Victim-2 and Attorney-A refused to reveal that he was "the target of a criminal investigation."  (Def. MC Br. at 9).  As set forth *supra* at pp. 8-10, Attorney-A was clear he did not know who the subjects of the law enforcement investigation were.  Moreover, the defendant has no basis to assert that he was a "target" of the investigation at any point during the pendency of the civil litigation filed by Victim-2, which was

### 3.    *Allegations Regarding Investigations in Other Jurisdictions*

The defendant also seeks to compel the production of "[d]ocuments and information reflecting declinations of this case by state or federal authorities in California and Louisiana." (Def. MC Br. at 12).  The defendant proffers no facts in support, even, of the existence of such investigations beyond the second-hand recounting of a conversation with Victim-2 in which Victim-2 purportedly claimed that he had sought to present the case to authorities in California and Louisiana.  *See* (Def. MC Br. at 5) (citing Mack Aff. ¶ 10).  Nor does the defendant proffer any facts to suggest that any such investigation, if it existed, was jointly conducted with the Government in this case.  The Government has consulted with the FBI and is unaware of any investigation, in either California or Louisiana, into the conduct at issue in the First Indictment, nor the Superseding Indictment.[13]

---

settled approximately eleven months before this case was filed.  The United States Attorney's Manual defines a "target" as "a person as to whom the prosecutor or the grand jury has substantial evidence linking him or her to the commission of a crime and who, in the judgment of the prosecutor, is a putative defendant."  U.S.A.M. § 9-11.151.  The defendant's claim that he was denied an opportunity to learn that fact in the course of the civil litigation is, thus, "wholly speculative."  *See Mahaffy*, 446 F. Supp. 2d at 126 (discussing the defendant's "speculation" that by the time he was interviewed by the SEC he was "a target of the criminal investigation" and noting that the defendant had been issued a testimonial subpoena by the SEC in July 2005 but was not charged when the criminal case was first indicted in August 2005 and was only notified he had become a target in December 2005).

[13]    The Government is aware of an investigation, which was closed without the filing of charges approximately six years before the instant case was filed, in the Central District of California into separate conduct by the defendant's co-defendant, James David Williams.  The Government has obtained certain materials originally collected in the course of that investigation.  Though the Government does not believe these documents constitute Rule 16 material, it has already produced those materials to the defense, in an abundance of caution.  To the extent there are any materials in the Government's possession originally collected or prepared in the course of that investigation, the Government will review them in connection with the exercise of its *Brady*, *Giglio*, and Jencks Act obligations.

### *4.      The Alleged Misconduct by Victims of the Charged Schemes*

The defendant also seeks to compel the production of all contacts between law enforcement and the victims "because it may provide grounds for a motion to dismiss the indictment for government misconduct depending on the extent of the government's involvement in, and knowledge of, the unlawful conduct by the so-called victims."  (Def. MC Br. at 10).  This claim is both speculative and without support even in the facts proffered by the defendant.

There is no support in the factual allegations levied by the defendant for the idea that the Government had any knowledge of, nor any part in, any "extortion," nor that the victims or their lawyers actually exerted influence over the Government's decisions in pursuing and prosecuting charges.  The mere suggestion that a motion to dismiss for government misconduct *might* be filed *if* such evidence turned up cannot be sufficient to permit the defendant to comb through communications to which he is not otherwise entitled under any discovery doctrine.  Indeed, in his opening brief, the defendant does not cite a single case in which such relief was granted under these circumstances.  To the extent the defendant is essentially seeking communications of the victims in an effort to gather potential impeachment material, those materials will be produced under *Giglio* and the Jencks Act in due course, *see United States v. Delacruz*, No. 14 Cr. 815 (KBF), 2015 U.S. Dist. LEXIS 61967, at *7 (S.D.N.Y. May 12, 2015) ("[T]he Government also has *Giglio* and Jencks Act obligations.  It is aware of those obligations, and the Court has no reason to doubt that it will comply with them at the appropriate time—sufficiently in advance of trial so as to give defense counsel adequate time to prepare for cross-examination of government witnesses"), and the defendant may, of course, rely on any such material in attempting to impeach or cross-examine these witnesses, consistent with the Rules of Evidence.

