UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                            :
UNITED STATES OF AMERICA                    :
                                            :
    - v. -                                  :
                                            :   S6 16 Cr. 436 (KMW)
STEVEN BROWN,                               :
                                            :
            Defendant.                      :
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# THE GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNTS ONE, TWO AND FIVE TO THE EXTENT THE CHARGES RELY ON CONDUCT OUTSIDE THE STATUTE OF LIMITATIONS AND TO STRIKE PARAGRAPHS FOUR THROUGH TEN

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
Attorney for the United States of America

Katherine Reilly
Noah Solowiejczyk
Ryan B. Finkel
Assistant United States Attorneys
        - Of Counsel -

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT........................................................................................1

BACKGROUND.............................................................................................................1

ARGUMENT...................................................................................................................4

    A.  Applicable Law……………………….......................................................4

    B.  Discussion………………………...............................................................6

        1.  The Allegations Regarding Victim-1
           In Counts One and Five Are Not Time-Barred………………………….....6

        2.  The Allegations Regarding Victim-1
           In Count Two Are Not Time-Barred…………………………………....9

CONCLUSION..............................................................................................................12

## TABLE OF AUTHORITIES

**Cases**

*Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 343 n.16 (1952) ................................... 5
*Costello v. United States*, 350 U.S. 359, 363 (1956) ...................................................................... 4
*Grunewald v. United States*, 353 U.S. 391, 396-97 (1957) ............................................................ 6
*Hamling v. United States*, 418 U.S. 87, 117 (1974) ....................................................................... 5
*United States v. Abrams*, 539 F. Supp. 378, 383–84 (S.D.N.Y. 1982) ......................................... 13
*United States v. Alfonso*, 143 F.3d 772, 777 (2d Cir.1998) ............................................................ 5
*United States v. Aracri*, 968 F.2d 1512, 1521 (2d Cir. 1992) .............................................. 6, 8, 10
*United States v. Ben Zvi*, 242 F.3d 89, 97 (2d Cir. 2001) ............................................................... 6
*United States v. Berger*, 224 F.3d 107, 114 (2d Cir. 2000) ........................................................... 6
*United States v. De La Pava*, 268 F.3d 157, 165 (2d Cir. 2001) .................................................... 4
*United States v. Elie*, No. 10 Cr. 336 (LAK), 2012 WL 383403, at *1 (S.D.NY. Feb. 7, 2012) ... 4
*United States v. FNU LNU*, No. 06 Cr. 846 (DAB), 2007 WL 1149261, at *2 (S.D.N.Y. Apr. 12, 2007) ............................................................................................................................................ 5
*United States v. Inserra*, 34 F.3d 83, 89 (2d Cir. 1994) ............................................................... 14
*United States v. Kerik*, 615 F. Supp. 2d 256, 268 (S.D.N.Y. 2009) ............................................. 11
*United States v. Kim,* 246 F.3d 186, 191 (2d Cir. 2001) ............................................................... 12
*United States v. Kogan,* No. 16 Cr. 221 (RWS), 2017 WL 6547743, at *6 (S.D.N.Y. Dec. 21, 2017) .......................................................................................................................................... 13
*United States v. Levine*, 249 F. Supp. 3d 732, 736 (S.D.N.Y. 2017) ............................................. 5
*United States v. Maldonado-Rivera*, 922 F.2d 934, 963 (2d Cir. 1990) ............................... 6, 8, 10
*United States v. Margiotta*, 646 F.2d 729, 733 (2d Cir. 1981) ..................................................... 11
*United States v. Molina*, No. 11 Cr. 528 (JFK), 2013 WL 2455922, at *2 (S.D.N.Y. June 5, 2013) ...................................................................................................................................................... 5
*United States v. Ohle*, 678 F. Supp. 2d 215, 222 (S.D.N.Y. 2010) ................................................ 8
*United States v. Rosa*, 11 F.3d 315, 333-34 (2d Cir. 1993) .......................................................... 14
*United States v. Rutigliano*, 790 F.3d 389, 396 (2d Cir. 2015) .................................................... 13
*United States v. Salmonese,* 352 F.3d 608, 614 (2d Cir.2003) ....................................................... 6
*United States v. Schlesinger*, 360 F. Supp. 2d 512, 521 (E.D.N.Y. 2005) ..................................... 7
*United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013) ......................................................... 5
*United States v. Thai*, 29 F.3d 785, 812 (2d Cir. 1994) ............................................................... 14
*United States v. Tutino*, 883 F.2d 1125, 1141 (2d Cir.1989) ....................................................... 11
*United States v. Upton*, 856 F. Supp. 727, 741-42 (E.D.N.Y. 1994) ........................................... 12
*United States v. Vanwort*, 887 F.2d 375, 383 (2d Cir.1989) .......................................................... 8
*United States v. Vasquez*, 113 F.3d 383, 387 (2d Cir.1997) ........................................................ 10
*United States v. Wey*, No. 15-CR-611 (AJN), 2017 WL 237651, at *3 (S.D.N.Y. Jan. 18, 2017) 12
*United States v. Williams*, 540 U.S. 36, 54 (1992) ........................................................................ 4
*United States v. Zarrab*, No. 15 CR 867 (RMB), 2016 WL 6820737, at *2 (S.D.N.Y. Oct. 17, 2016) ............................................................................................................................................ 4

