UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,                :          16 Cr. 436 (KMW)

                Plaintiff,        :

       -against-                   :

STEVEN BROWN,                            :

            Defendant.       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**DEFENDANT STEVEN BROWN'S MEMORANDUM OF LAW
IN SUPPORT OF HIS MOTIONS *IN LIMINE***

DOAR RIECK KALEY & MACK
Walter Mack
David Rivera
Michael Minnefor
217 Broadway, Suite 707
New York, New York 10007
Tel: 212-619-3730
Fax: 212-962-5037
*Attorneys for Defendant Steven Brown*

TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.      THE GOVERNMENT'S RULE 404(b) "OTHER BAD ACTS"
        EVIDENCE AGAINST STEVEN BROWN SHOULD NOT
        BE ADMITTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

        A.      Applicable Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        B.      Evidence of Other Alleged Bad Acts in 2006 and 2007 – Four
                to Five Years Earlier Than the Relevant 2011-2014 Conspiracy
                Alleged in Count Four – is Not Admissible as Direct Evidence of the
                Conspiracy or Pursuant to Rule 404(b) and Should be Excluded . . . . . . . 5

        C.      Having a Trial on Two Additional Separate Instances of Uncharged
                Misconduct – Along with the Seven Mini-Trials Already Necessitated
                by Conduct Charged in the Superseding Indictment – Threatens to
                Unnecessarily Protract the Trial and Confuse the Jury . . . . . . . . . . . . . . 6

II.     THE COURT SHOULD EXCLUDE OR ORDER REDACTION OF
        DOCUMENTS OR RECORDINGS CONTAINING INFLAMMATORY
        LANGUAGE, INCLUDING ANY PROFANE, SEXIST OR OTHERWISE
        OFFENSIVE LANGUAGE IRRELEVANT TO THE MATTERS IN DISPUTE
        AT TRIAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

III.    THE COURT SHOULD EXCLUDE THE EVIDENCE OF ANY
        IRRELEVANT POLITICAL COMMENTARY, INCLUDING
        EVIDENCE OF THE DEFENDANT'S POLITICAL AFFILIATION . . . . . . . . . . . . . 10

IV.     DEFENDANT RESERVES HIS RIGHTS TO OBJECT TO THE
        ADMISSION OF EXHIBITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

V.      THE GOVERNMENT SHOULD BE DIRECTED TO IDENTIFY NOW
        ANY RECORDED TELEPHONE CALLS THAT IT INTENDS TO
        OFFER INTO EVIDENCE DURING ITS CASE-IN-CHIEF . . . . . . . . . . . . . . . . . . . . 11

VI.     DEFENDANT STEVEN BROWN IS ENTITLED TO THE IMMEDIATE
        PRODUCTION OF ALL *BRADY/GIGLIO* MATERIAL . . . . . . . . . . . . . . . . . . . . . . . 12

VII.    ALL 3500 MATERIAL SHOULD BE PRODUCED TWO
        WEEKS BEFORE TRIAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## **TABLE OF AUTHORITIES**

## **CASES**

*Brady v. Maryland,*
    373 U.S. 83 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Demirovic v. Ortega,*
    2017 WL 4621089 (E.D.N.Y. Oct. 13. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Disimone v. Phillips,*
    461 F.3d 181 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Evans v. Cernics, Inc.,*
    2017 WL 4863207 (Oct. 26, 2017 W.D. Pa.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Giglio v. United States,*
    405 U.S. 150 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Huddleston v. United States,*
    485 U.S. 681 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 4

*Leka v. Portuondo,*
    257 F.3d 89 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Old Chief v. United States,*
    519 U.S. 172 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*United States v. Aboumoussallem,*
    726 F.2d 906 (2d Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Bagaric,*
    706 F.2d 42 (2d Cir. 1983 ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Bagley,*
    473 U.S. 667 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Barret,*
    2012 WL 171321 (E.D.N.Y. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11 fn.

*United States v. Bertolotti,*
    529 F.2d 149 (2d Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11 fn.

