UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                    :

UNITED STATES OF AMERICA       :

                    :

         - v. –          :           S6 16 Cr. 436 (KMW)

                    :

STEVEN BROWN,            :

                    :

         Defendant.     :
-------------------------------------------------------------------X

## THE GOVERNMENT'S MOTIONS *IN LIMINE*

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
Attorney for the United States
of America

Katherine Reilly
Noah Solowiejczyk
Ryan B. Finkel
Assistant United States Attorneys
     - Of Counsel -

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT.................................................................................................1

BACKGROUND...................................................................................................................1

DISCUSSION.......................................................................................................................2

I. THE COURT SHOULD PRECLUDE CROSS-EXAMINATION
OF ▇▇▇▇▇ AS TO HIS ARRESTS FOR DRIVING WHILE INTOXICATED…………..2

II. THE COURT SHOULD PRECLUDE CROSS-EXAMINATION OF ▇▇▇▇▇
AS TO CERTAIN OF HIS PRIOR DRUG USE……………………………………………5

III. THE COURT SHOULD PRECLUDE CROSS-EXAMINATION
THAT INVADES UPON THE ATTORNEY-CLIENT PRIVILEGE………………………...7

IV. EVIDENCE OF THE DEFENDANT'S PARTICIPATION IN PRIOR
BAD ACTS WITH CO-CONSPIRATORS IS ADMISSIBLE AS DIRECT
EVIDENCE OF THE CHARGED CONSPIRACIES OR, IN THE ALTERNATIVE,
UNDER RULE 404(B)………………………………………………………………………..10

V. THE COURT SHOULD PRECLUDE ANY REFERENCE TO THE
CRIMINAL CHARGES AGAINST VICTIM-3 IN THE EVENT VICTIM-3
DOES NOT TESTIFY………………………………………………………………………...24

CONCLUSION....................................................................................................................25

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in support of its motions *in limine* in advance of the trial of Steven Brown, the defendant (the "defendant" or "Brown"), scheduled to begin on April 9, 2018.  As set forth below, the Government seeks pretrial rulings as to the following five issues.  First, the Government seeks a pre-trial ruling precluding the defense from cross-examining ███████ about two arrests for driving while intoxicated. Second, the Government seeks a pretrial ruling precluding the defense from cross-examining ███████ regarding his drug use on occasions other than during the events in question in this case.   Third, the Government seeks a pretrial ruling precluding the defense from cross-examining witnesses about attorney-client communications in a way that invades upon the attorney-client privilege.  Fourth, the Government seeks a pretrial ruling admitting evidence of the defendant's participation, with other members of the wire fraud conspiracies charged in Count One and Count Four of the Superseding Indictment, in (1) a scheme to steal funds belonging to an actress and (2) a scheme to steal funds belonging to an entertainment agency. Finally, the Government seeks to preclude the defense from eliciting testimony or otherwise referring to the fact that Victim-3 – who the Government does not, at present, intend to call as a witness at trial – was criminally charged in the Superior Court of California for Orange County with conspiracy to commit medical insurance fraud.

For the reasons that follow, the Motions should be granted.

## BACKGROUND

The defendant is charged in a five-count Superseding Indictment with (1) conspiring to commit wire fraud, between in or about 2009 and in or about 2016, in connection with a scheme

to defraud investors, including the investors identified in the Superseding Indictment as Victims-1 through -8 in film projects; (2) committing substantive wire fraud in connection with that same scheme; (3) conspiring to commit wire fraud, between in or about 2016 and in or about 2017, in connection with a scheme to defraud Victim-9; (4) conspiring to commit wire fraud, between in or about 2011 and in or about 2014, in connection with a scheme to defraud an entertainment agency; and (5) conspiring to commit money laundering, from in or about 2009 until in or about 2016, in connection with the scheme described in Counts One and Two of the Superseding Indictment.

## DISCUSSION

**I.    THE COURT SHOULD PRECLUDE CROSS-EXAMINATION OF ██████ AS TO HIS ARRESTS FOR DRIVING WHILE INTOXICATED.**



The Government expects to call ████████████████████████████ ████████████████████████████████████████████ has been arrested on two occasions for driving while intoxicated.  These arrests took place approximately ██████ years ago and approximately ██████ years ago and neither resulted in a formal charge.[1]

### A.    Applicable Law

It is well-established that a "trial court has wide discretion to impose limitations on the cross-examination of witnesses."  *United States* v. *Flaherty*, 295 F.3d 182, 190 (2d Cir. 2002); *United States* v. *Rosa,* 11 F.3d 315, 336 (2d Cir. 1993).  Furthermore, trial courts may, in their discretion, make advance rulings on motions to preclude certain cross-examination.  *See United States* v. *Puco*, 453 F.2d 539, 541-42 (2d Cir. 1971).

---

[1]    ████████████████████████████████████████████████ ████████████████████████████████████████████████

In addition to trial courts' inherent powers to reasonably limit cross-examination, the Federal Rules of Evidence provide numerous bases for precluding cross-examination that is irrelevant, harassing, or prejudicial.  Under Rule 608(b), a district court may restrict cross-examination about certain instances of prior conduct if it finds that the conduct is not probative of truthfulness.  *See* Fed. R. Evid. 608(b).  Rule 611(a) states that the court shall exercise reasonable control over the interrogation of witnesses to "protect witnesses from harassment or undue embarrassment."  Rule 611(b) provides that the Court may properly limit "cross-examination to the subject matter of the direct examination and matters affecting the credibility of the witness."  As noted, Rule 403 provides that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice."  Finally, Rule 609(b) "bars evidence of a conviction if more than ten years have elapsed since a witness was released from the resulting confinement, unless 'the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.'" *United States* v. *Salameh*, 152 F.3d 88, 131-32 (2d Cir. 1998) (quoting Rule 609).

