```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/27/19
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

UNITED STATES OF AMERICA

        -against-

STEVEN BROWN,

        Defendant.

-----------------------------------------------------------X

16-CR-436 (KMW)

**OPINION & ORDER**

KIMBA M. WOOD, United States District Judge:

On November 27, 2018, this Court sentenced Steven Brown in connection with his conviction for conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349. Pursuant to the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. §§ 3663A and 3664, the Court is required to impose restitution as part of Brown's sentence. Because Brown has raised several objections to the Government's proposed restitution orders, the Court has not yet done so. The delay has been exacerbated by allegations, first raised in an email from Brown to the Court dated February 13, 2019, that Brown's attorney, Walter Mack, harbored an undisclosed conflict of interest and provided ineffective assistance of counsel throughout this case.

On February 14, 2019, the Court held a hearing (the "Hearing") concerning the restitution owed by Brown and Brown's allegations against Mack. At the Hearing, the Court relieved Mack and his law firm of their representation of Brown, appointed Zachary Taylor as counsel for Brown, and ruled on Brown's then-pending objections to the Government's proposed restitution order. (*See* ECF No. 349, Ex. B ("Hr'g Tr.").) The Court also granted a request by Taylor to review the record in this case and, if Brown wished, to raise additional objections to the Government's proposed restitution order within three weeks of the Hearing. (*Id.* at 33:16–19.)

By letter dated March 7, 2019, Brown raises three issues. (ECF No. 349.) The first

and second issues, which concern Mack's representation of Brown, are not properly before the Court. First, Brown contends that Mack had a potential or actual conflict of interest because he previously represented Brown's co-defendant, Steven Williams. Second, Brown contends that, as a result of a dispute between Brown and Mack concerning legal fees owed by Brown to Mack's firm, Mack provided ineffective assistance of counsel during both the pre-trial and sentencing phases of this case. As an initial matter, the letter does not contain any request for relief with respect to these issues. To the extent Brown does seek relief from this Court based on his allegations concerning Mack's representation of him, he must do so by a motion made pursuant to 28 U.S.C. § 2255. *See* Fed. R. Crim. P. 11(e) ("After the court imposes sentence, the defendant may not withdraw a plea of guilty . . . , and the plea may be set aside only on . . . collateral attack."); *United States v. James*, 307 F. App'x 503, 505 (2d Cir. 2009) ("[The defendant] is not entitled to withdraw a guilty plea after sentencing if that sentence has not been vacated.") (summary order); *United States v. Ramos*, 03 Cr. 724 (LAP), 09 Civ. 7938 (SAS), 2015 WL 8526247, at *3 (S.D.N.Y. Oct. 8, 2015) (Preska, J.) ("The present motion is . . . made after sentencing, and the sentence has not been vacated . . . . Accordingly, to the extent Defendant's motion seeks to withdraw his plea of guilty pursuant to Rule 11 . . . , it is unavailing.").

The third issue concerns an ongoing dispute between the Government and Brown as to the amount of restitution owed by Brown to Victim-2. The Government and Brown agree that, as a result of Brown's transfer of real property located in Calabasas, California (the "Calabasas Property," or the "Property") to Victim-2, and Victim-2's subsequent sale of the Property, Brown is entitled to an offset against the restitution he owes Victim-2. The Government and Brown disagree, however, as to the amount of the offset to which Brown is entitled.

At the Hearing, the Government provided new evidence concerning Victim-2's sale of the

Property. It is now undisputed that Victim-2 was offered $2.67 million for the Calabasas Property by the Mountains Recreation and Conservation Authority (the "Conservation Authority"). It is also undisputed that Victim-2 declined the offer and, in the hope of obtaining a tax benefit, elected instead to accept a purchase price of $2.1 million and to donate the difference—$570,000—to the Conservation Authority.[1] According to the Government, the tax benefit Victim-2 hoped for never materialized.

Brown now contends that he is entitled to an offset equal to the Calabasas Property's fair market value, $2.67 million, relying on *United States v. Boccagna*, 450 F.3d 107 (2d Cir. 2006).[2] (ECF No. 349.) The Government continues to argue that the offset's amount should be limited to the net proceeds Victim-2 realized from the sale, $1,918,929.12, which represents the Property's sale price ($2.1 million) less the transaction costs incurred Victim-2 in completing the sale ($181,070.88). (*See* Hr'g Tr. 7:16; ECF No. 350.)

As relevant here, the MVRA requires the court to "order restitution to each victim in the full amount of each victim's losses," though that amount "shall be reduced by any amount later

---

[1] At the Hearing, counsel for the Government stated the following:
> [A]t the time Victim 2 sold [the Calabasas Property], the buyer did an appraisal, and the appraisal of all the parcels came out to $2.67 million. The ultimate sale price was $2.1 million. The difference, the $570,000 or so, was donated by Victim 2 to the buyer. The buyer was a nature conservancy.