19

Moreover, the "unlawful conduct" alleged by the defendant is, primarily, a claim that certain victims engaged in "extortion" by making "[t]hreats of [c]riminal [p]rosecution" in an effort to induce settlement of civil matters.  (Def. MC. Br. at 4-7).  It is far from clear that the allegations set forth by defense counsel in his affidavit, some of which are accounts of events of which he was not personally involved, even if presumed to be complete and accurate, constitute extortion.  The defendant points, for example, to the fact that Victim-9 initiated a civil lawsuit against the defendant in July 2017, which referenced the First Indictment, and engaged in settlement discussions as to that lawsuit prior to the filing of the Superseding Indictment.  (Def. Br. at 6-7).  There is nothing improper or unusual, of course, about a victim of a fraud pursuing civil remedies while a criminal case is being investigated or prosecuted, nor anything to suggest that a mere reference to a criminal case in a civil filing is somehow inappropriate, let alone extortionate.  Additionally, many of the allegations are made without support to documents or exhibits and, to the extent they are presented based on the defendant's recollections and interactions, are provided without any sworn statement by the defendant.

The defendant also points to recordings made by Victim-2 of telephone calls involving himself and the defendant, which have been produced to the defense, noting that the defendant is unaware of "the government's role in the creation of these recordings[.]"  (Def. MC Br. at 7, 11).  The calls to which the defendant refers were recorded by Victim-2, acting at the direction of the FBI.[14]  The defendant posits that these recordings were made in violation of California law, presumably because the defendant was in California at the time, although the defendant does not

---

[14]     The direction of a witness to record certain telephone calls or conversations is, as this Court is aware, a well-established investigative practice and does not suggest that the witness had any broader role in or knowledge of the criminal investigation.

indicate that one way or the other in his opening brief.  *See* (Def. MC. Br. at 7, 11).

The admissibility of these recordings in this matter is governed by federal law, not state law, and there is no allegation that these recordings were obtained in violation of federal law. *See United States v. Morrison*, 153 F.3d 34, 57 (2d Cir. 1998) ("'Evidence admissible under federal law cannot be excluded because it would be inadmissible under state law.'") (quoting *United States v. Pforzheimer*, 826 F.2d 200, 204 (2d Cir. 1987) (internal quotation marks omitted)); *see also United States v. Johnson*, 484 F.2d 165, 168 (9th Cir. 1973) (rejecting a challenge to the admission of tape recordings based on a violation of California Penal Code § 632 because "reliance upon a state law inconsistent with the applicable federal law is misplaced"); *United States v. DiFelice*, 837 F. Supp. 81, 82 (S.D.N.Y. 1993) (denying a motion to suppress recordings which the defendant "may have established" violated state law).  Whether or not the recordings were obtained in violation of California law is, then, not a question this Court need consider.[15]  To the extent the defendant wishes to cross examine Victim-2 about his

---

[15]     Even if this Court were inclined to consider this question, any such finding would require substantial additional fact-finding as to, for example, the defendant's location at the time the calls were recorded and whether, given that location, he had a reasonable expectation that the calls were confidential, *see United States v. Regan*, 706 F. Supp. 1102, 1107 (S.D.N.Y. 1989) (denying a motion to suppress certain tape recordings allegedly obtained in violation of California Penal Code § 632 and noting, in considering whether the recordings were of "confidential communications" under that statute, that "it would be hard to overcome a natural presumption that persons making telephone calls from crowded and noisy trading rooms should expect that the communication may be overheard") (internal quotations omitted), as well as consideration of the fact that Victim-2 was acting at the direction of the FBI, *see* Memorandum of Assistant Attorney General Theodore B. Olson, "Applicability of the California Penal Code to Investigations Conducted by the Federal Bureau of Investigation" (Nov. 5, 1981), *available at* https://www.justice.gov/file/22791/download (last visited Jan. 19, 2018) (noting that "federal law enforcement officers who must violate state criminal law in the course of performance of their official duties could maintain a defense based upon the supremacy of a proper federal law enforcement function" and when an operation "requires the use of an informer or other

making of these recordings, he is free to do that at trial, consistent with the Rules of Evidence.