**PRELIMINARY STATEMENT**

Steven Brown, the defendant, has moved to dismiss Counts One, Two and Five of the Superseding Indictment, to the extent that these charges rely on conduct outside the five-year statute of limitations period. (Dkt. No. 162) (the "Motion"). Brown further seeks to strike paragraphs 4 through 10 of the Superseding Indictment on this basis. Brown contends that to the extent Counts One, Two, and Five are based on conduct that occurred in 2009 and 2010, they must be dismissed as untimely because these allegations are distinct and must be separated from the single continuing conspiracy described in Counts One and Five, and the single wire fraud scheme described in Count Two.

The Motion should be denied in its entirety. The Superseding Indictment alleges one continuing scheme hatched by Brown and Williams encompassing multiple victims. As is described below, it would be contrary to well-settled law to treat the allegations with respect to the first victim of this scheme ("Victim-1") as separate from the continuing scheme that is alleged in the Superseding Indictment.

**BACKGROUND**

On June 22, 2016, the defendant, Steven Brown, along with James David Williams and Gerald Seppala, were charged in Indictment S3 16 Cr. 436 (Dkt. No. 1; the "First Indictment") with: (1) conspiring to commit wire fraud, between in or about 2012 and in or about June 2016; (2) the commission of wire fraud, between in or about 2012 and in or about June 2016; and (3) conspiring to commit money laundering, between in or about 2012 and in or about December 2014. The charges contained in the First Indictment stem from the defendants' participation in a scheme to solicit investments in films, including by falsely promising guaranteed returns and falsely claiming certain funds had already been invested in those films. The First Indictment further

1

alleged that the defendants diverted substantial portions of the invested funds to pay for their personal expenses, among other things. (*See* First Indictment ¶¶ 1-3).

On December 7, 2017, the grand jury returned the operative indictment, S6 16 Cr. 436, (Dkt. No. 124; the "Superseding Indictment"). The Superseding Indictment charges Brown in five counts. Count One charges Brown with conspiring with Williams and Seppala[1], among others, to commit wire fraud, between in or about 2009 and in or about 2016. Count One alleges that the wire fraud conspiracy included eight separate victims (referred to as "Victims 1-8") and – like the wire fraud conspiracy charged in the First Indictment – relates to a scheme to defraud investors in film projects. (*Id.* ¶¶ 1-49; 63-64). Many of the victims identified in the Superseding Indictment, including, for example, Victim-2 and Victim-4, had been identified as victims in the First Indictment (albeit using different anonymized identifiers). Count Two of the Superseding Indictment charges Brown with participating in a wire fraud scheme between in or about 2009 and in or about 2016 in connection with a scheme to defraud investors – specifically Victims 1-8 – in film projects. (*Id.* ¶ 65-66). Count Five charges Brown with conspiring to commit money laundering, from at least in or about 2009 until in or about 2016. (*Id.* ¶ 73-76).[2]