*United States v. Birney,*
    686 F .2d 102 (2d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Bortnovsky,*
    820 F.2d 572 (2d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Carboni,*
    204 F.3d 39 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5

*United States v. Colon,*
    880 F.2d 650 (2d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Coppa,*
    267 F.3d 132 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Dill,*
    2011 WL 6042387, at *1 (S.D. Indiana Dec. 3, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Fitzgerald,*
    279 Fed. App'x 444 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6 fn.

*United States v. Fortenberry,*
    860 F.2d 628 (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5 fn.

*United States v. Gardell,*
    2001 WL 1135948, at *6 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Johansen,*
    50 F.3d 347 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11 fn.

*United States v. LaFlam,*
    369 F.3d 153 (2d Cir.2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Lyons,*
    2017 WL 4736724 (Oct. 18, 2017 D.N.M) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. McCallum,*
    584 F.3d 471 (2d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*United States v. Mohel,*
    604 F.2d 748 (2d Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. O'Connor,*

iv

580 F.2d 38 (2d Cir. 1970 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Ortiz,*
857 F.2d 900 (2d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Polasek,*
162 F.3d 878 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6 fn.

*United States v. Salameh,*
152 F.3d 88 (2d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Scott,*
677 F.3d 72 (2d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Vaid,*
2017 WL 3891695, *13 (S.D.N.Y. September 5, 2017) . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Vasquez,*
840 F. Supp.2d 564 (E.D.N.Y. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Williams,*
596 F.2d 44 (2d Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## **AUTHORITIES**

Fed.R.Evid. 403 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 6

Fed.R.Evid. 404(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,                    :            16 Cr. 436 (KMW)

                            Plaintiff,            :

            -against-                    :

STEVEN BROWN,                                      :

                     Defendant.            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## PRELIMINARY STATEMENT

Steven Brown respectfully submits this memorandum of law in support of his motions *in limine*.

## I.

## THE GOVERNMENT'S RULE 404(b) "OTHER BAD ACTS" EVIDENCE AGAINST STEVEN BROWN SHOULD NOT BE ADMITTED

Steven Brown objects to the government's proposed Rule 404(b) evidence. In a recent letter, dated February 26, 2018, providing purported 404(b) Notice, the government has alleged two other instances of uncharged criminal conduct by David Williams and Agent-1 – barred by the statute of limitations – which it hopes to introduce to the jury to inculpate defendant Steven Brown.[1] The only charge in the Superseding Indictment related to Agent-1 is Count Four, which references purportedly fraudulent invoices submitted to a California Entertainment Agency. The

---

[1] The 2006 - 2007 conduct identified in the 404(b) Notice was never prosecuted. If admitted into evidence, the defendant would vigorously dispute these additional charges, requiring two additional mini-trials–in addition to the seven mini-trials already necessitated by the charged conduct in the Superseding Indictment as to purported Victims-1 through 9. *See* Section I.C, *infra*.

"bad acts" evidence identified by the government in its letter, which it seeks to introduce at trial, relates to (I) David Williams and Agent-1 allegedly stealing checks from an unnamed actress in 2006 and 2007, and Steven Brown purportedly "coordinat[ing] with Williams" to deposit the check into Williams' account, and (ii) the failure of Agent-1 to inform an entertainment agency of a specific check he received in 2007, which he instead gave to the defendant to cash and distribute the proceeds.[2]

      This 404(b) evidence should be excluded.

### A.    <u>Applicable Law</u>

      In conspiracy cases, "the Government may offer proof of acts not included within the indictment, as long as they are within the scope of the conspiracy." *United States v. Bagaric,* 706 F.2d 42, 64 (2d Cir. 1983 ), *abrogated on other grounds by National Organization for Women, Inc. v. Scheidler*, 510 U.S. 249, 259-60 (1994). Accordingly, the uncharged criminal activity may be admissible if "it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *United States v. Carboni,* 204 F.3d 39, 44 (2d Cir. 2000).

      Where uncharged criminal activity does not satisfy the standard described in *Carboni,* to be admissible, it must meet the requirements under Rule 404(b). Rule 404(b) provides that:

---

[2] The government's R. 404(b) Notice fails to set forth with sufficient particularity when exactly the alleged 404(b) conduct occurred in 2006-2007, what precisely constitutes the alleged "coordination" or other misconduct by Steven Brown, or how the alleged incidents with these checks have any connection with the Count Four conspiracy in 2011-2014 – which has nothing to do with stolen checks – or with the movie investments at issue in Count One.