The Second Circuit has routinely affirmed rulings by trial courts to preclude cross-examination regarding past arrests or convictions for violence, drug possession, or other crimes that are irrelevant to a witness's truthfulness, and unrelated to the subject matter of the trial.  *See United States v. Flaharty*, 295 F.3d 182, 191 (2d Cir. 2002) (witness's involvement in a murder properly precluded because "[m]urder generally is not a crime of dishonesty, and nothing about the [ ] murder suggested it would in any way reflect on the [witness'] truthfulness."); *United States v. Rosa*, 11 F.3d 315, 336 (2d Cir. 1993) (cross-examination regarding witness's rape and burglary properly precluded); *Salameh*, 152 F.3d 88, 131-32 (2d Cir. 1998) (affirming court's refusal, after *in camera* review, to disclose information regarding government witness's prior

3

arrests and convictions for robbery, assault, sodomy, and disorderly conduct on the ground the

crimes were not probative of truthfulness under Fed. R. Evid. 608(b)); *United States* v. *Lenese*,

890 F.2d 1284, 1289 (2d Cir. 1989) (cross-examination on past extortion arrest was properly

precluded).  Indeed, courts have routinely precluded cross-examination concerning a witness's

past alcohol use, including convictions for drunk driving, as irrelevant to the witness's veracity.

*See, e.g.,United States* v. *Whitley*, No. 04 Cr. 1381 (RCC), 2005 WL 2105535, at *3 (S.D.N.Y.

Aug. 11, 2005) (precluding cross-examination on prior convictions for narcotics possession and

drunk driving).

### B.    Discussion

The defense should be precluded from cross-examining ███████ about his two prior

arrests for driving while intoxicated.  These arrests, which did not result in any prosecution, are

remote in time and do not relate in any way to the conduct at issue in this case, nor is the fact of

either arrest probative of honesty or credibility.  *See* Fed. R. Evid. 608(b), 611(b); *Whitley*, 2005

WL 2105535, at *3 (precluding cross examination about witness's past drunk driving conviction

because that past conviction was unrelated to, and had no bearing on, whether witness was sober

during event he would testify about).

Cross-examination as to these arrests would not only be irrelevant, thus, but it could

inflame and distract the jury and subject the witness to harassment or undue embarrassment.  *See*

Fed. R. Evid. 403, 611(a); *see also Whitley*, 2005 WL 2105535, at *3 (finding a prior conviction

for drunk driving in admissible because it "did not stem from intoxication on the night of the

robbery and has no bearing on whether [the witness] could have accurately perceived the robbery

as it was happening"); *Hopson* v. *Riverbay Corp.*, 190 F.R.D. 114, 119 (S.D.N.Y. 1999) (noting

4

that court precluded cross-examination on prior DUI conviction because such conviction did not

relate to the witness's veracity and would be unfairly prejudicial to the witness).

## II.    THE COURT SHOULD PRECLUDE CROSS-EXAMINATION OF ████████ AS TO CERTAIN OF HIS PRIOR DRUG USE.

As set forth above, the Government expects ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████ has, at times

both prior to and during the events at issue in this case, used illegal drugs.  On multiple occasions

during the period at issue in the Superseding Indictment, ████████ used illegal drugs—including

a prescription drug, cocaine, and marijuana—████████████████████████

████████.  Separately, ████████ has used cocaine on several occasions, including ████

████████████████████████████████████████████████

████████████████████████████████ ; ████████████████████

████████████████████████████████.  Additionally, ████████ has, at

various points in his life, the most recent several years ago, used marijuana.  As set forth in

greater detail below, the defendant should be precluded from questioning ████████ about drug

use that took place independent of the defendant and his co-conspirators and has no bearing on

the allegations at issue in this case.

### A.    Applicable Law

The Second Circuit has held that courts should preclude cross-examination concerning a

witness's past drug or alcohol use as irrelevant to the witness's veracity because "'a general habit

of intemperance tells us nothing of the witness's testimonial incapacity unless it involves actual

intoxication at the time of the event observed or at the time of testifying.'"  *See United States v.*

*DiPaolo*, 804 F.2d 225, 230 (2d Cir. 1986) (quoting 3A J. Wigmore, Evidence §§ 933–934

(brackets omitted) (collecting cases).  Indeed, courts routinely preclude cross-examination

concerning a witness's past drug use as irrelevant to the witness's veracity.  *See United States v.*

*Turner*, 104 F.3d 217, 223 (8th Cir. 1997) ("Misconduct involving violations of narcotics laws is

not an act involving dishonesty or untruthfulness and therefore may not be inquired into under

Federal Rule of Evidence 608(b)."); *United States* v. *Sellers*, 906 F.2d 597, 602 (11th Cir. 1990)

("[P]rior instances of drug use are not relevant to truthfulness for purposes of Fed. R. Evid.

608(b)."); *United States* v. *McDonald*, 905 F.2d 871, 874 (5th Cir. 1990) (drug use not probative

of truthfulness); *accord United States* v. *Puco*, 453 F.2d at 543 ("[W]e believe that a narcotics

conviction has little necessary bearing on the veracity of the accused as a witness.").