(Hr'g Tr. 6:19–7:8.) In addition, counsel for the Government provided a document titled "Statement of Partial Donation," dated December 15, 2016, and signed by Victim-2. (Hr'g Tr., Ex. A; *see also* ECF No. 349, Ex. C.) The document stated, in relevant part, that "[a]lthough . . . the [Conservation Authority] offered us $2.67 million for the [Calabasas Property], we waive this right of full compensation. Instead, we will accept the purchase price of $2.1 million. Thereby, we are seeking just compensation of $2.1 million and donation the remaining amount of $570,000 to the [Conservation Authority]." (*Id.*)

[2] The Court has not previously considered this precise argument. In submissions made to the Court prior to the Hearing, Mr. Brown argued that "[t]he amount of money [Victim-2] received should be credited for restitution purposes." (ECF No. 316, at 6; *see also* ECF No. 326, at 1 n.1.) The question before the Court at the hearing was thus whether to offset the amount of restitution Mr. Brown owed by (a) the Property's sale price or (b) the net proceeds Victim-2 realized from the sale. In light of these two options, the Court ruled at the Hearing that the proper offset amount for the transfer of the Calabasas Property was the net proceeds. To the extent that ruling is inconsistent with this Opinion and Order, it is now withdrawn.

recovered as compensatory damages for the same loss by the victim in" federal and state civil proceedings. *Id.* § 3664(f), (j). In *Boccagna*, the Second Circuit held that "for purposes of valuing property—whether lost or recouped—under the MVRA, fair market value will generally provide the best measure to ensure restitution in the 'full amount' of the victim's loss." *Id.* at 109 (quoting 18 U.S.C. § 3664(f)(1)(A)).[3] Although the MVRA accords the district court the discretion "to value property by reference to measures other than fair market value," it "does not permit awards 'in excess of the amount of the [victim's] loss.'" *Id.* at 117 (quoting *United States v. Nucci*, 364 F.3d 419, 423 (2d Cir. 2004) (alteration in *Boccagna*)). Moreover,

> when recouped property is resold at a nominal price, a court abuses its discretion in using that price to calculate offset value because such a calculation necessarily exceeds the amount necessary to make the victim whole. It effectively awards the victim both restitution in the full amount of loss offset only by the nominal sale price and the benefit of the recouped property to the extent that the victim is able to make a gift to a putative purchaser in an amount equal to the difference between the property's fair market value and the nominal sale price.

*Id.*

Here, the effect of using the sale price to calculate the offset value of the Calabasas Property would be to permit exactly what *Boccagna* prohibits.[4] Victim-2 would be able to make a gift to the Conservation Authority worth $570,000 *and* to later recoup $570,000 from Brown. That is clearly impermissible. Had Victim-2 had sold the Property for $2.7 million cash and then donated $570,000 in cash to the Conservation Authority, one would not seriously contend that the appropriate offset value would be $2.1 million. The Court does not see any

---

[3] The term "recouped property," as used in *Boccagna*, includes "substitute property . . . recouped by a crime victim in lieu of the cash compensation to which he would otherwise be entitled as restitution for his loss." *Boccagna*, 450 F.3d at 116.

[4] Arguably, given that it represented approximately 79% of the Property's fair market value, the sale price in this case was not "nominal." The Government does not attempt to distinguish *Boccagna* on this basis, however.

reason why the outcome should be different here simply because Victim-2 effected that result in one transaction instead of two. *Cf. Robers v. United States*, 572 U.S. 639, 645–46 (2014) (acknowledging that the MVRA authorizes restitution only where a defendant proximately caused a victim's losses, and that "a victim's donation of collateral . . . could break the causal chain"). That Victim-2 did not ultimately receive a tax benefit as a result of the donation to the Conservation Authority does not affect the conclusion that using the sale price to calculate the offset value, rather than the offer price, would permit excess recovery by Victim-2. *See id.* at 120 ("[The victim's] voluntary decision to sell the[] properties for a lesser nominal price to a buyer willing to provide it with a desired development guarantee did not lessen th[e properties'] offset value.").

Notwithstanding the above, Brown is not entitled to claim an offset for the transaction costs Victim-2 incurred by selling the Calabasas Property. To the extent that Victim-2 realized any monetary benefit from Brown's transfer of the Calabasas Property, Victim-2 was able to do so only by paying various sale expenses, such as title fees, escrow charges, and commission to a real estate agent. (*See* ECF No. 319, Ex. A.) Brown "can hardly claim an offset credit based on the fair market value of th[e] . . . [Calabasas Property] without also factoring [Victim-2's] costs in that calculation." *Boccagna*, 450 F.3d at 121.

For the reasons above, the appropriate offset amount for the transfer of the Calabasas Property is $2,518,929.12. This figure represents the price the Conservation Authority offered to pay for the Calabasas Property ($2.67 million), less the transaction costs incurred by Victim-2 in selling the Property ($181,070.88).

By April 5, 2019, the Government is directed to submit a revised proposed order of restitution that is consistent with the rulings in this Opinion and Order.

SO ORDERED.

Dated: New York, New York
       March 27, 2019

/s/ Kimba M. Wood
KIMBA M. WOOD
United States District Judge