## II.    THE MOTION FOR THE REVIEW OF GRAND JURY MINUTES SHOULD BE DENIED.

The grand jury is afforded a presumption of regularity, and courts have repeatedly noted the importance of secrecy to the proper functioning of the grand jury. The defendant nevertheless seeks review of the minutes of the grand jury proceedings in this case based on the issuance of a Press Release, which contained no misinformation, and in contravention of well-settled law as to the Government's obligations in seeking an indictment and as to the appropriate use of hearsay and other evidence before the grand jury. The defendant's motion is, thus, without merit and should be denied.

### A.    Applicable Law

The bar for obtaining disclosure of grand jury minutes—an "extraordinary remedy"—is high. *United States v. Crespo*, No. 16 Cr. 536 (PKC), 2017 U.S. Dist. LEXIS 24065, at *11, 13 (S.D.N.Y. Feb. 21, 2017); *United States v. Paredes-Cordova*, No. 03 Cr. 987 (DAB), 2009 U.S. Dist. LEXIS 52415, at *5 (S.D.N.Y. June 8, 2009). Indeed, "[t]he Supreme Court 'consistently [has] recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings.'" *Paredes-Cordova*, 2009 U.S. Dist. LEXIS 52415, at *5 (quoting *United States v. Hunt,* No. 05 Cr. 395 (DAB), 2006 U.S. Dist. LEXIS 64887, at *29 (S.D.N.Y. Sep.6, 2006) (quoting *Douglas Oil v. Petrol Stops Northwest,* 441 U.S. 211, 218 (1979))).

In addition to the importance of secrecy to the functioning of the grand jury, grand jury proceedings carry a "presumption of regularity, which generally may be dispelled only upon

cooperating party, our opinions have treated this party as sharing in the officer's immunity") (citing *In re Neagle*, 135 U.S. 1, 75 (1890); *Clifton v. Cox*, 549 F.2d 722 (9th Cir. 1977)).

particularized proof of irregularities in the grand jury process." *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 301 (1991) (quoting *United States v. Mechanik*, 475 U.S. 66, 75 (1986) (O'Connor, J., concurring in the judgment)); *see also, e.g.*, *United States v. Leung*, 40 F.3d 577, 581 (2d Cir. 1994) (describing the "presumption of regularity that attaches to the grand jury proceedings"); *United States v. Nunan*, 236 F.2d 576, 594 (2d Cir. 1956) (same); *United States v. Gibson*, 175 F. Supp. 2d 532, 534 (S.D.N.Y. 2001) (same).   Therefore, a defendant will overcome the strong presumption of regularity only in "truly extreme cases." *United States v. Broward*, 594 F.2d 345, 351 (2d Cir. 1979).   A defendant cannot carry that burden without demonstrating "some grossly prejudicial irregularity or some other particularized need or compelling necessity" that outweighs the Government's and the grand jury's substantial interest in secrecy.   *Gibson*, 175 F. Supp. 2d at 534.   Such a showing requires more than mere "speculation and surmise," *Id.* (internal quotation marks omitted); rather, the defendant must present "persuasive evidence of actual grand jury prejudice" before the presumption of regularity may be overcome.   *United States v. Burke*, 700 F.2d 70, 82 (2d Cir. 1983).

As a result of the presumption of regularity and the importance of secrecy to the work of the grand jury, a defendant seeking disclosure or review of grand jury minutes must demonstrate a "strong showing of 'particularized need'" for the disclosure.   *United States v. King*, No. 10 Cr. 122 (JGK), 2011 U.S. Dist. LEXIS 45467, at *15 (S.D.N.Y. Apr. 27, 2011) (quoting *Dennis v. United States,* 384 U.S. 855, 871-72 (1966)).   Accordingly, "'a court may not review grand jury minutes,'"—let alone order those minutes disclosed to the defendant—"without concrete allegations of Government misconduct.'"   *United States v. Goff*, No. 15 Cr. 616 (KBF), 2016 U.S. Dist. LEXIS 77091, at *15-16 (S.D.N.Y. June 13, 2016) (quoting *Leung*, 40 F.3d at 582);

*see also King*, 2011 U.S. Dist. LEXIS 45467, at *15 (noting that the Second Circuit requires "a defendant make specific factual allegations of government misconduct" before ordering review of grand jury minutes) (citing *United States v. Torres*, 901 F.2d 205, 233 (2d Cir. 1990)).