As relevant to the Motion, the Superseding Indictment alleges that between 2009 and 2016, Brown and his co-conspirators solicited millions of dollars from various investors, purportedly to finance the marketing or production of certain film projects, but that in reality these funds were predominantly used instead to fund other projects, to pay back other defrauded investors, and to pay for the personal expenses of Brown and others. (Superseding Indictment ¶ 3). The

---

[1] As the Court is aware, Williams and Seppala each pleaded guilty and are not named as defendants in the Superseding Indictment.

[2] Counts Three and Four charge distinct wire fraud conspiracies and are not challenged in connection with the instant motion.

Superseding Indictment further alleges that during this same period, Brown and his co-conspirators defrauded multiple victims by, among things, making material misrepresentations regarding their own investments in the films and/or funding that they claimed they had already received from other investors, and by using falsified financial documents to support their claims. (*Id.* ¶ 2).

With respect to Victim-1, the Superseding Indictment details that Brown solicited Victim-1's investments, including by email and telephone, beginning in or about 2009. (*Id.* ¶ 4). In connection with the scheme to defraud, Brown introduced Victim-1 to his co-conspirator, James David Williams, as a person who could assist with film distribution, including by committing funds for distribution through Legacy Film Crest, LLC, an entity Williams controlled ("Legacy"). (*Id.* ¶ 4). It is further alleged that Victim-1 was falsely promised a guaranteed return on investment and that Brown and Williams falsely told Victim-1 that they had contributed certain funds to a film that, in truth and in fact, they had not. (*Id.* ¶ 5). Victim-1 ultimately invested $200,000 in a film ("Film-2"), based, at least in part, on false representations by Brown and Williams, transferring the funds into a bank account held in the name of "Remnants Productions LLC (the "Remnants Account"). (*Id.* ¶ 6). The signers on the Remnants Account were Brown and Williams. (*Id.*).

Brown went on to make further false representations to Victim-1 to the effect that if Victim-1 invested an additional $65,000 into Film-2, Brown would invest an equal amount. (*Id.* ¶ 8). In reliance on these representations, Victim-1 invested the additional funds; in truth and in fact, however, Brown never invested the $65,000 he claimed he would. (*Id.* ¶ 9). In addition, of the additional $65,000 Victim-2 invested, Brown diverted at least approximately $15,000 of these funds to another account Brown controlled, and then used the funds to pay for various expenses unrelated to production of Film-2. (*Id.* ¶ 8).

3

**ARGUMENT**

    A. **Applicable Law**

    "The dismissal of an indictment is an 'extraordinary remedy' reserved only for extremely limited circumstances implicating fundamental rights." *United States v. Zarrab*, No. 15 CR 867 (RMB), 2016 WL 6820737, at *2 (S.D.N.Y. Oct. 17, 2016) (quoting *United States v. De La Pava*, 268 F.3d 157, 165 (2d Cir. 2001)).  Indeed, it is well-settled that "[a]n indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for trial of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 363 (1956).  A facially valid indictment is not subject to challenge based on the quality or quantity of evidence. *See United States v. Williams*, 540 U.S. 36, 54 (1992); *United States v. Elie*, No. 10 Cr. 336 (LAK), 2012 WL 383403, at *1 (S.D.NY. Feb. 7, 2012) (same).  To be valid on its face, "[a]n indictment is sufficient if it 'first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)).  On a pretrial motion to dismiss, allegations set forth in an indictment must be taken as true, and read in the light most favorable to the Government.  *See Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 343 n.16 (1952); *United States v. Alfonso*, 143 F.3d 772, 777 (2d Cir.1998).