"[e]vidence of a crime, wrongs or other acts is not admissible to prove a person's character in order to show that on a particular occasion the person acted" in conformity therewith. It may, however, be admissible for other purposes, such as proof of "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." In *Huddleston v. United States,* 485 U.S. 681, 691-92 (1988), the Supreme Court discussed the four prerequisites for admitting other "bad acts" evidence: (1) the evidence must be "offered for a proper purpose"; (2) it must be relevant; (3) its probative value must outweigh its prejudicial effect under Rule 403; and (4) the trial court must, upon request, charge the jury to consider the evidence only for its proper, limited purpose. *See also*, *United States v. Ortiz,* 857 F.2d 900, 903 (2d Cir. 1988).

The Second Circuit has repeatedly warned district courts that, in determining the admissibility of prior bad acts, "caution and judgment are called for." *United States v. Mohel,* 604 F.2d 748, 751 (2d Cir. 1979) (*quoting United States v. O'Connor,* 580 F.2d 38, 43 (2d Cir. 1970)); *see also United States v. Colon,* 880 F.2d 650, 656 (2d Cir. 1989). In addition, the general "inclusory" approach taken by the Circuit *(United States v. Scott,* 677 F.3d 72, 79 (2d Cir. 2012)) "does not invite the Government to offer, carte blanche, any prior act of the defendant in the same category of the crime." *Id.; see United States v. McCallum,* 584 F.3d 471, 475 (2d Cir. 2009) (holding that evidence of prior convictions was "propensity evidence in sheep's clothing"); *United States v. LaFlam,* 369 F.3d 153, 156 (2d Cir.2004). Of critical importance here, "uncharged" crimes likewise cannot be introduced to show a defendant's character or criminal propensity. *See Huddleston,* 485 U.S. 681, 687 (1988).

Should the Court find that the first two prongs of *Huddleston* are satisfied, the Court must decide whether the probative value of the "uncharged bad act" evidence is substantially

-3-

outweighed by the danger of unfair prejudice. In *Old Chief v. United States,* 519 U.S. 172 (1997),

the Supreme Court defined "unfair prejudice" as "an undue tendency to suggest decision on an

improper basis," *id.* at 180 (quotations omitted) and invoked as an example a jury's "generalizing

a defendant's earlier bad act into bad character and taking that as raising the odds that he did the

later bad act now charged (or, worse, as calling for preventive conviction even if he should

happen to be innocent momentarily)." *Id.* at 180-81.  The Second Circuit has instructed that the

probative-prejudice balancing analysis demands "particularly searching, conscientious scrutiny"

in the context of prior crimes evidence because such evidence poses a severe risk of unfair

prejudice.  *McCallum, supra,* at 476.  Indeed, when conducting this evaluation, the district court

must remain attentive to the potential for "undermin[ing] the fairness of the trial" with "classic,

and powerful, evidence of propensity." *Id.* at 477.

Here, evidence of "uncharged bad acts" merit "particularly searching, conscientious

scrutiny."  Such evidence easily lends itself to unfair preconceptions about Steven Brown's

character or propensity to commit illegal acts and undermines his presumption of innocence.

Even with careful instructions from the Court, jurors are likely to believe that because of such

"uncharged bad acts" there is a high probability that Mr. Brown is guilty of the offenses for

which he is on trial.  Accordingly, "uncharged bad acts" should not be admitted unless the Court

has carefully conducted the Rule 403 balancing test required by *Huddleston. See, e.g., United

States v. Salameh,* 152 F.3d 88, 110 (2d Cir. 1988) ("To avoid acting arbitrarily, the district court

must make a 'conscientious assessment' of whether unfair prejudice substantially outweighs

probative value.") (quoting *United States v. Birney,* 686 F .2d 102, 106 (2d Cir. 1982)); *United

States v. Williams,* 596 F.2d 44, 51 (2d Cir. 1979) ("District judges must carefully scrutinize both

-4-

the basis for the claimed relevance of [prior crimes] evidence and the balance between its

probative value and prejudicial effect. The key to a fair trial in such cases is careful

determination by the trial judge of both issues, particularly the latter.")