Courts may allow cross-examination to "determine whether a witness was under the

influence of drugs or narcotics or alcohol at the time of observation of events in dispute or at the

time the witness is testifying."  *DiPaolo*, 804 F.2d at 229-30 (citations omitted).  However, a

witness's use of drugs and alcohol at *other* times is irrelevant, and such cross-examination

should be precluded.  *See Jarrett* v. *United States*, 822 F.2d 1438, 1446 (7th Cir. 1987) ("A

witness's use of drugs may *not* be used to attack his or her general credibility, but only his or her

ability to perceive the underlying events and testify lucidly at the trial.") (emphasis added).  It is

therefore not surprising that courts have precluded testimony concerning a "'general habit of

intemperance'" because its "'bearing on moral character 'does not involve the veracity trait.'"

*DiPaolo*, 804 F.2d at 229-30. (quoting 3A J. Wigmore, Evidence §§ 933).  Thus, evidence of

drug use generally or its effects on the witness' memory or ability to recollect in general would

be "grossly prejudicial and of indeterminate relevance without scientific evidence or expert

testimony."  *Nibbs v. Goulart*, 822 F.Supp.2d 339, 345-46 (S.D.N.Y. 2011).

6

### B.     Discussion

The Government does not dispute that the defendant may cross-examine ██████ concerning whether the influence of drugs impaired his perception of events involving the defendant, his coconspirators, or ██████ ███████████████. *See DiPaolo*, 804 F.2d 225 at 229-30.  However, evidence that ██████ may have used illegal drugs ██████ ████████████████████████████, and in the course of events unrelated to the charged crimes, is irrelevant to this case, as it does not go to ██████ veracity.  *See Nibbs v. Goulart*, 822 F. Supp. 2d 339, 346 (S.D.N.Y. 2011) (permitting introduction of evidence of drug use for "limited purpose or impeaching [witness's] perception" of relevant events and precluding evidence as to "long-term marijuana use" as "grossly prejudicial.").  Moreover, ██████ drug use was occasional over a period of many years; there is no indication that he suffered from drug addiction or was frequently operating under the impairment of drugs.  As a result, the introduction of evidence of his drug use is particularly likely to serve only to harass or embarrass—and thus, pose an undue risk of prejudice—as opposed to illuminate any issue of credibility, veracity, or a material fact.  *See* Fed. R. Evid. 403.  Accordingly, seeking such testimony is not at all relevant to this case.

## III.    THE COURT SHOULD PRECLUDE CROSS-EXAMINATION THAT INVADES UPON THE ATTORNEY-CLIENT PRIVILEGE

The Government intends to call as witnesses at trial one or more attorneys who represented victims in their negotiations with the defendant and his co-conspirator, as well as victims of the charged schemes who were themselves represented during much of the period at issue in the Superseding Indictment.  The Government intends to question these witnesses as to non-privileged communications, particularly those with third parties, such as the defendant and his co-conspirators.  As set forth below, the defense should be precluded upon invading upon

privileged communications on cross-examination.

### A.    Applicable law

The Second Circuit has held that courts "can bar cross-examination of communication protected by an attorney/client privilege," in a criminal case. *United States v. Dennis*, 843 F.2d 652, 656 (2d Cir. 1988). Likewise, "[i]t is clear that government witnesses have a right to assert the attorney-client privilege on cross-examination." *United States v. Coven*, 662 F.2d 162, 170 (2d Cir. 1981); *see also United States* v. *Lin*, 225 F.3d 647, 2000 U.S. App. LEXIS 23455, at *6 (2d Cir. Sept. 12, 2000) (summary order) ("The Confrontation Clause does not deprive the trial judge of all discretion to set limits on cross-examination . . . . It is within the court's discretion to limit cross-examination to the extent that it would violate the witness's attorney- client privilege."). However, "where assertion of the privilege unduly restricts a defendant's cross-examination, the witness' direct testimony may have to be stricken." *Coven*, 662 F.2d at 170.

Federal Rule of Evidence 501 states that, unless otherwise provided, "[t]he common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege." Fed. R. Evid. 501. "The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States* v. *Mejia*, 655 F.3d 126, 132 (2d Cir. 2011). "The Supreme Court has instructed that, where the attorney-client privilege applies, its protections must be reliably enforced in order to effectuate its goal of promoting compliance with the law. *In re Grand Jury Investigation*, 399 F.3d 527, 535 (2d Cir. 2005) (citing *Swidler & Berlin* v. *United States*, 524 U.S. 399, 399 (1998)).

8

B.       Discussion

Certain of the victims of the charged schemes retained attorneys who assisted them in negotiating with the defendant and his co-conspirators as to their purported investments in various film projects and/or as to the return of the invested funds.  The Government expects to call at trial one or more attorneys for victims identified in the Superseding Indictment, who are expected to testify about their involvement in the events at issue in this case, including about statements made by the defendant and his co-conspirators in inducing the victims to invest.  The Government also expects to call victims of the charged scheme, some of whom are expected to testify about events, including the negotiations with the defendant and his co-conspirators that involved lawyers.  The Government intends to limit its questioning to non-privileged matters and does not intend to elicit testimony that discloses communications or information subject to the attorney-client privilege.