### B.  Discussion

#### 1.  *The Presentation to the Grand Jury*

The defendant argues that purported factual inaccuracies contained in the Press Release suggest that the grand jury was "tainted by an inaccurate portrayal of the events" at issue.  (Def. GJ Br. at 3-5).  Even if the Press Release were inaccurate—and it is not—the defendant has not demonstrated a particularized need for disclosure of grand jury minutes based on the purported inaccuracies, nor has he cited a case in which purported inaccuracies in a single, post-Indictment press release were relied upon to justify a review of the grand jury minutes.

Though the basis for the defendant's suggestion of improprieties before the grand jury is the Press Release, the defendant focuses not on the description of the factual allegations contained in the Indictment and recited in the Press Release but, instead, on the comments attributed to former U.S. Attorney Preet Bharara and to then Assistant Director-in Charge of the Federal Bureau of Investigation Diego Rodriguez.[16]  Specifically, U.S. Attorney Bharara is quoted as saying that, "[w]ith lies about making feature-length films and documentaries, the defendants allegedly defrauded victims into investing over $12 million with them.  Rather than

---

[16]     The Press Release repeatedly makes clear that the charges contained in the Indictment and described in the release are merely allegations.  *See* (Ex. 1 at 1-2) (describing the Indictment as charging Brown and his co-defendants with "allegedly defrauding victims" and noting that "the entirety of the text of the Indictment and the description of the Indictment set forth herein constitute only allegations, and every fact described should be treated as an allegation").

making movies, the defendants perpetrated an advance fee scheme, allegedly using the investors'
money to pay themselves and pay other investors back." (Ex. 1 at 1). Assistant Director-in
Charge Rodriguez added that, "[a]s alleged, [the defendants] didn't provide marketing expertise
to feature films or invest their own millions into film projects as they promised investors.
Rather, they defrauded and deceived to acquire more than $12 million of investor funds to pay
back previous duped investors or fund personal expenses." (*Id.*)

The defendant contends that these statements are "demonstrably false" because
"summaries from the Internet Movie Database…prove that many of the films were not only
developed and released, but also received acclaim…." (Def. GJ Br. at 3). The defendant also
argues that "many investors were fully recompensed as a result of Mr. Brown's efforts on their
behalf." (*Id.* at 4). The defendant's contentions, even if taken as true, do not render the Press
Release inaccurate. At the outset, the defendant does not contend—nor could he—that all of the
films that were the subject of the charged fraud were produced and released. Even if "many" of
the movies at issue in this case were, ultimately, released, that fact does not change the
misrepresentations made to investors about how their money would be used, the other financial
commitments to the film, and the roles played by the defendant and his co-conspirators.
Similarly, the fact that some investors may have received money back through the time the
scheme was in operation does not render the Press Release "inaccurate." Indeed, both U.S.
Attorney Bharara and Assistant Director-in Charge Rodriguez noted in their comments that the
defendants were alleged to have paid certain investors back using fraud proceeds.

Moreover, even if the defendant's factual assertions are true, they are woefully
insufficient basis upon which to ground a review of the grand jury minutes. "It is axiomatic that