    Furthermore, "courts in this district have found that 'a pre-trial motion to dismiss based on statute of limitations grounds may be premature if the indictment is facially sufficient and the defendant's argument in favor of dismissal requires a determination of factual issues.'" *United States v. Levine*, 249 F. Supp. 3d 732, 736 (S.D.N.Y. 2017) (quoting *United States v. FNU LNU*,

No. 06 Cr. 846 (DAB), 2007 WL 1149261, at *2 (S.D.N.Y. Apr. 12, 2007)); *see also United States v. Molina*, No. 11 Cr. 528 (JFK), 2013 WL 2455922, at *2 (S.D.N.Y. June 5, 2013).

In the Second Circuit, a conspiracy charge requiring proof of overt acts—such as the wire fraud conspiracy charged in Count One—is within the statutes of limitations if the conspiracy was " ongoing within the five year period preceding the indictment" and "'at least one overt act in furtherance of the conspiratorial agreement [was] performed within that period.'" *United States v. Ben Zvi*, 242 F.3d 89, 97 (2d Cir. 2001) (quoting *Grunewald v. United States*, 353 U.S. 391, 396-97 (1957)); *see also United States v. Salmonese,* 352 F.3d 608, 614 (2d Cir.2003) (Government satisfies the statute of limitations for a conspiracy charge if it establishes that the conspiracy operated within the five-year period preceding the indictment and that a co-conspirator knowingly committed at least one overt act in furtherance of the scheme within that period).

The Second Circuit has held that a single conspiracy requires agreement to participate in a "collective venture directed toward a common goal." *United States v. Aracri*, 968 F.2d 1512, 1521 (2d Cir. 1992) (quoting *United States v. Maldonado-Rivera*, 922 F.2d 934, 963 (2d Cir. 1990)). Whether or not the Government has proven a single conspiracy is a question of fact for the jury. *See United States v. Berger*, 224 F.3d 107, 114 (2d Cir. 2000). Therefore, on a motion to dismiss, the Government need only sufficiently allege the existence of a single conspiracy in its indictment. *See, e.g., United States v. Schlesinger*, 360 F. Supp. 2d 512, 521 (E.D.N.Y. 2005) (denying a motion to dismiss a conspiracy count where the indictment alleged overt acts occurring over a twelve year period, the last of which was within the five year statute of limitations).

### B. Discussion

The defendant contends that to the extent Counts One, Two, and Five are based on conduct that occurred in 2009 and 2010, they must be dismissed as untimely. Specifically, the defendant maintains that the scheme involving Victim-1 is distinct from the other alleged schemes and, therefore, must be separated from the single continuing conspiracy described in Counts One and Five of the Superseding Indictment, and the single wire fraud scheme described in Count Two.[3] The defendant's motion to dismiss on statute of limitations grounds is without merit and should be denied.

#### 1. *The Allegations Regarding Victim-1 In Counts One and Five Are Not Time-Barred*

The Superseding Indictment sufficiently alleges a single continuing conspiracy to defraud, and a single conspiracy to commit money laundering, both of which continued up to and including in or about 2016, well within the five-year statute of limitations. The defendant appears to argue that the criminal conduct alleged in fact constitutes multiple conspiracies, the earliest of which is outside of the statute of limitations. This argument is inconsistent with the case law setting forth what constitutes a single conspiracy and cannot prevail on a motion to dismiss.