> **B.      Evidence of Other Alleged Bad Acts in 2006 and 2007 – Four to Five Years Earlier Than the Relevant 2011-2014 Conspiracy Alleged in Count Four – is Not Admissible as Direct Evidence of the Conspiracy or Pursuant to Rule 404(b) and Should be Excluded**

The Court should be dubious of the government's attempt to introduce evidence of

"other bad acts" in a case in which the Superceding Indictment *already* alleges seven different

examples of "bad acts" charged as crimes, involving nine different purported victims. The

government argues that evidence of  uncharged "bad acts," relating to the stolen checks of an

unidentified actress in 2006-2007 are admissible as "background" of the conspiracy underlying

Count Four (or, alternatively, as "background" to the Count One conspiracy, if Count Four is

dismissed for lack of venue). In the alternative, the Government argues that this evidence is

admissible as evidence of other bad acts pursuant to Rule 404(b).

The thin rationale offered by the government for the admission of this evidence is as

"background" to the conspiracy. But the government does not establish any connection between

the 2006-2007 acts and the 2011-2014 conspiracy alleged in Count Four.  Moreover, the

defendant denies any alleged wrongful conduct.[3]  At the heart of the government's application is

an attempt to try and show, through uncharged acts that have nothing to do with the charged

conspiracy, that, among other things, Mr. Brown was somehow involved in illegal conduct with

---

[3] "The Government must offer proof demonstrating the defendant committed the offense. If the proof is insufficient, the judge must exclude the evidence because it is irrelevant." *United States v. Fortenberry*, 860 F.2d 628, 633 (5th Cir. 1988).

Mr. Williams and Agent-1 in 2006-2007 and therefore should be found guilty of the crimes set forth in the Superseding Indictment. As such, the introduction of such evidence would therefore be highly prejudicial and outweighs its probative value in this case. Accordingly, such evidence should be excluded.

Second, the government cannot argue that the alleged conduct is not "other crimes" evidence because it "arose out of the same transaction or series of transactions as the charged offense," or was "inextricably intertwined with the evidence regarding the charged offense," or "necessary to complete the story of the crime on trial." *Carboni, supra,* 204 F.3d at 44. The government has failed to show how the charged conspiracy is connected in any way to an unnamed actress's stolen checks four to five years earlier. Assuming, *arguendo,* that these activities comprised a separate conspiracy, they are in no way linked or related to the conspiracy alleged in Count Four of this case, which relates to purported fraudulent invoices prepared for an entertainment agency.

In sum, the allegations of other bad acts has no probative value to the matters in dispute here. The dangers listed in Rule 403, in particular the danger of unfair prejudice, is high. First, the nature and details of such evidence is highly prejudicial. Any uncharged illegal conduct will divert the jury from an analysis and assessment of the facts related to the alleged conspiracy in this case, to yet another set of mini-trials. The probative value of such prior bad acts is thus substantially outweighed by the danger of unfair prejudice and confusion to the jury and such evidence should ultimately be excluded under Rule 403.[4]

---

[4] In addition, there is the unfair potential for guilt by association in the event that the Court permits the proffered 404(b) evidence as to Mr. Williams and Agent-1 and in the further event that the jury accepts it. *See United States v. Fitzgerald*, 279 Fed. App'x 444, 444-45 (9th Cir. 2008); *United States v. Polasek*, 162 F.3d 878, 884-85 (5th Cir. 1998).

C.    **Having a Trial on Two Additional Separate Instances of Uncharged Misconduct – Along with the Seven Mini-Trials Already Necessitated by Conduct Charged in the Superseding Indictment – Threatens to Unnecessarily Protract the Trial and Confuse the Jury**

The government has already alleged seven separate instances of alleged criminal activity that it has charged as part of Counts One, Two, Three and Five of the Superceding Indictment pertaining to alleged fraud committed against investors, purported Victims 1 through 9, in connection with different movie projects.  As it stands, this will result in seven mini-trials, each with its own story, its own witnesses, its own documentation, all relating to the circumstances surrounding different movie projects.  Contrary to the government's view, the circumstances surrounding the defendant's interactions with the various purported victims varied greatly.  For example, Victim-1 and Victim-2 invested in different movie projects quite distinct from one another, and the defendant played different roles and had different interactions with them, as he did with each of the investors.