The defense should similarly be precluded from invading upon confidential, attorney-client communications on cross-examination.  These communications are protected by the attorney-client privilege insofar as the victims in this case no doubt conveyed information for the purpose of obtaining legal advice, the attorneys provided legal advice, and both sides discussed that advice.[2]  *See Mejia*, 655 F.3d at 132.   These confidential communications are, at best, collateral to the issues at hand.  They could not be relevant to the elements of the charged fraud crimes, which revolve around the making of false representations to the victims in an effort to produce material gain.  They do not have bearing on the knowledge, intent, or actions of the defendant or his co-conspirators (who, by definition, were unaware of them).  Nor is it clear how

---

[2]       In an effort to itself avoid invading upon the attorney-client privilege, the Government has not and *will not* question the witnesses about these communications in preparing for trial.

they could bear on the credibility or honesty of the testifying witnesses in testifying about their communications with the defendant and his co-conspirators.  Moreover, even if these communications did have some limited probative value, the intrusion upon the privilege, and the harms such an intrusion entails in terms of the reliability of the privilege, *see In re Grand Jury Investigation*, 399 F.3d 527, 535, substantially outweighs that limited value.  *See United States v. Scali*, No. 16 Cr. 466 (NSR), 2018 U.S. Dist. LEXIS 13914, at *3-6 (S.D.N.Y. Jan. 29, 2018) (precluding cross examination of a witness as to certain information which the Government argued was protected by various privileges, including the attorney-client privilege, because it was irrelevant to the specific charges at issue); s*ee also  Lin*, 225 F.3d 647, 2000 U.S. App. LEXIS 23455, at *6-8 (upholding the district court's decision to prevent the questioning of an "accomplice witness about conversations with his attorney as to the sentence he might expect to receive in light of his cooperation with the government"); *Coven*, 662 F.2d 162, at 170-71, (upholding the district court's preclusion of cross examination invading upon the attorney-client privilege, even where the questions related to the witness's "state of mind or motivation when signing the [cooperation]  agreement and, therefore, to his bias" because the witness's "state of mind when signing the cooperation agreement was a collateral matter going only to [his] general credibility," such that the "assertion of the attorney-client privilege did not deprive appellants of their constitutional right to confrontation").

## IV. EVIDENCE OF THE DEFENDANT'S PARTICIPATION IN PRIOR BAD ACTS WITH CO-CONSPIRATORS IS ADMISSIBLE AS DIRECT EVIDENCE OF THE CHARGED CONSPIRACIES OR, IN THE ALTERNATIVE, UNDER RULE 404(B)

At trial, the Government intends to introduce evidence of (1) the defendant's participation, along with James David Williams and the individual identified as "Agent-1" in the Superseding Indictment, in a scheme to steal funds due and owing to an actress for whom

10

Agent-1 had negotiated a contract in connection with a film and (2) the defendant's participation, along with Agent-1, in a scheme to steal funds due and owing to an entertainment agency, in connection with another film project.  For the reasons described below, this evidence is admissible at trial as direct substantive proof of the wire fraud conspiracies charged in Counts One and Four of the Superseding Indictment or, in the alternative, under Rule 404(b) of the Federal Rules of Evidence.[3]

### A.    The Proffered Evidence

The Government seeks to offer at trial evidence regarding the defendant's participation in two separate schemes to steal funds belonging to others in connection with film projects.

With respect to the first scheme, the Government anticipates that the evidence at trial will show that, from in or about 2006 until in or about 2007, the defendant, James David Williams, and Agent-1 participated in a scheme to steal checks to which they were not entitled.  The payee on these checks was an actress ("Actress-1") on whose behalf Agent-1, in his capacity as an entertainment agent, had negotiated a contract to appear in a film i.  These checks were sent to Actress-1 as payment of residual compensation for Actress-1's participation in the film.  Agent-1 received the checks but, rather than provide them to Actress-1, Agent-1, at the defendant's behest, provided the checks to the defendant.  The defendant then coordinated with Williams to have those checks deposited into a bank account controlled by Williams that was held in the

---

[3]    As the Court is aware, the defendant has moved to dismiss Count Four for lack of venue. For the reasons set forth in the Government's opposition to that motion, the Court should deny the motion to dismiss.  If, however, the Court were to grant the pending motion, the Government will seek to introduce evidence of the scheme to defraud the Entertainment Agency at issue in Count Four (*see* Indictment ¶¶ 56-62; 70-72) as direct substantive proof of the wire fraud conspiracy charged in Count One or, in the alternative, under Rule 404(b) of the Federal Rules of Evidence.

name of corporate entity.  In particular, Williams added a "doing business as" name to the bank account he controlled that was sufficiently similar to Actress-1's name that Williams was able to deposit Actress-1's checks into the account.  After the funds were deposited into the account controlled by Williams, the defendant, Williams, and Agent-1 divided the proceeds – which amounted to tens of thousands of dollars – amongst themselves.

With respect to the second scheme, the Government anticipates that the evidence at trial will show that, in or about 2007, Agent-1 received a check relating to Agent-1's participation in an independent film project that was due and owing to the entertainment agency that employed Agent-1 at the time he worked on the film project.  Rather than provide the check to that entertainment agency, however, Agent-1 instead provided the check to the defendant, who caused it to be cashed without the authorization or knowledge of the entertainment agency.  The defendant kept a portion of the stolen funds for himself and provided a portion of these funds to Agent-1.