25

the grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge." *United States v. Williams*, 504 U.S. 36, 51 (1992).  As a result, "a district court cannot dismiss an indictment"—as the defense suggests they may seek to ask this Court to do upon a review of the grand jury minutes, (Def. GJ Br. at 3)—because the prosecution presented unreliable, misleading, or incomplete evidence to the grand jury." *United States v. Howard*, 216 F.3d 1074, 2000 U.S. App. LEXIS 13984, at *9 (2d Cir. 2000); *see also United States v. Mejia*, No. 11 Cr. 1032 (PAW), 2013 U.S. Dist. LEXIS 91254, at *14 (S.D.N.Y. June 26, 2013) ("Courts 'seldom presume prejudice to the defendant as a result of a grand jury error,' save in 'extraordinary' circumstances where 'errors of constitutional magnitude' are implicated.") (quoting *United States v. Carter*, No. 04 Cr. 594 (NRB), 2005 U.S. Dist. LEXIS 1127, at *4 (S.D.N.Y. Jan. 25, 2005)).  The Government, moreover, has "'no obligation to present exculpatory material to a grand jury.'"  *United States v. Vendetti*, No. 10 Cr. 360 (RJA), 2013 U.S. Dist. LEXIS 147821, at * 64 (W.D.N.Y. Jan. 22, 2013) (quoting *United States v. Regan*, 103 F.3d 1072, 1081 (2d Cir. 1997)); *see also Tremblay v. United States*, Nos. 08 Civ. 7030 (JFK), 05 Cr. 0783 (JFK), 2009 U.S. Dist. LEXIS 39416, *20-21 (S.D.N.Y. Apr. 21, 2009). Here, as discussed above, the material the defendant contends was likely not presented to the grand jury is not even exculpatory but, at best, may be relevant to defenses to be asserted at trial. Accordingly, the suggestion that such material was not presented to the grand jury cannot be the basis to grant the "extraordinary remedy" of a review of the grand jury minutes. [17]  *See Vendetti*,

---

[17]     The cases relied upon by the defendant are not to the contrary.  In *United States v. Twersky*, No. 92 Cr. 1082 (SWK), 1994 U.S. Dist. LEXIS 8744 (S.D.N.Y. June 29, 1994), the court granted *in camera* review of grand jury minutes not to assess the completeness or accuracy of the evidence presented but, instead, to review "what legal instructions, if any, the Grand Jury

2013 U.S. Dist. LEXIS 147821, at *64-65 (denying a motion to inspect grand jury minutes

based, in part, on claims of an incomplete presentation of evidence and noting that "'[t]he

prosecutor does not have a duty to present defendant's version of the facts'" to the grand jury)

(quoting *United States v. Olin Corp.*, 465 F. Supp. 1120, 1128 (W.D.N.Y. 1979)); *see also Goff*,

2016 U.S. Dist. LEXIS 77091, at *15-16 (denying a request for review of grand jury minutes in

the absence of "concrete support" for alleged irregularities before the grand jury).[18]

---

received," in light of an intervening Supreme Court decision which may have altered the legal
standards applicable to the case. *Id.* at *10-15. Similarly, in *United States v. Bravo-Fernandez*,
239 F. Supp. 3d 411 (D.P.R. 2017), a court in the District of Puerto Rico, relying on *Twersky*,
granted *in camera* review of the grand jury minutes based on an appellate court decision
deciding a question of first impression, which was handed down after the Indictment was
returned, in order to assess whether the grand jury was properly instructed as to "the law as later
interpreted by the First Circuit Court of Appeals." *Id.* at 415-16. Here, there has been no such
legal development subsequent to the return of the Indictment or the Superseding Indictment, and
the defendant makes no claims that the grand jury was improperly instructed as to the law.

[18]     The defendant also argues that the Press Release contained opinions as to the guilt of the
defendants charged in the Indictment in violation of federal regulations and local criminal rules,
analogizing the instant case to that of *United States v. Silver*, 103 F. Supp. 3d 370 (S.D.N.Y.
2015). (Def. GJ Br. at 5-6). In *Silver*, the court found that defendants had not demonstrated a
particularized need for a review of grand jury minutes, after considering the impact of extensive
press reporting and a series of public remarks (made after the defendant's arrest but prior to the
return of the indictment) on the grand jury that returned the indictment in that case. 103 F. Supp.
3d at 374-76, 382. *Silver* is, thus, distinguishable from the instant case, in which defendant's
motion rests entirely on a single press release, issued after the grand jury returned the Indictment.
Moreover, the comments of the former U.S. Attorney and Acting Director in Charge in the Press
Release merely describe the alleged activities of the defendants in the charged scheme and were
accompanied by repeated cautions as to the alleged nature of the charges. *See supra* fn.3; *see
also United States v. Smith*, 985 F. Supp. 2d 506, 539 (S.D.N.Y. 2013) (finding the U.S.
Attorney's statements at a press conference not to violate Local Criminal Rule 23.1(d) because
the statements did not "constitute opinions" as to guilty and "merely describe[d] [the
defendant's] alleged role in the conspiracy"). Even if the comments had been cause for concern,
an application for review of grand jury minutes "is not a disciplinary proceeding and therefore
the question of whether the U.S. Attorney's extrajudicial remarks violated any ethical rules is
not, per se, before the Court." *Silver*, 103 F. Supp. 3d at 376 (citing *United States v. Corbin*, 620
F. Supp. 2d 400, 408 (E.D.N.Y. 2009)).