In order to survive a motion to dismiss, an indictment need only allege, on its face, a single conspiracy. *United States v. Ohle*, 678 F. Supp. 2d 215, 222 (S.D.N.Y. 2010) (citing *United States v. Vanwort*, 887 F.2d 375, 383 (2d Cir. 1989)). Whether or not the government has shown a single

---

[3] The defendant also argues that, because Victim-1 and the defendant reached a civil settlement in June 2011, the charged conspiracies and related wire fraud "came to an end" at that time. (Def. Brf. at 5). A settlement of civil litigation is completely unrelated to and independent of the relevant question here: whether or not the defendant and his co-conspirators continued their criminal conspiracy to defraud others using similar means and methods. The defendant cites no authority for the proposition that a civil settlement somehow renders the remainder of the criminal scheme that followed thereafter a separate scheme or conspiracy, especially where, as here, the scheme to defraud involved the same participants, employing similar means and methods.

conspiracy or multiple conspiracies "is a question of fact for a properly instructed jury." *Berger*, 224 F.3d at 114. The Second Circuit has held that a single conspiracy requires agreement to participate in a "collective venture directed toward a common goal." *Aracri*, 968 F.2d at 1521 (2d Cir. 1992 (quoting *Maldonado-Rivera*, 922 F.2d at 963).

Here, the Superseding Indictment alleges just such a "collective venture"—an effort by Brown and Williams, consistently employing the same techniques over time in furtherance of a "common goal," inducing investors to put money into film projects, when in truth and in fact a large portion of the funds were used for other purposes. The scheme to defraud Victim-1, carried out by Brown and Williams, was part of a larger conspiracy that involves both men deploying similar means and methods and making similar misrepresentations to Victims 2 through 8.

By way of example, Brown told Victim-1 that if Victim-1 invested $65,000 in Film-2, Brown would invest the same amount of money to complete production. Victim-1 invested in reliance on this false promise by Brown, and at least a portion of the invested funds were diverted for purposes unrelated to Film-2. (Superseding Indictment ¶¶ 8-9). As they continued to conspire to defraud, Brown and Williams made similar misrepresentations to other victims. Victim-2, for example, was falsely told on multiple occasions that others had already made investments in films into which he was putting money. (*See, e.g., Id.* ¶ 13-15; 18-20; 22-25; 26-28). Other later victims of Brown and Williams' continuing scheme to defraud relied on similar misrepresentations. (*See, e.g., Id.* ¶ 33-37; 40; 42-44).

Moreover, the scheme to defraud Victim-1 included diverting Victim-1's funds for uses other than the film in which Victim-1 believed he was investing. (*Id.* ¶ 8). Brown and Williams similarly diverted victim funds for purposes other than those for which those funds were solicited throughout the life of the conspiracy. While these victims believed they were investing in film

7

projects that Brown and Williams were involved in, in reality large portions of these funds were diverted for purposes unrelated to any films (*See, e.g., id.* ¶ 21, 29, 44, 46, 49).  Brown and his co-conspirators made the misrepresentations about how the investors' funds would be used with the common objective of fraudulently retaining these funds for personal economic benefit.

The defendant also suggests that the lapse in time between the conduct related to Victim-1 and the alleged efforts to defraud the other identified victims means that the relevant counts in the Superseding Indictment necessarily charge separate conspiracies.  In so arguing, the defendant claims—incorrectly—that the Superseding Indictment alleges conduct as to Victim-1 that concluded in 2011 and then does not alleged additional conduct in furtherance of the conspiracy until April 2013.  (Def. Brf. at 5).  To the contrary, the Superseding Indictment in fact alleges that Brown and others attempted to defraud Victim-4 beginning in or about 2012.  (Superseding Indictment ¶ 41).

In addition, the case law in this Circuit is clear that a single conspiracy is not severed into multiple conspiracies simply because there has been a lapse in time or because the conspiracy involved more than one phase. *Aracri*, 968 F.2d at 1521 (citations omitted); s*ee also United States v. Vasquez*, 113 F.3d 383, 387 (2d Cir.1997) ("Where there is sufficient proof of an ongoing connection between transactions, one conspiracy is not transformed into multiple conspiracies simply because it occurs in more than one stage and in different times."); *Maldonado–Rivera*, 922 F.2d at 963 ("[A] single conspiracy is not transformed into multiple conspiracies merely by virtue of the fact that it may involve two or more phases or spheres of operation, so long as there is sufficient proof of mutual dependence and assistance[.]") (internal citation omitted).