In addition, the government has also charged Mr. Brown in Count Four with an alleged conspiracy to commit wire fraud in connection with the invoicing of a California Entertainment Agency (Superseding Indictment ¶¶ 56-62).  This, too, presents its own unique set of facts far different than the charges with respect to the movie investments.  For the reasons set forth in defendant's Motion to Dismiss the Superseding Indictment for Lack of Venue or, Alternatively, to Transfer (ECF 159), Count Four in particular has an extremely tenuous connection with New York (consisting of the defendant's withdrawal of $83 from a California bank account while in Manhattan) and should be dismissed.

The government now seeks to propound the prejudice to Mr. Brown by introducing additional "bad acts" supposedly as "background" to Count Four.[5]  But there's no indication that the alleged bad acts referenced in the 404(b) Notice have any more connection to New York than Count Four itself does.  Nor does the government explain how acts that took place so many years earlier can provide "background" on acts that took place in 2011-2014.  Indeed, the combination of the lack of venue and the time-barred nature of these uncharged crimes make it difficult for Mr. Brown to defend against them, further prejudicing him.

Conducting the seven alleged mini-trials in connection with the Superseding Indictment's charges will already consume the time and resources of the Court and jury, and cause the defendant to incur great expense in what is expected to be a three-to-four week trial, without also holding two additional mini-trials on unrelated bad acts that occurred years earlier involving stolen checks unconnected to any allegations in the Superseding Indictment.  It bears emphasis: these are *uncharged* crimes the defendant will vigorously contest.  The danger of jury confusion is great under the circumstances.  *See United States v. Aboumoussallem*, 726 F.2d 906, 912 (2d

---

[5]  The government notes that if the Court grants the motion to dismiss Count Four (Conspiracy to Commit Wire Fraud against the California Entertainment Agency) for lack of venue that it nevertheless intends to introduce evidence of all the conduct underlying Count Four anyway, supposedly as "background" evidence supporting Count One (Conspiracy to Commit Wire Fraud as to Victims 1 through 8).  In truth, the fact pattern alleged in the Superseding Indictment as to Victims 1 through 8 and the California Entertainment Agency are unrelated and have nothing to do with one another.  Count One pertains to investments in various movie projects while Count Four relates to invoicing an entertainment agency.  This conduct is charged in a separate count by the government for a reason:  it involves different victims, different documents, different witnesses and different charged conduct.  (And the Rule 404(b) uncharged bad acts related to stolen checks introduces yet another fact pattern having nothing to do with *any* of the charges.)  Accordingly, if the Court dismisses Count Four for lack of venue, the evidence in connection with Count Four should be excluded as more prejudicial than probative.  Indeed, it would defeat the purpose of requiring proper venue if the government were allowed to introduce such disputed evidence, which would then require a mini-trial.

Cir. 1984); *United States v. Gardell*, 2001 WL 1135948, at *6 (S.D.N.Y. 2001) (evidence excluded because "[s]uch proof will draw out already protracted trial . . . without any real connection to the conduct at issue in the indictment . . . will likely assume disproportionate significance at trial, lead to a mini-trial . . . engender confusion among the issues . . . [and] likely will mislead the jury as to the crimes charged against the defendants."); *see also United States v. Vasquez*, 840 F. Supp.2d 564, 575-76 (E.D.N.Y. 2011) (excluding evidence where the danger of unfair prejudice exceeded any probative value of the evidence at issue because "the jury would be left to speculate regarding the circumstances surrounding" the evidence, "which could result in a side trial diverting the jury's attention from the relevant issues"); *see also* Fed. R. Evid. 403 ("The Court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence").

The 404(b) evidence offered by the government should be excluded.