**B.**     **Applicable Law**

1.     Evidence of Uncharged Criminal Acts as Direct Evidence

It is well-established that evidence of uncharged criminal activity is admissible when it constitutes intrinsic or direct proof of the charged crimes, and that such evidence is therefore not treated as "other act" evidence subject to Federal Rule of Evidence 404(b). *See, e.g.*, *United States v. Quinones*, 511 F.3d 289, 308-09 (2d Cir. 2007) ("evidence of uncharged criminal conduct is not evidence of 'other crimes, wrongs, or acts' under Rule 404(b) if that conduct is 'inextricably intertwined with the evidence regarding the charged offense'" (quoting *United States v. Towne*, 870 F.2d 880, 886 (2d Cir.1989))).  Uncharged criminal activity is admissible as direct evidence "if it arose out of the same transaction or series of transactions as the charged

12

offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *Towne*, 870 F.2d at 886; *see also United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000); *United States v. Gonzalez*, 110 F.3d 936, 942 (2d Cir. 1997) (upholding admission of other crimes evidence as "crucial background evidence that gave coherence to the basic sequence" of the evidence of the charged crime).

When an Indictment contains a conspiracy charge – as this Indictment does, in Counts One and Four, among others – "uncharged acts may be admissible as direct evidence of the conspiracy itself." *United States v. Thai*, 29 F.3d 785, 812 (2d Cir. 1994) (citing cases). Some of the well-established bases for the admission of uncharged acts as evidence of a conspiracy in the Second Circuit are to: (1) prove the existence of the charged conspiracy; (2) explain the development of the illegal relationship between the co-conspirators; (3) explain the mutual trust that existed between the co-conspirators; and (4) complete the story of the crime charged. *See, e.g., United States v. Inserra*, 34 F.3d 83, 89 (2d Cir. 1994) (noting that "evidence of other bad acts may be admitted to provide the jury with the complete story of the crimes charged by demonstrating the context of certain events relevant to the charged offense"); *United States v. Rosa*, 11 F.3d 315, 333-34 (2d Cir. 1993) (evidence of car theft and drug dealing properly admitted to show development of illegal relationship and mutual trust between defendant and co-conspirator and to explain how defendant came to play important role in conspiracy); *United States v. Langford*, 990 F.2d 65, 70 (2d Cir. 1993) ("It is within the court's discretion to admit evidence of acts committed prior to the time charged in the indictment to prove the existence of the alleged conspiracy as well as to show its background and history."); *United States v. Pitre*, 960 F.2d 1112, 1119 (2d Cir. 1992) (evidence of prior narcotics transactions admissible as relevant background information to explain relationship among alleged co-conspirators); *United*

13

*States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990) (evidence of pre-existing drug trafficking relationship between defendant and co-conspirator admissible to aid jury's understanding of how transaction for which defendant was charged came about and his role in it); *United States v. Lasanta*, 978 F.2d 1300, 1307 (2d Cir. 1992) (affirming decision to admit evidence of prior drug dealing to explain "how the co-conspirators came to interact with each other, and [to render] more plausible their joint participation in the heroin and cocaine conspiracies charged in the indictment"), *abrogated on unrelated grounds by Florida v. White*, 526 U.S. 559 (1999).

2.   Rule 404(b)

In the alternative, evidence of uncharged criminal acts may also be admitted at trial pursuant to Federal Rule of Evidence 404(b).  Federal Rule of Evidence 404(b) provides, in pertinent part that:

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Fed. R. Evid. 404(b).

Evidence of prior acts is admissible under Rules 404(b) and 403 of the Federal Rules of Evidence if it is (1) advanced for a proper purpose; (2) relevant to the crimes for which the defendant is on trial; (3) more probative than prejudicial; and (4) if requested, admitted subject to a limiting instruction.  *See United States v. Brand*, 467 F.3d 179, 196 (2d Cir. 2006); *accord United States v. Laflam*, 369 F.3d 153, 156 (2d Cir. 2004); *United States v. Zackson*, 12 F.3d 1178, 1182 (2d Cir. 1993); *Pitre*, 960 F.2d at 1119.  This Circuit takes an "'inclusionary' approach to the admission of prior-act evidence," under which "evidence of prior crimes,

14

wrongs, or acts is admissible for any purpose other than to show a defendant's criminal propensity." *Lasanta*, 978 F.2d at 1307 (citations and internal quotations omitted).

Courts in this circuit have "afforded significant leeway" in admitting prior bad acts in conspiracy cases. *See United States v. Nektalov*, 325 F. Supp. 2d 367, 371 (S.D.N.Y. 2004) (collecting cases); *see also Langford*, 990 F.2d at 70. In the context of a conspiracy charge, prior act evidence involving charged co-conspirators is frequently admitted "'to inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between the participants in the crime developed.'" *United States v. Williams*, 205 F.3d 23, 33-34 (2d Cir. 2000) (quoting *Pitre,* 960 F.2d at 1119); *see also Nektalov*, 325 F. Supp. at 371 (evidence of other bad acts may be admitted to "provide the jury with the complete story of the crimes charged by demonstrating the context of certain events relevant to the charged offense"); *United States v. Pascarella*, 84 F.3d 61, 73 (2d Cir. 1996) (other act evidence admissible "to show the background of a conspiracy or the development of a relationship of trust between the participants."); *United States v. Pipola*, 83 F.3d 556, 565 (2d Cir. 1996) ("One legitimate purpose for  presenting evidence of extrinsic acts is to explain how a criminal relationship developed; this sort of proof furnishes admissible background information in a conspiracy case"); *United States v. Brennan*, 798 F.2d 581, 590 (2d Cir. 1986) (prior act evidence admitted to show "the basis for the trust between" the co-conspirators). Furthermore, "[e]vidence of uncharged acts is also admissible to demonstrate 'a pattern of conduct engaged in by defendant and others of which the crime charged was part.'" *United States v. Mavashev*, 455 Fed. Appx. 107, 112 (2d Cir. 2012) (summary order) (quoting *United States v. Papadakis*, 510 F.2d 287, 295 (2d. Cir. 1975)).