### 2.    *The Presentation of Hearsay Evidence*

It is well-settled that the use of hearsay evidence in the grand jury is permissible and appropriate. Nevertheless, the defendant argues that review of the grand jury minutes is warranted to assess whether the victims of the charged fraud testified or the case was presented through hearsay testimony.  (Def. GJ Br. at 7).  The defendant seems to argue that a motion to dismiss the Superseding Indictment may be well-founded in either case, whether because the victims did not testify to the "extortionate and other criminal conduct" of which he accuses them or because the "complexity" of the case means that the use of hearsay testimony may have misled the jury.  (*Id.*)  Neither argument is meritorious, nor does the defendant's speculation as to these issues rise to the level of "particularized need" required to obtain review of the grand jury minutes.  *See, e.g.*, *Goff*, 2016 U.S. Dist. LEXIS 77091, at *15-16.

As discussed *supra* at pp. 18-21, the accusations made against the victims do not make out the case for "extortion" argued by the defendant.  Moreover, the defendant cites no case law—nor could he—to suggest that if victims did testify in the grand jury, the Government would have been obligated to elicit testimony about these issues; as discussed in detail above, the Government is not obligated to present exculpatory evidence, let alone evidence that might form the basis of an attack on the credibility of certain victims, to the grand jury.  *See Regan*, 103 F.3d at 1081; *Vendetti*, 2013 U.S. Dist. LEXIS 147821, at *64; *Tremblay*, 2009 U.S. Dist. LEXIS 39416, at *20-21.

Nor is the potential use of hearsay evidence before the grand jury improper.  Indeed, "[i]t is entirely permissible for the government to use hearsay evidence in its presentation to the grand jury."  *United States v. Ruggiero*, 934 F.2d 440, 447 (2d Cir. 1991).  "Even 'double-hearsay' is

admissible before the grand jury, and the use of such testimony is not sufficient evidence of Government misconduct to justify review of the grand jury minutes." *United States v. Shyne*, No. 05 Cr. 1067 (KMK), 2007 U.S. Dist. LEXIS 26994, at *105 (S.D.N.Y. Apr. 5, 2007), (citing *Carter*, 2005 U.S. Dist. LEXIS 1127, at *16-17).   In fact, it is "well settled" that "'the use of hearsay testimony before a grand jury raises questions about the validity of an indictment only when the prosecutor misleads the grand jury into thinking it is getting first-hand testimony'" or "'where there is a high probability that if eyewitness rather than hearsay testimony had been used, the defendant would not have been indicted.'"   *United States v. Torres*, No. 93 Cr. 673 (KMW), 1994 U.S. Dist. LEXIS 1554, at *4 (S.D.N.Y. Feb. 16, 1994) (quoting *United States v. Dyman*, 739 F.2d 762, 767 (2d Cir. 1984)).   The defendant makes no "specific factual allegations" to suggest that either circumstance is implicated here; mere speculation as to these points cannot support a review of the grand jury minutes.   *See Shyne*, 2007 U.S. Dist. LEXIS 26994, at *105; *Carter*, 2005 U.S. Dist. LEXIS 1127, at *16-17; *United States v. Lester*, No. 95 Cr. 216 (AGS), 1995 U.S. Dist. LEXIS 16570, at *26-29 (S.D.N.Y. Nov. 8, 1995).

**CONCLUSION**

For the reasons set forth above, the motions should be denied in their entirety.

Dated: New York, New York
January 19, 2018

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney
for the Southern District of New York

By:      /s/
Katherine Reilly
Noah Solowiejczyk
Assistant United States Attorneys
Tel.: (212) 637-6521/2473

30