Here, the brief gap between the efforts to defraud Victim-1 and the efforts to defraud later victims that followed does not change the fact that Brown and others are alleged to have

8

participated in one overarching conspiracy to commit wire fraud and one overarching conspiracy to commit money laundering. The Superseding Indictment alleges a single conspiracy unified by its primary participants, the means employed, and the common goal that existed throughout the life of the conspiracy. As alleged, the relevant conspiracies existed into 2016, well within the statute of limitations, and the Superseding Indictment alleges numerous acts in furtherance of said conspiracy that occurred within the five-year statute of limitations. Nothing more is required at the pre-trial stage and, accordingly, the Motion should be denied. *See, e.g., United States v. Kerik*, 615 F. Supp. 2d 256, 268 (S.D.N.Y. 2009) ("Because the Court finds that the Government can offer at least one overt act in furtherance of the conspiracy's scope within the applicable statute of limitations, . . . Kerik's motion to dismiss Count One as untimely is denied.").

### *2. The Allegations Regarding Victim-1 In Count Two Are Not Time-Barred*

Brown further asserts that the Superseding Indictment's charge of substantive wire fraud must also be dismissed as the crimes "were allegedly committed and completed in 2009-2010, at which points the limitations period began to run" and that "[f]or wire fraud, the limitations period begins to run from the date of the allegedly fraudulent transmission." (Def. Brf. at 4). Here again, however, the Superseding Indictment in Count Two alleges a single continuing wire fraud scheme, which consisted of multiple acts over the course of several years and is, as a result, not time barred merely because some of those acts took place more than five years before the charge was returned.

The Second Circuit has repeatedly found that:

> [A]cts that could be charged as separate counts of an indictment may instead be charged in a single count if those acts could be characterized as part of a single continuing scheme. As long as the essence of the alleged crime is carrying out a single scheme to defraud, then aggregation is permissible.

*United States v. Tutino*, 883 F.2d 1125, 1141 (2d Cir.1989) (rejecting a challenge to the aggregation of two drug sales in a single substantive count in order to meet jurisdictional limits as

9

to drug weight); *see also United States v. Margiotta*, 646 F.2d 729, 733 (2d Cir. 1981) (rejecting a challenge to a single mail fraud count based on several mailings); *United States v. Upton*, 856 F. Supp. 727, 741-42 (E.D.N.Y. 1994) (holding that wire fraud charge involving several victims were not duplicitous and were "committed as part of a single scheme," and noting that the Second Circuit has held that "an indictment charging mail fraud is not impermissibly duplicitous because it alleges numerous mailings in a single count.") (citing *Margiotta*, 646 F.2d at 729); *United States v. Wey*, No. 15-CR-611 (AJN), 2017 WL 237651, at *3 (S.D.N.Y. Jan. 18, 2017) (holding that substantive charges of wire fraud, securities fraud, and money laundering involving several victims were not duplicitous as they were "unmistakably part of and in furtherance of a single overarching scheme"); *United States v. Kim,* 246 F.3d 186, 191 (2d Cir. 2001) ("Wire fraud is likewise a continuing offense.").