## II.

### THE COURT SHOULD EXCLUDE OR ORDER REDACTION OF DOCUMENTS OR RECORDINGS CONTAINING INFLAMMATORY LANGUAGE, INCLUDING ANY PROFANE, SEXIST OR OTHERWISE OFFENSIVE LANGUAGE IRRELEVANT TO THE MATTERS IN DISPUTE AT TRIAL

In the course of transacting business in the motion picture industry, the defendant and his colleagues and investors sometimes engaged in conversations that included profanity and made random comments that might be construed as sexist or prejudiced. The issues in dispute in this case have nothing whatsoever to do with such offensive or inflammatory language – but the jury may look unfavorably upon the defendant as a result and find him more likely to be guilty. The zero probative value of such language is thus substantially outweighed by the prejudice to the

-9-

defendant. Accordingly, the defendant requests that any document (including recordings) with such language be excluded. If highly probative documents or recordings contain such inflammatory language, the defense requests that the evidence be redacted to exclude the offensive and prejudicial language before being presented to the jury. *See, e.g.*, *Demirovic v. Ortega*, 2017 WL 4621089, at \*4-5 (E.D.N.Y. Oct. 13. 2017) (granting motion *in limine* to exclude sexist and anti-Muslim comments as prejudicial and without probative value under Fed.R.Evid. 403 in trial of a wage and hours dispute); *United States v. Dill*, 2011 WL 6042387, at \*1 (S.D. Ind. Dec. 3, 2011) (granting motion *in limine* to delete random instances of profanity, which were held to be "unduly prejudicial" to defendant).

## III.

### THE COURT SHOULD EXCLUDE THE EVIDENCE OF ANY IRRELEVANT POLITICAL COMMENTARY, INCLUDING EVIDENCE OF THE DEFENDANT'S POLITICAL AFFILIATION

Many documents in the government's production include political commentary by the defendant in favor of Donald Trump and the Republican Party and opposing Hilary Clinton's candidacy for president. Needless to say, the defendant's political views are completely irrelevant to the matters at issue in this case and it would be extremely prejudicial for a Manhattan jury unnecessarily to be apprised of the defendant's conservative political views, particularly during these times of highly charged politics. To the extent politics are the subject matter of any conversations with any investor or colleague, or that Mr. Brown's political lobbying efforts on their behalf are relevant at trial, the defense requests that any relevant documents be redacted so as not to reveal Mr. Brown's political affiliation. *See Evans v. Cernics, Inc.*, 2017 WL 4863207, at \*1 (Oct. 26, 2017 W.D. Pa.) (granting motion *in limine* to

exclude "[e]vidence of defendant's political affiliation" as "irrelevant in this case" since "it does not make it more or less probable that defendants discriminated and/or retaliated against plaintiff"); *United States v. Lyons*, 2017 WL 4736724, at *1 (Oct. 18, 2017 D.N.M) (granting motion *in limine* to preclude evidence of defendant's political beliefs).

**IV.**

## DEFENDANT RESERVES HIS RIGHTS TO OBJECT TO THE ADMISSION OF EXHIBITS

Defendant reserves his rights to object to the introduction of exhibits produced by the government. Given the voluminous production of millions of pages of electronic documents in this case, there is simply no way for the defense to anticipate every objectionable matter contained therein. For this reason, the Court exercised its trial management powers to rule previously that the government must produce its exhibit list three weeks before trial, or by March 19, 2018. The defense reserves its rights to raise any evidentiary issues that may be presented by such exhibits.

**V.**

## THE GOVERNMENT SHOULD BE DIRECTED TO IDENTIFY NOW ANY RECORDED TELEPHONE CALLS THAT IT INTENDS TO OFFER INTO EVIDENCE DURING ITS CASE-IN-CHIEF

In discovery, the government produced a significant number of recorded calls of Mr. Brown at different times with Victim 2, Victim 3 and Victim 4. It also produced numerous recorded conversations between other persons, not including Mr. Brown.[6] Counsel and the