Additionally, if the defendant raises a defense based on motive, opportunity, intent,

knowledge, or mistake, evidence of other acts is generally admissible. *See United States v. Mingo*, 76 Fed. Appx. 379, 382 (2d Cir. 2003) (Summary Order) ("When knowledge and intent are disputed, a defendant's commission of similar bad acts is generally deemed probative."); *United States v. Downing*, 297 F.3d 52, 59 (2d Cir. 2002) (holding that where defendant disputed his knowledge and intent to facilitate securities fraud by producing false audit reports, evidence of his prior preparation of false audit reports in connection with a similar fraud scheme was proplery admitted).

A defendant's knowledge and intent is at issue unless the defendant has unequivocally conceded that element of the offense. *See, e.g.*, *United States v. Colon*, 880 F.2d 650, 656-57 (2d Cir. 1989); *United States v. Peterson*, 808 F.2d 969, 974 (2d Cir. 1987); *see also United States* v. *Ramirez*, 894 F.2d 565, 568 (2d Cir. 1990) (holding that when the defendant "disavows awareness that a crime was being perpetrated" and the government bears the burden of proving knowledge "as an element of the crime, knowledge is properly put in issue").  The defendant's intent is also directly put in issue when there is an argument that there is an "innocent explanation" for the defendant's conduct.  *See Zackson*, 12 F.3d at 1182 ("Where a defendant claims that his conduct has an innocent explanation, prior act evidence is generally admissible to prove that the defendant acted with the state of mind necessary to commit the offense charged."); *Pitre*, 960 F.2d at 1117 (holding that evidence of prior narcotics transactions was properly admitted "to show that [the defendants] were 'not there just to be standing there' on the night of their arrests").

While any other act evidence is subject to the balancing test set forth in Rule 403, the Second Circuit has long made clear that "other act" evidence that is neither "more sensational" nor "more disturbing" than the charged crimes will not be deemed unfairly prejudicial.  *Roldan*

16

*Zapata*, 916 F.2d at 804; *Williams*, 205 F.3d at 33-34; *cf. Costantino* v. *Herzog*, 203 F.3d 164, 174 (2d Cir. 2000) ("Because virtually all evidence is prejudicial to one party or another, to justify exclusion under Rule 403 the prejudice must be unfair.").

### C.  Discussion

#### 1.   The Evidence is Admissible as Direct Proof of the Charged Conspiracies

Evidence of the defendant's participation in the scheme to steal funds due and owing to Actress-1 is admissible as direct and intrinsic proof of the wire fraud conspiracies charged in Counts One and Four of the Superseding Indictment because, among other things, this evidence tends to prove the existence of the conspiracies, explains the development of the illegal relationship between the co-conspirators, explains the mutual trust that existed between them, and completes the story of the offense charged.  *See, e.g., Thai*, 29 F.3d at 812; *Rosa*, 11 F.3d at 333-34.

With respect to Count One of the Superseding Indictment, a central aspect of that wire fraud conspiracy is that Williams and Brown diverted the victims' funds for purposes other than the intended film project investments, including to pay for Brown and Williams' own personal expenses.  (*See, e.g.* Indictment ¶¶ 3, 8, 16, 21, 29, 45, 49).  The proffered evidence shows that, prior to the timeframe of the charged wire fraud conspiracy, the defendant and Williams were already engaged in a criminal scheme that involved utilizing film projects as a means to divert funds belonging to others for themselves.  Such prior conduct by the defendant in concert with Williams is necessary background of the conspiracy charged in Count One and should be admitted as direct evidence of that conspiracy.

That the defendant and Williams, along with Agent-1, conspired to steal Actress-1's funds renders more plausible the defendant's and Williams's joint participation in the wire fraud

17

conspiracy charged in Count One, and will provide crucial background evidence as to how the illegal relationship between the defendant and his co-conspirator Williams developed. *See, e.g., United States v. Romero–Padilla,* 583 F.3d 126, 130 (2d Cir.2009) (per curiam) (although evidence of defendant's previous plans with a co-conspirator to import narcotics into the United States through Mexico and the Dominican Republic "did not concern the charged conspiracy, it was relevant background evidence inasmuch as it corroborated the charge that [the co-conspirator] and [defendant] were partners during the charged conspiracy" such that Rule 404(b) did not apply); *Pipola*, 83 F.3d at 566 (prior illicit activities involving defendant and his co-conspirators "explained to the jury how the relationship between [the defendant] and his underlings evolved."); *Zackson*, 12 F.3d at 1183 ("[I]t seems quite sensible to permit the jury to hear about LaGatta's prior relationship with Zackson earlier rather than later, as such background information might help the jury understand 'how the illegal relationship between [the] participants in the crime developed.'" (quoting *Pitre*, 960 F.2d at 1119)); *United States v. Lopez*, No. 09 CR. 525 JFK, 2010 WL 3452380, at *3 (S.D.N.Y. Sept. 1, 2010) ("the testimony of the . . . Defendant's alleged co-conspirators in this case . . . that they engaged in the importation and distribution of Ecuadorean heroin with Defendant prior to and beyond 2008 is admissible as evidence that corroborates the existence of the instant conspiracy and the identity of its members.").