The scheme to defraud Victims 1 through 8 alleged in Count Two of the Superseding Indictment is a single continuing wire fraud scheme. As is described above, *see supra* 6-9, the defendant and other participants executed this fraudulent scheme by using the same methods in order to achieve the same ultimate goal of soliciting funds from investors based on false representations. There is no merit to the defendant's argument that the conduct involving Victim-1 is any different or is separate from that involving the numerous other victims that followed. Because this scheme continued up to and including in or about 2016, a period well within the five-year statute of limitations, the defendant's challenge to the substantive wire fraud charge should be rejected. *See, e.g., United States v. Kogan,* No. 16 Cr. 221 (RWS), 2017 WL 6547743, at *6 (S.D.N.Y. Dec. 21, 2017) (denying motion to dismiss portions of health care fraud indictment relating to conduct that allegedly occurred prior to limitations period because "[a]s to substantive healthcare fraud, it, like other scheme offenses, is also a continuing offense") (citing *United States*

*v. Rutigliano*, 790 F.3d 389, 396 (2d Cir. 2015)); *United States v. Abrams*, 539 F. Supp. 378, 383–84 (S.D.N.Y. 1982) (denying motion to dismiss wire fraud count where certain phone calls were within limitations period and other acts were beyond the limitations period and noting "[t]he fact that a scheme may extend back beyond the limitation period does not outlaw an offense committed in furtherance of that scheme within the period") (citations omitted).[4]

---

[4] The defendant argues that if his motion to dismiss the portions of Counts One, Two, and Five is granted, the allegations regarding Victim-1 in paragraphs 4 through 10 of the Superseding Indictment should be stricken. (Def. Brf. at 6). Because the motion to dismiss is without merit, for the reasons set forth above, the motion to strike should similarly be denied. Brown further argues if the charges as to Victim-1 are dismissed, and the related paragraphs of the Superseding Indictment stricken, the Government should be precluded from presenting the evidence underlying these allegations as Rule 404(b) evidence at trial because it would be more prejudicial than probative and would confuse the jury. (Def. Brf. at 6). While the Government reserves the right to brief that issue in the event that the Court grants Brown's motion to dismiss the allegations regarding Victim-1 – which the Court should not for all of the reasons stated herein – the argument that such evidence would be more prejudicial than probative and would confuse the jury lacks merit. The conduct alleged as to Victim-1 is, as is described above, similar in nature to the conduct alleged as to the other victims of the scheme, and thus would not be unduly prejudicial as the jury will already be aware of such conduct with respect to the remaining victims. Moreover, even if the Court granted the defendant's motion, such conduct is admissible at trial as background of the conspiracy, as the scheme to defraud Victim-1 involved the same participants and goes to the background and nature of the relationship between Brown and Williams. *See, e.g., United States v. Thai*, 29 F.3d 785, 812 (2d Cir. 1994) ("Rule [404(b)] is not controlling here, for the evidence of which defendants complain was not evidence of 'other' crimes. When the indictment contains a conspiracy charge, uncharged acts may be admissible as direct evidence of the conspiracy itself.") (citations omitted). Some of the well-established bases for the admission of uncharged acts as evidence of a conspiracy in the Second Circuit are to: (1) prove the existence of the charged conspiracy; (2) explain the development of the illegal relationship between the co-conspirators; (3) explain the mutual trust that existed between the co-conspirators; and (4) complete the story of the crime charged. *See, e.g., United States v. Inserra*, 34 F.3d 83, 89 (2d Cir. 1994) ("evidence of other bad acts may be admitted to provide the jury with the complete story of the crimes charged by demonstrating the context of certain events relevant to the charged offense"); *United States v. Rosa*, 11 F.3d 315, 333-34 (2d Cir. 1993) (evidence of car theft and drug dealing properly admitted to show development of illegal relationship and mutual trust between defendant and co-conspirator and to explain how defendant came to play important role in conspiracy).

## CONCLUSION

For the reasons set forth above, the Motion should be denied in its entirety.

Dated: New York, New York
February 12, 2018

                      Respectfully submitted,

                      GEOFFREY S. BERMAN
                      United States Attorney
                      for the Southern District of New York

By:       /s/
                      Katherine Reilly
                      Noah Solowiejczyk
                      Ryan B. Finkel
                      Assistant United States Attorneys
                      Tel.: (212) 637-6521/2473/6612