---

[6] Defendant reserve his right to object to the admissibility of any recorded telephone calls or text messages to which he is not a party. *See e.g., United States v. Bertolotti*, 529 F.2d 149, 158 (2d Cir. 1975) (reversing conspiracy conviction where trial court admitted phone call recordings that did not mention the defendants and had "no relevance to any of the other

defendant should not be made to waste time listening to hour upon hour of conversations in an effort to find any segment of a conversation which the government may choose to offer into evidence.  The government should be required to identify now any such recorded calls and the portion which they intend to offer.  It is not sufficient for the government to produce hours of recorded calls and to basically tell the defense, "you figure out what we might use."  *Cf. United States v. Bortnovsky*, 820 F.2d 572, 574-75 (2d Cir. 1987) ("The Government did not fulfill its obligation merely by providing mountains of documents to defense counsel, who were left unguided a to which documents would be proven useful . . ..").

## VI.

### DEFENDANT STEVEN BROWN IS ENTITLED TO THE IMMEDIATE PRODUCTION OF ALL *BRADY/GIGLIO* MATERIAL

Pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, the government must provide to the defense any exculpatory evidence.  The term "exculpatory," as used in a *Brady* context refers to evidence that is exculpatory and evidence that may be used to impeach the government's witnesses.  *See United States v. Bagley*, 473 U.S. 667, 676 (1985); *Giglio v. United States*, 405 U.S. 150, 154 (1972).  Prompt production of these materials will permit the defense to have an opportunity to meaningfully use the information and conduct any necessary investigation.

---

transactions proved at trial."); *United States v. Johansen*, 50 F.3d 347, 352 (2d Cir. 1995) (finding prejudice based on "explicit invitation to the jury to consider the acts of one conspirator against another."); *United States v. Barret*, 2012 WL 171321, at *3 (E.D.N.Y. 2012) (denying government motion to admit text messages where "the text messages could be construed as evidence of a separate and factually distinct conspiracy.").

For example, time is needed to identify and contact potential trial witnesses in California, Minnesota, and possibly elsewhere, that may be disclosed in these materials. *See Leka v. Portuondo*, 257 F.3d 89, 99-103 (2d Cir. 2001) ("the longer the prosecution withholds information, or (more particularly) the closer to trial the disclosure is made, the less opportunity there is for use"); *Disimone v. Phillips*, 461 F.3d 181, 197 (2d Cir. 2006) ("the more a piece of evidence is valuable and rich with potential leads, the less likely it will be that late disclosure provides the defense an opportunity for use"). *See also United States v. Coppa*, 267 F.3d 132, 142 (2d Cir. 2001)*; United States v. Vaid*, 2017 WL 3891695, *13 (S.D.N.Y. Sept. 5, 2017), *citing Brady*, 373 U.S. at 87. Accordingly, we respectfully request that Your Honor order the immediate production of all *Brady/Giglio* material.

## VII.

## ALL 3500 MATERIAL SHOULD BE PRODUCED TWO WEEKS BEFORE TRIAL

Oftentimes the government delays production of 3500 material until the Friday before a Monday trial start. That simply is inadequate here, particularly given the large number of FBI interactions with witnesses in this case. As noted in defendant's Motion to Compel the Production of All Law Enforcement Contacts (ECF 134), the FBI was heavily involved in the parallel civil cases, interviewing the various investors and working closely with counsel for Victim-2. A prompt review of these interactions is crucial for the defense to prepare its cross-examination of potential witnesses. Disclosure late on a Friday for a Monday trial simply is neither reasonable nor fair and does not provide an opportunity to review, consider and plan the use of said materials and to confer and meet with defendant regarding same. The government

-13-

should be required to provide the 3500 material for all witnesses, including law enforcement

witnesses, cooperating witnesses and civilian witnesses, two weeks prior to trial.

## CONCLUSION

For all of the reasons set forth herein, Mr. Brown's *in limine* motions should be granted.

Dated: New York, New York
February 28, 2018

Respectfully submitted

/s/

Walter Mack
David Rivera
Michael Minnefor
Doar Rieck Kaley & Mack
217 Broadway  Suite 707
New York, New York 10007
(212) 619-3730
*Attorneys for Steven Brown*

To:    AUSA Katherine Reilly
       AUSA Noah Solowiejczyk
       AUSA Ryan Finkel
       (both via ECF Filing and e-mail)