Moreover, the proffered evidence regarding the scheme to steal Actress-1's funds should also be admitted as direct evidence of the conspiracy charged in Count Four because this evidence establishes the roles that the defendant, Williams, and Agent-1 played in that conspiracy and the preexisting relationship of trust that existed between the defendant, Williams, and Agent-1. *See Rosa*, 11 F.3d at 333-34 (evidence of wholly different acts held admissible to

18

show the background of a conspiracy or the development of a relationship of trust between the participants).  The Government expects that the evidence at trial will show that, in connection with the scheme to defraud the entertainment agency charged in Count Four, Williams, at the behest of the defendant, established a bank account with a "doing business as" name that was sufficiently similar to the name of the entertainment agency so that this account could accept checks and wires on which the entertainment agency was a payee.  The defendant, Williams, and Agent-1, using false invoices bearing the entertainment agency's name, then deceived a producer associated with a film project to send funds to this bank account.  (*See Indictment* ¶ 59-61).  In connection with the Actress-1 scheme, Williams similarly established a "doing business as" name associated with an account so as to allow Williams to deposit the checks due and owing to Actress-1 into this account.  Accordingly, the Actress-1 scheme shows how the respective roles of the co-conspirators were established, and also shows a pattern of conduct of which the crime charged in Count Four is a part. *See, e.g., United States v. Hamilton,* 597 F. Supp.2d 407, 410 (S.D.N.Y. 2009) (admitting prior firearms transaction as direct evidence of the charged conspiracy because it addressed the roles played by the defendant and his co-conspirators); *Mavashev*, 455 Fed. Appx. at 112 ("[e]vidence of uncharged acts is also admissible to demonstrate 'a pattern of conduct engaged in by defendant and others of which the crime charged was part.'"(quoting *Papadakis*, 510 F.2d at 295)).

In addition, the participation of the defendant and Agent-1 in a separate scheme to steal funds due and owing to an entertainment agency in or about 2007 should also be admitted as direct evidence of the wire fraud conspiracy charged in Count Four.  In both cases—the separate scheme and the scheme charged in Count Four—the defendant and Agent-1 engaged in a scheme to steal funds from an entertainment agency in connection with a film project with which Agent-

19

1 was associated; the striking similarity of the two schemes militates in favor of admission of this evidence as direct and intrinsic background proof of the conspiracy. *See, e.g., United States v. Vilar*, No. 05 Cr. 621 (RJS), 2008 WL 4178117, at * 3 (S.D.N.Y. Sept. 5, 2008) (where defendant was charged with conspiracy to defraud investors, evidence of prior illicit transfers was "inextricably intertwined with, and necessary to complete the story of, the charged conspiracy" because the transfers were "similar along a number of dimensions" including that "they involve[d] the same victim" and "employed the same means," all of which "militate[d] in favor of admissibility.").

For these reasons, the proffered evidence is admissible as direct and intrinsic evidence of both the wire fraud conspiracy charged in Count One and Count Four of the Superseding Indictment.

### 2.    In the Alternative, the Evidence is Admissible Pursuant to Rule 404(b)

Even assuming *arguendo* that the above-described evidence is not admissible as direct proof of the wire fraud conspiracies charged in Counts One and Four, this evidence is, in the alternative, admissible pursuant to Rule 404(b).

As noted above, this Circuit takes an "'inclusionary' approach to the admission of prior-act evidence," under which "evidence of prior crimes, wrongs, or acts is admissible for any purpose other than to show a defendant's criminal propensity." *Lasanta*, 978 F.2d at 1307 (citations and internal quotations omitted). Additionally, courts in the "Second Circuit ha[ve] afforded significant leeway" in admitting evidence of prior bad acts in conspiracy cases like this one. *Nektalov*, 325 F. Supp. 2d at 371. Uncharged acts are admissible under Rule 404(b) when used to, among other things, explain the development of the illegal relationship between the co-conspirators, explain the mutual trust that existed between co-conspirators, and complete the

story of the crime charged. *See, e.g., United States v. Mercado*, 573 F.3d 138, 141-42 (2d Cir. 2009).

Here, the evidence regarding the scheme to steal Actress-1's funds and to steal funds from an entertainment agency should be admitted under this inclusionary approach, as this evidence – for the reasons described above – explains the development of the illegal relationship between the defendant and Williams, as well as between the defendant and Agent-1. *See Pascarella*, 84 F.3d at 73 (other act evidence admissible "to show the background of a conspiracy or the development of a relationship of trust between the participants."); *Pipola*, 83 F.3d at 566 ("One legitimate purpose for presenting evidence of extrinsic acts is to explain how a criminal relationship developed; this sort of proof furnishes admissible background information in a conspiracy case. Such proof may also be used to help the jury understand the basis for the co-conspirators' relationship of mutual trust.").

Evidence of prior fraudulent transactions, like the prior bad acts at issue here, are regularly admitted in this Circuit. *See, e.g., United States v. Rahim*, 339 Fed. Appx. 19, 22 (2d Cir. 2009) (summary order) (evidence of prior insider trading permissible to show insider trading by showing background, course of dealing between co-conspirators, intent and absence of mistake); *United States v. Derosena*, 186 Fed. Appx. 27, 29 (2d Cir. 2006) (summary order) (prior fraudulent acts admitted to show prior course of dealings between co-conspirators).

In addition, the defendant's prior participation in the scheme to steal Actress-1's funds and to steal the funds of an entertainment agency should also be admitted because this evidence is probative of the defendant's motive, knowledge and lack of mistake. A defendant's knowledge and intent is at issue unless the defendant has unequivocally conceded that element of the offense. *See, e.g., Colon*, 880 F.2d at 656-57. The Government anticipates that at trial the

defendant will argue, among other things, that the defendant did not have knowledge that (1) certain bank documents that Williams furnished to victims were fake and (2) that substantial portions of the victims' funds were, in fact, being diverted to pay for personal expenses, rather than being used for the purported film investments.

The evidence that the defendant engaged in prior acts of fraudulent acts with both Williams and Agent-1 thus goes directly to the defendant's knowledge and intent, and thus should also be admitted under Rule 404(b) for this reason. *See United States v. Newsom*, 438 Fed. Appx. 16, 19 (2d Cir. 2011) (summary order) (in securities and mail fraud conspiracy trial, evidence of defendant's participation in prior fraudulent transactions "was offered properly by the government and relevant to prove [the defendant's] intent."); *Mingo*, 76 Fed. Appx. at 382; *Downing*, 297 F.3d at 59; *Zackson*, 12 F.3d at 1182.

Finally, the defendant's participation in prior fraudulent activity with, among others, Williams, should be admitted because this evidence will corroborate Williams' anticipated testimony that the defendant had knowledge of the criminal nature of the conspiracy, including that certain representations to the victims to induce them to invest were false and the intent of the defendant and Williams to divert victim funds for purposes other than film investments. The Second Circuit has held repeatedly that corroboration of Government witnesses is an appropriate, non-propensity purpose for admitting other acts evidence, and the Court should further admit the proffered evidence on this additional basis. *See, e.g.*, *United States v. Everett*, 825 F.2d 658, 660-61 (2d Cir. 1987) ("Under Rule 404(b) evidence of 'other crimes' has been consistently held admissible to corroborate crucial prosecution testimony.") (citations omitted); *United States v. Williams*, 577 F.2d 188, 192 (2d Cir. 1978) (holding that other acts evidence is admissible "for

corroboration purposes, provided that the corroboration is direct and the matter corroborated is significant").

### 3.    The Evidence Is More Probative Than Prejudicial

Whether the Court admits the proffered evidence as direct evidence of the charged conspiracies or under Rule 404(b), the evidence is relevant and its probative value substantially outweighs the danger of unfair prejudice. *See* Fed. R. Evid. 403.  Here, the evidence of the scheme to steal funds belonging to Actress-1 and to steal funds belonging to an entertainment agency is no more sensational or disturbing than the allegations already contained in the Superseding Indictment.  Indeed, if anything the proffered evidence is less sensational than the schemes already charged in the Superseding Indictment, which involve the defendant conspiring to defraud investors of millions of dollars using, among other things, fake bank statements and direct misrepresentation to victims.  The schemes to steal funds from Actress-1 and the entertainment agency only involve stealing tens of thousands of dollars.  Accordingly, the defendant cannot show that any prejudice resulting from the introduction of this evidence would substantially outweigh the probative value of the proffered evidence, and this evidence should be admitted.  *See Roldan-Zapata*, 916 F.2d at 804 (holding that evidence of similar acts was not unfairly prejudicial where it was not "any more sensational or disturbing than the crimes" with which the defendant was charged); *Newsom*, 438 Fed. Appx. at 19 (evidence of other fraudulent transactions was not unduly prejudicial and was properly admitted because, as defendant argued, this evidence was "virtually identical" to the conduct charged in the indictment and was thus highly probative of intent and not any more sensational than the charged crimes).

V.    **THE COURT SHOULD PRECLUDE ANY REFERENCE TO THE CRIMINAL CHARGES AGAINST VICTIM-3, IN THE EVENT VICTIM-3 DOES NOT TESTIFY AT TRIAL.**

The Government does not, at present, anticipate calling the individual identified as Victim-3 in the Superseding Indictment as a witness at trial.  In or about April 2017, Victim-3 was charged by the District Attorney's Office in Orange County, California with conspiring to commit medical insurance fraud, in violation of California Penal Code Section 550(a)(6); filing a false and fraudulent claim, in violation of California Penal Code Section 549; obtaining rebates for patient referrals, in violation of California Business & Professions Code Section 650; and obtaining referrals of clients for compensation, in violation of California Labor Code Section 3215.  It is the Government's understanding that these charges remain pending.

In the event that Victim-3 is, in fact, not a witness at trial, the Government respectfully requests that the Court preclude the defense from eliciting testimony or otherwise referring to the fact that criminal charges are pending against Victim-3.  Such evidence could not be offered for any permissible purpose and would be utterly irrelevant because, in the event Victim-3 does not testify, his veracity and truthfulness will not be at issue.  *Cf. United States v. Shalash*, No. 11 Cr. 0627 (JHL), 2013 WL 4820927, at *4 (N.D. Ill. Sept. 10, 2013) (non-testifying confidential informant's background, history of drug use, and prior criminal convictions were irrelevant because since the CI was not testifying, "the truthfulness of the CI is not at issue and her background is irrelevant"); *United States v. Williams*, No. 14 Cr. 153 (SM), 2016 WL 6520135, at *1 (E.D. La. Nov. 3, 2016) (instructing the defendants "not to refer to any alleged misconduct regarding officers who do not testify at trial").

24

**CONCLUSION**

For the reasons set forth above, the Government respectfully submits that the

Motions should be granted.


Dated:  New York, New York
         February 28, 2018

                                    Respectfully submitted,

                                    GEOFFREY S. BERMAN
                                    United States Attorney
                                    for the Southern District of New York

                   By:    _____/s/_____
                                    Katherine Reilly
                                    Noah Solowiejczyk
                                    Ryan B. Finkel
                                    Assistant United States Attorneys
                                    Tel.: (212) 637-6521/2473/6612